BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
ELAINE A. RYAN (*To be Admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (CA SBN 203111)
LINDSEY M. GOMEZ-GRAY (*To be Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone:  (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Manfred P. Muecke (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone:  (619) 756-7748

STEWART M. WELTMAN, LLC
Stewart M. Weltman (*To be Admitted Pro Hac Vice*)
53 W. Jackson Suite 364
Chicago, IL 60604
sweltman@weltmanlawfirm.com
Telephone:  (312) 588-5033

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP RACIES, On Behalf of Himself and All Others Similarly Situated, | Case No.: |
| | **CLASS ACTION COMPLAINT FOR:** |
| Plaintiff, | |
| v. | 1.   VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; and |
| QUINCY BIOSCIENCE, LLC, a Wisconsin limited liability company, | 2.   VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.* |
| Defendant. | DEMAND FOR JURY TRIAL |

1   Plaintiff Phillip Racies brings this action on behalf of himself and all others

2   similarly situated against Defendant Quincy Bioscience, LLC and states:

3                                **NATURE OF ACTION**

4       1.      Defendant manufactures, markets, sells and distributes Prevagen, a

5   purported brain health supplement made with the protein apoaequorin.[1]   As its

6   Wikipedia cite notes, apoaequorin is used as a light emitting marker "in a broad

7   range of biological research work at the cellular level."   Through an extensive,

8   widespread, comprehensive and uniform nationwide marketing campaign, and on

9   the front of each and every Product package, where it cannot be missed by

10  consumers, Defendant represents: (1) that the Products are "clinically tested" to

11  "improve[] memory" and "support[]: healthy brain function, sharper mind, and

12  clearer thinking"; and (2) that Prevagen is "clinically tested" to "improve memory

13  within 90 days" (collectively, "the brain function and memory representations").

14  Defendant's brain function and memory representations are false, misleading and

15  reasonably likely to deceive the public.

16      2.      Plaintiff and his counsel have retained one of the world's foremost

17  experts in brain chemistry and an expert in the field regarding whether and how

18  substances may or may not affect brain function and memory.

19      3.      He has evaluated the ingredients in Prevagen, along with reviewing the

20  summaries of purported[2] clinical studies that Defendant provides on its Product

21  packaging and on its website.   He has concluded that: (1) Prevagen cannot work as

22  represented because apoaequorin, the only purported active ingredient in Prevagen,

---

[1] Prevagen is available in regular strength (10 mg. apoaequorin), extra strength (20 mg. apoaequorin) and mixed berry chewable forms (10 mg. apoaequorin) (collectively "Prevagen" or "the Products").   Plaintiff reserves the right to add additional products upon completion of discovery.

[2] They are "purported" because there is no evidence that these studies were actually conducted, properly conducted or that the summaries accurately reflect the actual results of the purported studies.

Class Action Complaint

is completely destroyed by the digestive system and transformed into common amino acids no different than those derived from other common food products such as chicken, cold cuts, hamburgers, etc.; (2) the average daily diet contains about 75 grams of protein, contains all the required amino acids, and has about 7,500 times more amino acids than Prevagen (10 mg or 0.01 grams) and, as a result, any amino acids derived from the digestion of Prevagen would be massively diluted and could have no measurable effect on the brain; (3)  ingestion of Prevagen cannot and does not have any effect on brain function or memory; and (4) the three summaries of purported clinical studies, one on the Product packaging and two on Defendant's websites, apart from not being clear that these studies exist at all, are, on their face, so seriously flawed that they demonstrate nothing regarding Prevagen.  As a result, Defendant's citation to these purported studies, particularly the one summarized on the Product packaging,  is a separate and distinct misrepresentation – they are cited as purportedly demonstrating efficacy when, in fact, they demonstrate nothing and could not since, as a matter of body chemistry, Prevagen can do nothing to enhance brain function or memory.

4.    The Prevagen packaging states that the Product is "clinically tested" to provide the brain function and memory benefits.  By stating that the Product is clinically tested, Defendant is representing to consumers that credible scientific evidence supports Defendant's claim that the Product provides the brain function and memory benefits.

5.    Reasonable consumers understand "clinically tested" to mean that there is competent and reliable scientific support for the brain function and memory benefit representations.  However, there can never be any competent and reliable scientific evidence supporting Defendant's brain function and memory representations, because, as alleged herein, the apoaequorin in Defendant's Product is fully digested, broken down into common amino acids and is massively diluted

Class Action Complaint

before entering the bloodstream. Furthermore, for at least the last 50 years, the universally accepted form of scientific evidence recognized by experts in the field for determining whether a substance provides any human health benefit is by demonstrating its value over placebo through high quality and well-conducted randomized controlled clinical trials ("RCTs").  Also, it is generally recognized that RCTs that are of sufficient quality to be relied upon for reaching efficacy conclusions should be subjected to a peer review process and published in a peer reviewed journal.

6.     A properly conducted RCT has a detailed protocol that describes how the study is going to be conducted; is double blinded with a description of the blinding procedures; is randomized with a description of the randomization procedure; at a minimum, has primary endpoints that are described in detail; contains a report section discussing all of the results; has a complete and validly performed statistical analysis comparing the active ingredient to placebo; and has a conclusions section that describes the results and how the active ingredient compares to placebo for the previously described endpoints. On the packaging of Defendant's Product a purported study is summarized.  It is a purported study because, other than the grossly simplified, and thus unreliable, results summarized on the packaging, there is absolutely no evidence in the public record that this study was ever performed.  A search of *clinicaltrials.gov* where RCTs must be registered to be considered for publication in a peer reviewed journal shows that no RCT involving apoaequorin and brain function or memory was registered.  Similarly, the summary on the packaging contains no identifying information such that it is not even clear that the study exits.  There is no author identified, no title given to the study and no publication identified where it may have been published. There is nothing in the public record. For example, when the word apoaequorin is searched in Pub-Med, a website maintained by the NIH which contains over 24 million

Class Action Complaint

published articles, there are 150 citations that result – none of them are studies of apoaequorin and brain function or memory in humans.[3]   In fact, when "apoaequorin" and "memory" are searched the results contain two reports – one on fly brains regarding the use of apoaequorin for imaging purposes and another  an in vitro study of pools of cells.[4] As such, it is not possible to determine, at least from the label, whether the study exists and even if it does, whether it was properly conducted and properly analyzed.  But, even if such a study were conducted, because apoaequorin is completely digested, changed into common amino acids and massively diluted by the far larger quantity of amino acids derived from the average daily diet, there is no possible manner in which Prevagen could have any effect on brain function or memory.

7.    For the same reasons, the two abstracts/summaries of purported studies purportedly conducted by Defendant summarized on Defendant's website are not competent and reliable scientific "studies."

8.    Defendant's brain function and memory representations are also unlawful.  Prevagen is a dietary supplement.  21 U.S.C. § 321(g)(d).  Dietary supplements are regulated under the Dietary Supplement Health and Education Act of 1994 (DSHEA).  FDA approval is not required before producing or selling a dietary supplement.  However, all health benefit claims on the product package and label must be truthful and not misleading. With regard to each of the representations Defendant makes about Prevagen, this means that Defendant is required to make sure they are truthful and not misleading.

9.    In order to be truthful and not misleading, dietary supplement health benefit claims must be substantiated by competent and reliable scientific evidence. 21 U.S.C. §321(r)(6)(b); Guidance for Industry: Substantiation for Dietary

---

[3] http://www.ncbi.nlm.nih.gov/pubmed/?term=Apoaequorin
[4] http://www.ncbi.nlm.nih.gov/pubmed/?term=apoaequorin+and+memory

Supplement Claims Made Under Section 403(r) (6) of the Federal Food, Drug, and Cosmetic Act ("FDA Guidance of Industry"), Ex. A.

10.     Under DSHEA, competent and reliable scientific evidence is defined as: "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results."  FDA Guidance of Industry, Ex. A.

11.     Plaintiff's retained expert in brain chemistry and whether and how substances may or may not affect brain function and memory, as well as other experts in these fields, deem the only credible scientific evidence to substantiate human health benefit claims, such as those at issue here, is evidence from high quality RCTs (hereafter "competent and reliable evidence").  No such RCTs exist to substantiate the brain function and memory benefits as the labeling represents that Prevagen provides.

12.     Because there is no competent and reliable evidence that Prevagen provides brain function and memory benefits, Defendant is selling a dietary supplement in violation of federal law, DSHEA, and California's Sherman Act.

13.     Defendant has employed numerous media to convey its uniform, deceptive brain function and memory representations to consumers, including magazines, newspapers, the internet, social media websites, and, importantly, on the front of the Prevagen packaging and labeling where it cannot be missed by consumers. The only reason a consumer would purchase Prevagen is to obtain the advertised brain function and memory benefits, which it does not provide. Prevagen is a singular purpose product – its only purported benefit is to enhance brain function and memory which it does not and cannot do.

14.     As a result of Defendant's deceptive and unlawful brain function and

memory representations, consumers – including Plaintiff and members of the proposed Class – have purchased Products that do not perform as advertised.

15.     Plaintiff brings this action on behalf of himself and other similarly situated consumers who purchased Prevagen, to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased Prevagen. Based on violations of state unfair competition laws (detailed below), Plaintiff seeks injunctive and restitutionary relief for consumers who purchased Prevagen.

16.     Plaintiff also brings this action on behalf of himself and other similarly situated California consumers who have purchased Prevagen under the "unlawful" prong of the UCL. Plaintiff seeks to halt Defendant's unlawful sale of Prevagen in violation of applicable FDA law and regulations and California's Sherman Act and also seeks full restitution of Plaintiff's and other California consumers' full purchase price.

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendant.

18.     This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and does business in California, including this District.   Defendant marketed, promoted, distributed, and sold Prevagen in California and Defendant has sufficient minimum contacts with this State and/or sufficiently availed itself of the markets in this State through its promotion, sales, distribution and marketing within this State, including this District, to render the

exercise of jurisdiction by this Court permissible.

19.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred while he resided in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

### PARTIES

20.     During the relevant time period, Plaintiff Phillip Racies resided in Petaluma, California.  On September 25, 2014, Plaintiff Racies was exposed to and saw Defendant's brain function and memory representations by reading the Prevagen Regular Strength label.   Plaintiff Racies purchased and consumed Prevagen Regular Strength at a Walgreens in San Rafael, California in reliance on Defendant's material brain function and memory representations.   He paid approximately $27.99 for the Product.   The Prevagen Regular Strength product Plaintiff Racies purchased did not and could not improve memory or support healthy brain function as represented.  As a result, Plaintiff Racies suffered injury in fact and lost money.   Had Plaintiff Racies known the truth about Defendant's misrepresentations, he would not have purchased Prevagen.  Furthermore, Plaintiff was injured when he was induced to purchase a product that but for Defendant's unlawful sale of the Product would not be available for purchase.

21.     Defendant Quincy Bioscience, LLC is a limited liability company organized and existing under the laws of the state of Wisconsin.   Quincy Bioscience, LLC's headquarters is at 301 South Westfield Road, Suite 200, in Madison, Wisconsin.   The sole member of Quincy Bioscience, LLC is Quincy Bioscience Holding Company, Inc. Quincy Bioscience Holding Company, Inc. is a Wisconsin corporation.  Defendant Quincy Bioscience, LLC is therefore a citizen of Wisconsin.  Defendant Quincy Bioscience, LLC manufactures, advertises markets, distributes, and/or sells Prevagen to tens of thousands of consumers in California

Class Action Complaint

and throughout the United States

## FACTUAL ALLEGATIONS

***Prevagen***

22.    Since at least the fall of 2007, Defendant has manufactured, distributed, marketed and sold Prevagen.  The Products are marketed as a supplement with the singular purpose of providing key brain health benefits, including improving age-related memory loss.

23.    Prevagen is sold in virtually every major food, drug, and mass retail outlet in the country.  It is also sold on-line at Defendant's website.  Prevagen is available in regular strength, extra strength and mixed berry flavor chewable forms. The regular strength and mixed berry flavor products contain 10 mg of apoaequorin per serving, while the extra strength product contains 20 mg of apoaequorin per serving.  A 30-count bottle of Prevagen retails for approximately $28.00 - $40.00. The following are screen shots of the Products:

  

24.    Throughout the relevant time period, Defendant has consistently conveyed the message to consumers throughout the United States, including California, that Prevagen is "clinically tested" to "improve[] memory" and

"support[]: healthy brain function, shaper mind, and clearer thinking" and is "clinically tested" to "improve memory within 90 days" simply by taking the recommended daily dosage.  It does not.  Defendant's brain function and memory representations are false, misleading and deceptive.

25.    Despite the evidence the Prevagen does not and cannot improve memory or support brain function, sharper mind or clearer thinking, each and every Product package and label repeatedly emphasizes that Prevagen is "clinically tested" to  "improve[] memory" and "support[]: healthy brain function, shaper mind, and clearer thinking" and is "clinically tested" to "improve memory within 90 days".  Each and every consumer who purchases these Products is exposed to the deceptive brain function and memory representations, which appear prominently and conspicuously on the front and/or back of each Prevagen box as follows:



1    26.    The side and back of the Prevagen box repeat the "clinically tested"

2  brain function and memory representations:

SIDE                                      BACK





27.    And, on the top of the Prevagen box is a picture of the brain encircled

by the "supports healthy brain function" representation:



Copies of the labels are attached hereto as Exhibit B.

*Defendant is Unlawfully Selling Prevagen in Violation of Federal and State Law*

28.     Prevagen is a dietary supplement and governed by DSHEA.

29.     DSHEA permits the makers of dietary supplements to make claims as to how their supplement affects the structure or function of the body without obtaining prior FDA approval provided certain requirements are met. 21 U.S.C. §§342, 343. One of these requirements is that the manufacturer must have substantiation that the claims are truthful and not misleading. 21 U.S.C. §343(r)(6)(B).

30.     California's Sherman Food, Drug, and Cosmetic Law ("Sherman Act") (California's Health & Safety Code §§109875, et. seq.), parallels the FDCA in material part and adopts the Federal requirements for dietary supplements, including that dietary supplement claims be made in accordance with Section 403(r)(6) of the FDCA.  Cal. Health & Safety Code § 110100(a).

31.     The FDA has adopted the FTC's substantiation standard of "competent and reliable scientific evidence" for dietary supplements as described above.

32.     Competent and reliable scientific evidence is defined as: "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results."  FDA Guidance of Industry, Ex. A.  For products such as Prevagen, adequate substantiation, as required by experts in the relevant area, consists of high quality RCTs – particularly when representations regarding health affects is the subject matter.

33.     There are no reliable or high quality RCTs substantiating any of the representations made by Defendant about Prevagen.

34.     By selling Prevagen without the prerequisite competent and reliable scientific evidence/substantiation for these representations, Defendant has violated

1  DSHEA and the Sherman Act.

2  ***The Impact of Defendant's Wrongful Conduct***

3      35.    Plaintiff and Class members have been and will continue to be
4  deceived or misled by Defendant's deceptive brain function and memory
5  representations. Plaintiff and the Class members have been damaged in their
6  purchases of these Products and have been deceived into purchasing Products that
7  they believed, based on Defendant's representations, improved memory and
8  supported brain function, sharper mind and clearer thinking, when, in fact, they do
9  not.

10                    **CLASS DEFINITION AND ALLEGATIONS**

11      36.    Plaintiff brings this action on behalf of himself and all other similarly
12  situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal
13  Rules of Civil Procedure and seeks certification of the following Class against
14  Defendant for violations of California state laws and/or similar laws in other states:

15              <u>**Multi-State Class Action**</u>

16              All consumers who,   within the applicable statute of
17              limitations period, purchased Prevagen in California,
                Florida, Illinois, Massachusetts, Michigan, Minnesota,
18              Missouri, New Jersey, New York, and Washington until the
                date notice is disseminated.

19              Excluded from this Class are Defendant and its officers,
20              directors and employees and those who purchased Prevagen
                for the purpose of resale.

21      37.    Alternatively, Plaintiff brings this action on behalf of himself and all
22  other similarly situated California consumers pursuant to Rule 23(a), (b)(2) and
23  (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the
24  following Class:

25              <u>**California-Only Class Action**</u>
26              All California consumers who, within the applicable
                statute of limitations, purchased Prevagen until the date
27              notice is disseminated.

28                                    - 12 -

> Excluded from this Class are Defendant and its officers, directors and employees, and those who purchased Prevagen for the purpose of resale.

38.     **Numerosity**.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of Prevagen who have been damaged by Defendant's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

39.     **Existence and Predominance of Common Questions of Law and Fact**.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant's representations discussed above are misleading, or objectively reasonably likely to deceive;

(b)     whether Defendant's alleged conduct is unlawful;

(c)     whether the alleged conduct constitutes violations of the laws asserted;

(d)     whether Defendant engaged in false or misleading advertising; and

(e)     whether Plaintiff and Class members are entitled to other appropriate remedies, including restitution, corrective advertising and injunctive relief.

40.     **Typicality.**  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendant's deceptive brain function and memory representations that accompanied each and every bottle of Prevagen.  Plaintiff is also advancing the same claims and legal theories on behalf of himself and all members of the Class.

41.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to

prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

42.  **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

43.  Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

44.  Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

45.  Defendant has acted and refused to act on grounds generally applicable

to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I
### Violation of Business & Professions Code §17200, *et seq.*
### Unlawful Business Acts and Practices
### (On Behalf of the California-Only Class)

46.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

47.     Plaintiff brings this claim individually and on behalf of the California-Only Class.

48.     The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), prohibits any "unlawful" business act or practice.

49.     As alleged herein, Defendant engaged in illegal conduct by unlawfully making the representations set forth above.  Because Defendant did not have adequate substantiation that these representations were truthful and not misleading Defendant has committed unlawful business practices by violating California's Sherman Food, Drug and Cosmetic Law, California's Health & Safety Code §§ 109875, et seq. and the Food Drug and Cosmetic Act, 21 U.S.C. §§ 301, et seq. Plaintiff and the California-Only Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

50.     Plaintiff and the California-Only Class suffered "injury in fact"/economic loss by spending money on a Product that, but for Defendant's illegal conduct, would not have been on the market.

51.     The FDA and Sherman Act misbranding/consumer protections are intended to ensure that any claims made about dietary supplements, as defined under the FDA law and regulations, to the consuming public (e.g., sold to Plaintiff

and the California-Only Class), are truthful and not misleading.

52.    The UCL unlawful prong is intended to hold a defendant who violates this prong accountable for its violations by, among other things, paying full compensation to purchasers who have purchased the illegally sold products.

53.    But for Defendant unlawfully selling Prevagen, Plaintiff and the California Class would never have purchased the illegal Products. As result of Defendant's illegal conduct, Plaintiff and the California-Only Class have suffered injury/economic loss and are entitled to a full refund of their purchase price. Unless restrained and enjoined, Defendant will continue to engage in the illegal sale of the Products. Accordingly, injunctive relief is appropriate.

54.    Plaintiff, on behalf of himself, all other similarly situated California consumers, and the general public, seeks restitution of all money paid for Defendant's illegally sold Products, an injunction prohibiting Defendant from continuing to sell the Products without adequate substantiation, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II
### Violation of Business & Professions Code §17200, *et seq.*
### Fraudulent Business Acts and Practices
### (On Behalf of the Multi-State or California-Only Class)

55.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

56.    Plaintiff brings this claim individually and on behalf of the Class.

57.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because he purchased Prevagen in reliance on Defendant's claim that the Product would provide brain function and memory benefits, but did not receive a Product that provides these benefits.

58.     The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), and similar laws in the other class states, prohibits any "fraudulent" business act or practice and any false or misleading advertising.

59.     In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" and false or misleading advertising by, *inter alia*, making the brain function and memory representations (which also constitutes advertising within the meaning of §17200) regarding the Products in its advertising campaign, including the Products' packaging, as set forth more fully herein.

60.     Defendant's actions, claims and misleading statements, as more fully set forth above, are false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

61.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material brain function and memory representations.  Plaintiff and the other Class members have suffered injury in fact and lost money as a result of their purchase(s) of Defendant's Products which do not provide brain function or memory benefits.

62.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

63.     Plaintiff, on behalf of himself, all others similarly situated, and the general public, seeks restitution of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

/ / /

/ / /

**COUNT III**

**Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.***
**(On Behalf of the California-Only Class)**

64.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the California-Only Class.

66.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act").

67.     Plaintiff is a consumer as defined by California Civil Code §1761(d). Prevagen is a "good" within the meaning of the Act.

68.     Defendant  violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the California-Only Class which were intended to result in, and did result in, the sale of Prevagen:

(5)     Representing that [Prevagen has] . . . approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

*          *          *

(7)     Representing that [Prevagen is] of a particular standard, quality or grade . . . if [it is] of another.

*          *          *

(9)     Advertising goods . . . with intent not to sell them as advertised.

*          *          *

(16)    Representing that [Prevagen has] been supplied in accordance with a previous representation when [it has] not.

69.     Pursuant to California Civil Code §1782(d), Plaintiff and the California-Only Class seek a Court order enjoining the above-described wrongful

acts and practices of Defendant and for restitution and disgorgement.

70.    Pursuant to §1782 of the Act, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.  A copy of the letter is attached hereto as Exhibit C.

71.    If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

72.    Defendant's conduct is fraudulent, wanton and malicious.

73.    Pursuant to §1780(d) of the Act, attached hereto as Exhibit D is the affidavit showing that this action has been commenced in the proper forum.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.    Certifying the Class as requested herein;

B.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

C.    Awarding injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein;

D.    Ordering Defendant to engage in a corrective advertising campaign;

E.    Awarding attorneys' fees and costs; and

F.    Providing such further relief as may be just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

1

Dated:  January 21, 2015

2

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.

3

 /s/*Patricia N. Syverson*
Elaine A. Ryan (*To be Admitted Pro Hac Vice*)

4

Patricia N. Syverson (203111)
Lindsey M. Gomez-Gray (*To be Admitted Pro Hac Vice*)

5

2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016

6

eryan@bffb.com
psyverson@bffb.com

7

lgomez-gray@bffb.com
Telephone:  (602) 274-1100

8

9

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Manfred P. Muecke (222893)

10

600 W. Broadway, Suite 900
San Diego, California 92101

11

mmuecke@bffb.com
Telephone:  (619) 756-7748

12

13

STEWART M. WELTMAN, LLC
Stewart M. Weltman (*To be Admitted Pro Hac Vice*)

14

53 W. Jackson Suite 364
Chicago, IL 60604

15

sweltman@weltmanlawfirm.com
Telephone:  (312) 588-5033

16

17

Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28