UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP RACIES,<br><br>    Plaintiff,<br><br>        v.<br><br>QUINCY BIOSCIENCE, LLC,<br><br>    Defendant. | Case No. 15-cv-00292-HSG<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Re: Dkt. No. 27 |

Defendant Quincy Bioscience, LLC moves to dismiss Plaintiff Phillip Racies's class action complaint. For the reasons articulated below, the motion is DENIED IN PART and GRANTED IN PART.

**I.    BACKGROUND**

On January 21, 2015, Plaintiff filed a class action complaint on behalf of a putative multi-state class, or, in the alternative, a California-only class. Dkt. 1 ("Complt."). The complaint alleges violations of California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA") based on Defendant's representations regarding its Prevagen product ("Product"), "a purported brain health supplement made with the protein apoaequorin." Complt. ¶ 1.

On the front of the Product label, Defendant represents that the Product is "Clinically Tested," or at least contains a "Clinically Tested Ingredient," and that the Product "[i]mproves [m]emory" and "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking." *Id.* ¶ 23. On the back of the Product label, Defendant further represents that clinical studies have shown that the Product "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days." *Id.* ¶ 26.

Plaintiff alleges that Defendant's advertising violates California consumer protection laws

for three independent reasons:

1. <u>Body Chemistry Allegations</u>.  First, Plaintiff alleges that Defendant's representations that its Product improves memory and supports brain function are "false, misleading, and reasonably likely to deceive the public" because

> one of the world's foremost experts in brain chemistry . . . has concluded that: (1) [the Product] cannot work as represented because apoaequorin, the only purported active ingredient in [the Product], is completely destroyed by the digestive system and transformed into common amino acids no different than those derived from other common food products . . . ; (2) the average daily diet contains about 75 grams of protein, contains all the required amino acids, and has about 7,500 times more amino acids than [the Product] (10 mg or 0.01 grams) and, as a result, any amino acids derived from the digestion of [the Product] would be massively diluted and could have no measurable effect on the brain; (3) ingestion of [the Product] cannot and does not have any effect on brain function or memory.

*Id.* ¶¶ 1-3.  Plaintiff further alleges that because the Product cannot provide the promised benefits as a matter of body chemistry, "there can never be any competent and reliable scientific evidence supporting Defendant's brain function and memory representations" and therefore the Defendant's representations that the Product is "clinically tested" are also false and misleading under the UCL. *Id.* ¶ 5.  These allegations are collectively referred to herein as the "body chemistry allegations."

2. <u>Lack of Substantiation—Falsity</u>.  As a second and independent basis for Plaintiff's allegation that Defendant's representations that the Product is "clinically tested" are false, Plaintiff alleges that "there is absolutely no evidence in the public record" that any clinical studies were ever performed on the Product and "no RCT involving apoaequorin and brain function or memory" has ever been "registered to be considered for publication in a peer reviewed journal." *Id.* ¶¶ 5-6.  Plaintiff further alleges that "the two abstracts/summaries of purported studies purportedly conducted by Defendant summarized on Defendant's website are not competent and reliable scientific 'studies.'"  *Id.* ¶ 7.

3. <u>Lack of Substantiation—Unlawful</u>.  Finally, Plaintiff alleges that Defendant's Product representations are unlawful under the UCL because "there is no competent and reliable evidence that [the Product] provides brain function and memory benefits," and therefore "Defendant is selling a dietary supplement in violation of federal law, [the Dietary Supplement

Health and Education Act of 1994 ("DSHEA")], and California's Sherman Act. *Id.* ¶ 12.

Plaintiff asserts three causes of action based on these facts: 1) violation of the "unlawful" prong of the UCL on behalf of a class of California consumers; 2) violation of the "fraudulent" prong of the UCL on behalf of a multi-state class of consumers, or, in the alternative, a California-only class; and 3) violation of the California Consumers Legal Remedies Act ("CLRA") on behalf of a class of California consumers. Plaintiff seeks monetary and injunctive relief.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. On a motion to dismiss, the court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Because Plaintiff's claims are premised on allegedly fraudulent conduct, Rule 9(b) also applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." *Id.* at 1124. Claims for fraud must be based on facts "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge." *Id.* Allegations of fraud must meet both Rule 9(b)'s particularity requirement and *Iqbal*'s plausibility standard. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

3

### B. UCL and CLRA Claims

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The three "prongs" of the UCL are independent of each other and may be asserted as separate claims. The "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). The "fraudulent" prong of the UCL imposes liability on a defendant who makes false or misleading product claims. *Williams v. Gerber Prods., Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under the applicable "reasonable consumer" standard, a plaintiff must "show that members of the public are likely to be deceived." *Id.* (internal quotation marks omitted).

California's CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. CLRA claims are governed by the same "reasonable consumer" test that governs claims brought under the fraudulent prong of the UCL. *Williams*, 552 F.3d at 938.

#### 1. Lack of Substantiation

In the complaint, Plaintiff alleges that Defendant's representation that the Product is "clinically tested" is false because no competent and reliable studies testing the Product exist. *See* Complt. ¶¶ 5-7. Plaintiff also alleges that because "[t]here are no reliable or high quality RCTs substantiating any of the representations made by Defendant about [the Product]," Defendant is in violation of the DSHEA and California's Sherman Act and therefore has committed "unlawful business practices" under the UCL. *Id.* ¶¶ 33-34.

It is well settled that private litigants may not bring any UCL claims based on an alleged lack of substantiation. *Nat'l Council Against Health Fraud Inc. v. King Bio Pharms. Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) ("Private plaintiffs are not authorized to demand substantiation for advertising claims."). The California legislature "has expressly permitted prosecuting authorities, but not private plaintiffs, to require substantiation of advertising claims," and "[t]his

limitation prevents undue harassment of advertisers and is the least burdensome method of obtaining substantiation for advertising claims." *Id.*; *see also Bronson v. Johnson & Johnson*, No. 12-cv-04184-CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) (granting motion to dismiss claims under all three prongs of the UCL premised on lack of substantiation allegations because "[c]laims that rest on a lack of substantiation, instead of provable falsehoods, are not cognizable under the California consumer protection laws"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012) ("Consumer claims for a lack of substantiation are not cognizable under California law."); *Stanley v. Bayer Healthcare, Inc.*, No. 11-cv-00862-IEG, 2012 WL 1132920, at *6 (S.D. Cal. Apr. 3, 2012) ("Plaintiff's argument that she can assert a UCL 'unlawful conduct' claim based upon violation of [a federal statute that imposes substantiation standards for certain advertising claims] is precluded by the California Court of Appeal's opinion in *King Bio*.").

Plaintiff's allegations that Defendant's representation that its Product is "clinically tested" is false are based on a lack of substantiation of those Product representations. *See* Complt. ¶¶ 5-7 (alleging that "there is absolutely no evidence in the public record" that any clinical studies were ever performed on the Product, "no [randomized controlled clinical trial] involving apoaequorin and brain function or memory" has ever been "registered to be considered for publication in a peer reviewed journal," and "the two abstracts/summaries of purported studies purportedly conducted by Defendant summarized on Defendant's website are not competent and reliable scientific 'studies'"). Under *King Bio*, Plaintiff cannot state a claim under the fraudulent prong of the UCL based solely on an alleged lack of substantiation.

Plaintiff contends that its claim under the unlawful prong of the UCL based on a lack of substantiation "stands on its own and is a wholly separate and different claim than a falsity claim." Dkt. No. 28 ("Opp.") at 9. While true, this does not alter the fact that lack of substantiation claims may not be brought by private plaintiffs under *any* prong of the UCL. *See, e.g.*, *Stanley*, 2012 WL 1132920, at *6. Plaintiff does not cite a single case in which a court allowed a claim to proceed under any prong of the UCL based on a lack of substantiation, and the Court finds that there is no basis for treating these prongs differently in this context. The California legislature delegated the

authority to demand substantiation for advertising claims to prosecuting authorities alone. Cal. Bus. & Prof. Code § 17508; *see King Bio*, 107 Cal. App. 4th at 1345. The legislature did not create any exception to that rule for any prong of the UCL. Nor would such an exception make sense when vesting this authority in prosecuting agencies rather than private plaintiffs was considered the "least burdensome method of obtaining substantiation for advertising claims." *King Bio*, 107 Cal. App. 4th at 1345.

The Court finds that, as a matter of law, Plaintiff cannot bring UCL claims solely on the basis of a lack of substantiation. Therefore, the Court dismisses Plaintiff's claims to the extent they are based on an alleged lack of substantiation of Defendant's Product representations.

### 2. Body Chemistry Allegations

As described above, Plaintiff alleges that

> (1) [the Product] cannot work as represented because apoaequorin, the only purported active ingredient in [the Product], is completely destroyed by the digestive system and transformed into common amino acids no different than those derived from other common food products . . . ; (2) the average daily diet contains about 75 grams of protein, contains all the required amino acids, and has about 7,500 times more amino acids than [the Product] (10 mg or 0.01 grams) and, as a result, any amino acids derived from the digestion of [the Product] would be massively diluted and could have no measurable effect on the brain; (3) ingestion of [the Product] cannot and does not have any effect on brain function or memory."

Complt. ¶ 3.

The Court finds that Plaintiff's body chemistry allegations, taken as true for purposes of this motion to dismiss, are sufficient to state a claim. If Plaintiff successfully proves that the apoaequorin in the Product is destroyed by the human digestive system or is of such a trivial amount that it cannot biologically affect memory or support brain function, he will be able to affirmatively prove the falsity of Defendant's Product claims. *See Chavez v. Nestle USA, Inc.*, 511 Fed. Appx. 606, 607 (9th Cir. 2013) (reversing district court's dismissal of complaint where plaintiff adequately pleaded a UCL claim by alleging "that the product actually contains very small amounts of the touted ingredient, DHA" and that "in order to obtain enough DHA from the [product] to promote potential brain development, young children need to consume an impractical

and extremely high quantity of [the product]—more than a bottle's worth each day"); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543-44 (S.D.N.Y. 2013) (denying motion to dismiss where plaintiffs alleged that "it is medically impossible" for the active ingredients in defendant's product to "rebuild cartilage" as claimed); *Murray v. Elations Co. LLC*, No. 13-cv-02357-BAS, 2014 WL 3849911, at *8 (S.D. Cal. Aug. 4, 2014) (denying motion to dismiss where plaintiff alleged that study concluding that "adult cartilage cannot be regenerated" demonstrates the falsity of defendant's claim that its product "renews joint cartilage").

Defendant's argument that Plaintiff "offers no support" for his body chemistry allegations and "fails to cite even a solitary study or test supporting the alleged 'principles,'" *see* Dkt. No. 30 ("Reply") at 4, must be left to later stages of the litigation in which the strength of the evidence is an appropriate consideration. *See Vasic v. Patent Health, LLC*, No. 13-cv-00849-AJB, 2014 WL 940323, at *7 (S.D. Cal. Mar. 10, 2014) (observing that "the crux of the disagreement between the parties focuses on the strength of the evidence cited in the" complaint and concluding that "because this is a motion to dismiss, wherein the Court must take the factual allegations as presented by the plaintiff as true, the Court cannot resolve the parties' dispute at this juncture"). Here, Plaintiff has pled his claim with sufficient specificity to give Defendant notice of the theory of misconduct it must defend against, and no more is required at this stage.

### 3. CLRA

Because Plaintiff has successfully stated a claim under the fraudulent prong of the UCL, the Court finds that Plaintiff also has stated a claim under the CLRA. *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) (noting that because the CLRA and the fraudulent prong of the UCL apply the same standard, "courts often analyze these [two] statutes together"). For the reasons articulated above, however, the Court dismisses Plaintiff's CLRA claim to the extent it is based on an alleged lack of substantiation. *See Stanley*, 2012 WL 1132920, at *6.

### C. Injury-In-Fact

To satisfy Article III standing, a plaintiff must allege injury that is "concrete,

7

particularized, and actual or imminent." *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Plaintiff alleges that he "purchased and consumed" the Product, "paid approximately $27.99 for the Product," and "suffered injury in fact and lost money" because the Product "did not and could not improve memory or support healthy brain function as represented." Complt. ¶ 20. Furthermore, "[h]ad Plaintiff Racies known the truth about Defendant's misrepresentations, he would not have purchased [the Product]." *Id.*

Defendant argues that Plaintiff has failed to state a UCL or CLRA claim because "Plaintiff fails to allege any facts showing that he suffered an injury in fact," such as facts demonstrating that he used the Product "for any specified period of time or as directed," or facts "showing that the product did not work." Dkt. No. 27 ("Mot.") at 12. But such a showing is not required; "[t]he alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact." *Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-02646, 2013 WL 675929, at *6 (N.D. Cal. Feb. 25, 2013).

The Court finds that Plaintiff has sufficiently pleaded injury-in-fact.

**D.   Standing to Seek Injunctive Relief**

Standing is "an essential and unchanged part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have standing to seek prospective injunctive relief, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted). In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

In false advertising cases, "where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief, and some have also held that a plaintiff who is aware of allegedly misleading advertising has no standing to seek prospective injunctive relief." *Davidson v. Kimberly-Clark Corp.*, No. 14-cv-01783-PJH, 2014 WL 7247398, at *4 (N.D. Cal. Dec. 19, 2014). Furthermore, in cases "involving claims that a product does not work or perform as

8

1  advertised, where the plaintiff clearly will not purchase the product again, courts have found no

2  risk of future harm and no basis for prospective injunctive relief." *Id.* at *5.

3     Plaintiff does not allege that he intends to purchase the Product again in the future. Indeed,

4  the complaint alleges that "[h]ad Plaintiff Racies known the truth about Defendant's

5  misrepresentations, he would not have purchased [the Product]." Complt. ¶ 20. It is entirely

6  implausible that Plaintiff risks being harmed by the Product again. The Court therefore finds that

7  Plaintiff has not alleged "a real and immediate threat" of future injury and does not have standing

8  to seek injunctive relief.

9     Plaintiff's reliance on *Henderson v. Gruma Corp.* does not persuade the Court to alter its

10  conclusion. While the *Henderson* court rejected the very argument asserted by Defendant here,

11  the court did so based on policy reasons: "to prevent [plaintiffs] from bringing suit on behalf of a

12  class in federal court [because they are now aware of the true content of the products] would

13  surely thwart the objective of California's consumer protection laws." No. 10-cv-04173-AHM,

14  2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011). This Court respectfully disagrees, because

15  state policy objectives cannot trump the requirements of Article III. *See Delarosa v. Boiron, Inc.,*

16  No. 10-cv-01569-JST, 2012 WL 8716658, at *3 (C.D. Cal. Dec. 28, 2012) ("To the extent that

17  *Henderson* and other cases purport to create a public-policy exception to the standing requirement,

18  that exception does not square with Article III's mandate.").

19     Accordingly, Plaintiff's claim for injunctive relief must be dismissed.

20  **III.   CONCLUSION**

21     The Court GRANTS WITH PREJUDICE Defendant's motion to dismiss the complaint as

22  to Plaintiff's claims under the unlawful prong of the UCL, the fraudulent prong of the UCL, and

23  the CLRA based on an alleged lack of substantiation, and Plaintiff's claim for injunctive relief.

24  The Court otherwise DENIES the motion. Defendant shall have 21 days from the date of this

25  Order to respond to the complaint. Discovery shall be limited to those claims and legal theories

26  that remain. A case management conference will be held on June 23, 2015, at 2:00 p.m. in

27  Courtroom 15, 18th Floor, San Francisco. The parties shall file a joint case management

28  statement by June 16, 2015 and include a proposed discovery plan in that statement.

**IT IS SO ORDERED.**

Dated: May 19, 2015

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge