UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP RACIES,<br><br>               Plaintiff,<br><br>   v.<br><br>QUINCY BIOSCIENCE, LLC,<br><br>               Defendant. | Case No.  15-cv-00292-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE SUR-REPLY; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 55, 63 & 83 |

Before the Court is the motion for summary judgment filed by Defendant Quincy Bioscience, LLC ("Defendant"), Dkt. No. 55 ("Def.'s MSJ"), and the cross-motion for partial summary judgment filed by Plaintiff Phillip Racies ("Plaintiff"), Dkt. No. 63 ("Pl.'s MSJ"). Defendant moves for summary judgment on the grounds that Plaintiff has no evidence to support its claims that the labeling on its brain health supplement are false or that consumers were misled by the label's alleged misrepresentations.  Plaintiff moves for partial summary judgment on the issue of falsity, asserting that the only evidence in the record is that Defendant's product could not function as advertised and that no reasonable jury could conclude otherwise.  The parties both filed oppositions to each other's motions, Dkt. Nos. 69 ("Def.'s Opp.") & 72 ("Pl.'s Opp."), and both have replied, Dkt. Nos. 75 ("Pl.'s Reply") & 76 ("Def.'s Reply").  Defendant has also moved for leave to file a sur-reply in opposition to Plaintiff's summary judgment motion.  Dkt. No. 83.

For the reasons set forth below, the Court **DENIES** Defendant's summary judgment motion and **DENIES** Plaintiff's partial summary judgment motion.  Because the Court denies Plaintiff's motion for partial summary judgment, the Court **DENIES** Defendant's motion for leave to file a sur-reply in opposition to Plaintiff's motion as **MOOT**.  Additionally, the Court **SETS** a further case management conference for October 11, 2016, at 2:00pm to discuss trial scheduling.

## I.     BACKGROUND

This is a putative consumer class action alleging that Defendant made false, misleading, and deceptive statements about the effects of its brain health supplement, Prevagen.  Dkt. No. 21 ("Am. Compl.").  Specifically, Plaintiff alleges that Prevagen does not improve memory or brain function, contrary to the claims made on the product's labeling, because the only purported active ingredient, apoaequorin ("AQ"), is completely destroyed by the digestive system and transformed into component parts that cannot affect the brain in a way different than other sources of dietary protein.  *Id.* ¶ 3.  Even if AQ was not completely destroyed during digestion, Plaintiff alleges, it would exist in such trivial amounts so as to preclude any effect.  *Id.*  For those reasons, Plaintiff asserts claims under California's unfair competition law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"), and Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA").

Defendant previously moved to dismiss the complaint, and the Court granted the motion in part and denied it in part.  Dkt. No. 34.  The Court held that Plaintiff could not bring UCL and CLRA claims based on the theory that Defendant failed to substantiate its brain health claims before marketing Prevagen, but could bring those claims based on a theory of false representations.  *Id.* at 6-7.  In other words, Plaintiff cannot prove that Defendant's labeling claims were false by pointing to an absence of evidence substantiating those claims, but only by showing those claims were false.

Defendant has now filed a motion for summary judgment.  Specifically, Defendant argues that Plaintiff has failed to raise a genuine dispute as to (1) whether its labeling claims are false and (2) whether Defendant had actual or constructive knowledge of the falsity of those labeling claims at the time that it marketed and advertised Prevagen.  Def.'s MSJ at 13-17.  With regard to falsity, Defendant contends that Plaintiff has failed to present "affirmative evidence" showing that Prevagen and AQ cannot improve memory or brain functioning.  *Id.* at 13-15.  Instead, Defendant argues, Plaintiff relies exclusively on the expert opinion of Dr. Richard T. Bazinet ("Dr. Bazinet"), who did not test Prevagen or AQ, but only applied fundamental principles of nutritional science

United States District Court
Northern District of California

and neuroscience to logically deduce that Defendant's product cannot work.[1]  That is insufficient, according to Defendant, because it relies on the already-rejected theory that Plaintiff can prove falsity by showing a lack of substantiation.  *See* Dkt. No. 34 at 6-7.  Defendant contends that even if Plaintiff does not need this kind of evidence, Dr. Bazinet's opinion fails to consider the impact that small peptides, a protein component possibly created during the digestion of AQ, might have.  *Id.* at 15-16.  With respect to knowledge of falsity, Defendant argues that Plaintiff does not have any evidence at all, but it does not point to any materials showing that absence.  *Id.* at 17.

In response, Plaintiff filed a cross-motion for partial summary judgment on the issue of falsity.  Plaintiff argues that Defendant has not disputed his expert evidence that Prevagen cannot affect brain functioning and that no reasonable jury could conclude that Defendant's claims were true in light of that clear evidence.  Specifically, Plaintiff points to Dr. Bazinet's expert report and deposition testimony that: (1) the only active ingredient in Prevagen is AQ, a dietary protein that is fully digested into non-functional components once eaten like all other dietary proteins; (2) even if AQ survived digestion or its components were functional, they could not pass through the blood-brain barrier and affect brain functioning; and (3) even if AQ survived digestion or its components were functional and even if they could pass through the blood-brain barrier or affect the brain from the outside, the recommended dosage of Prevagen would create only trivial amounts insufficient to materially impact brain functioning.  Dkt. No. 64, Ex. B ("Bazinet Report") ¶ 8.  In support of the first claim, Plaintiff attaches Defendant's own safety assessments of AQ, which were submitted to the Food and Drug Administration ("FDA").  Dkt. No. 64, Exs. C & D.  Plaintiff argues that the findings of these studies explicitly corroborate Dr. Bazinet's opinion that AQ is fully digested.  In fact, Plaintiff attaches a letter from Defendant's regulatory counsel to the FDA, which states that, "following oral consumption by humans, [AQ] is likely to be completely hydrolyzed to individual amino acids that will be absorbed in a process similar to other dietary proteins."  *Id.*, Ex. E.

Plaintiff also opposed Defendant's summary judgment motion.  While the brief primarily restates the evidence that was submitted in connection with Plaintiff's motion, it also contends that

---

[1] Defendant also seeks to exclude Dr. Bazinet's expert opinion in a separate *Daubert* motion.  *See* Dkt. No. 70.  As set forth in a separate order, the Court denies that motion.

United States District Court
Northern District of California

1  knowledge of falsity is not an element of an UCL or CLRA claim.  Pl.'s Opp. at 24-25 (citing *In*

2  *re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (with regard to UCL fraud claims); *Wilson v.*

3  *Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (with regard to CLRA claims)).

4      Defendant also opposed Plaintiff's motion.  Defendant repeats its argument that because

5  Dr. Bazinet admitted that AQ is possibly broken down into small peptides as well as single amino

6  acids, the former of which it contends can pass through the blood-brain barrier, Plaintiff cannot

7  prove that Prevagen's labeling claims are false.  Def.'s Opp. at 4-7.  To that end, Defendant offers

8  four rebuttal expert reports, three of which contend that all dietary proteins are not fully digested

9  and one of which contends that certain peptides can pass through the blood-brain barrier to affect

10  brain functioning.  *See* Dkt. No. 69-1, Exs. B-E.  Additionally, Defendant contends that Plaintiff

11  misconstrues the two safety assessments and the letter that it submitted to the FDA.  Def.'s Opp. at

12  8-9.  Specifically, Defendant argues that its studies were conducted in vitro (outside of the human

13  body) under conditions that do not accurately replicate human digestion.  Moreover, its tests did

14  not measure whether small peptides were present after digestion, only whether AQ was present.

15      Plaintiff then replied in support of his motion.  He contends that even with its four expert

16  rebuttal reports, Defendant still has not offered any evidence disputing Dr. Bazinet's opinion that

17  AQ itself cannot impact brain functioning.  Plaintiff explains that: (1) there is no evidence AQ can

18  survive digestion intact, unlike the handful of proteins that have been identified as the exception to

19  the rule; (2) even if some AQ could survive digestion intact like those rare proteins, there is no

20  evidence that AQ could pass through the blood-brain barrier and there is no evidence that a dietary

21  protein has ever done so; and (3) even if AQ could pass through the blood-brain barrier, there is no

22  evidence that it would do so in a non-trivial amount that could affect brain functioning.  Pl.'s

23  Reply at 1-2, 4-6, 12-13.[2]  Because there is no dispute on those issues, according to Plaintiff, the

24  only way that Defendant can survive partial summary judgment on the issue of falsity is through

25  its theory that the digestion of AQ might create some kind of unique small peptide that could

26  affect brain functioning.  But Plaintiff argues that line of thinking is pure "science fiction," a mere

27  _____

28  [2] Plaintiff also submitted a rebuttal expert report from Dr. Bazinet in support of his opposition to
Defendant's *Daubert* motion.  Dkt. No. 77-2 ("Bazinet Rebuttal").

1    hope that the drug acts as labeled by chance, which is insufficient to withstand summary judgment

2    in the face of actual scientific evidence to the contrary. *Id.* at 7-11. To that effect, Plaintiff argues

3    that there is no evidence of a small peptide ever affecting brain functioning, like dietary proteins.

4    *Id.* at 9-10. In any case, Plaintiff again notes that Defendant told the FDA that AQ is digested into

5    single amino acids, precluding the possibility of its small peptide theory. *Id.* at 11-12.

6          Finally, Defendant replied in support of its own motion. Defendant again reiterates its

7    claim that Plaintiff must have "affirmative evidence" that AQ is fully digested from tests run on

8    AQ, not a logical deduction from general nutritional scientific principles, to prove his case. Def.'s

9    Reply at 1-4. Defendant similarly repeats its argument that Plaintiff mischaracterizes the materials

10   that it submitted to the FDA on the basis that the tests it performed were incapable of showing

11   whether small peptides existed after in vitro digestion of AQ. *Id.* at 5-6. And Defendant again

12   contends that Plaintiff is incorrect about the need for evidence of deception in UCL and CLRA

13   cases. *Id.* 13-14. The cases that Plaintiff cites, according to Defendant, only discuss UCL and

14   CLRA claims that seek injunctive relief, which is not at issue in this case. Defendant also moved

15   for leave to file a sur-reply in support of its opposition to Plaintiff's motion. Dkt. No. 83.

## II.      LEGAL STANDARD

17         Summary judgment is proper when a "movant shows that there is no genuine dispute as to

18   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

19   A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*

20   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence

21   in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.*

22   But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from

23   the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec.*

24   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence

25   or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). If a

26   court finds that there is no genuine dispute of material fact as to only a single claim or defense or

27   as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

28         With respect to summary judgment procedure, the moving party always bears both the

United States District Court
Northern District of California

5

1   ultimate burden of persuasion and the initial burden of producing those portions of the pleadings,

2   discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp.*

3   *v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on

4   an issue at trial, it "must either produce evidence negating an essential element of the nonmoving

5   party's claim or defense or show that the nonmoving party does not have enough evidence of an

6   essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.*

7   *Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the

8   burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find

9   in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving

10  party to produce evidence supporting its claim or defense simply by saying that the nonmoving

11  party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its

12  initial burden of production, the nonmoving party has no obligation to produce anything, even if

13  the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

14    "If, however, a moving party carries its burden of production, the nonmoving party must

15  produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party

16  "must do more than simply show that there is some metaphysical doubt as to the material facts."

17  *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable

18  particularity the evidence that precludes summary judgment," because the duty of the courts is not

19  to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275,

20  1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or

21  defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

22  **III.   DISCUSSION**

23    The Court first considers Defendant's summary judgment motion. Finding that Plaintiff

24  has presented more than enough evidence to show the existence of a genuine dispute of material

25  fact, the Court turns to Plaintiff's partial summary judgment motion on the issue of falsity. While

26  Plaintiff appears to have a substantial argument, the Court cannot conclude that no reasonable jury

27  would find against it at trial. Accordingly, both motions will be denied.

28  ///

**A.      Defendant's Motion for Summary Judgment**

In its summary judgment motion, Defendant argues that Plaintiff has failed to produce evidence sufficient to raise a genuine dispute as to two different issues: (1) whether Prevagen's labeling claims are false; and (2) if so, whether Defendant had actual or constructive knowledge of that falsity at the time that it sold Prevagen.  The Court addresses each of those issues in turn.

      1.      Falsity

          a)      *Lack of Substantiation*

Defendant contends that summary judgment is proper largely because Plaintiff has failed to present evidence of specific tests that show Prevagen and AQ cannot affect brain functioning. *See* Def.'s MSJ at 13-15 ("In this case, to survive summary judgment, Plaintiff must support his body chemistry allegations with affirmative evidence regarding Prevagen® or AQ, specifically.").

The origin of Defendant's premise is *Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336 (2003).  The Court cited *King Bio* in its order granting in part and denying in part Defendant's motion to dismiss for the proposition that Plaintiff could not prove falsity by relying on a "lack of substantiation" theory.  Dkt. No. 36 at 4-6.  Such a theory would permit Plaintiff to shift the burden of proving falsity to Defendant by merely pointing out that there is no evidence that Prevagen works as its label claims.  In *King Bio*, the California Court of Appeal explained that UCL plaintiffs may not rely on such a lack of substantiation theory because "the plaintiff bears the burden of proving the defendant's advertising claim is false or misleading." *Id.* at 1342.  For that reason, the Court granted Defendant's motion to the extent Plaintiff was relying on that theory.

*King Bio*, however, is inapposite at this stage because Plaintiff is not relying upon a lack of substantiation theory.  Instead, Plaintiff presents an expert opinion that makes a logical deduction based on several scientific premises.  Namely, Dr. Bazinet opines that Prevagen's labeling claims are false because its only active ingredient, AQ, is a dietary protein.  With a few noted exceptions, dietary proteins are always digested into amino acids and possibly some small peptides, neither of which can affect brain functioning for a variety of reasons.  Bazinet Rebuttal ¶ 8.  The Court need not discuss those reasons here because it is obvious that Plaintiff is not demanding that Defendant produce evidence to substantiate its claims.  Plaintiff presents affirmative evidence in the form of a

United States District Court
Northern District of California

1   logical deduction flowing from the scientific literature.  And as the court in *King Bio* explained, in

2   a UCL false advertising case, "[t]he falsity of the advertising claims may be established by testing,

3   *scientific literature*, or anecdotal evidence."  107 Cal. App. 4th at 1348 (emphasis added).

4   Defendant's citation to *Johns v. Bayer Corp.*, No. 09cv1935, 2013 WL 1498965, at *36

5   (S.D. Cal. Apr. 10, 2013), confirms that the "lack of substantiation" issue is inapplicable here.  In

6   that case, the court granted summary judgment for the defendant on the grounds that the plaintiff,

7   who was seeking relief under the UCL for false advertising, had set forth no "affirmative scientific

8   evidence" whatsoever that the labeling claims at issue were false.  Instead, as far as the Court can

9   tell, the plaintiff's expert witnesses had merely testified that there were no studies supporting the

10  defendant's health claims.  *See id.* at **33-47.  And the only affirmative evidence presented was

11  completely irrelevant.  *See id.*  That is not the case here.  While some of Plaintiff's evidence is not

12  specific in the sense that it does not measure Prevagen or AQ's effect on brain functioning, *King*

13  *Bio* makes clear that such testing is not required to show falsity.  *See* 107 Cal. App. 4th at 1348.[3]

14  Accordingly, the Court finds that Defendant did not meet its initial burden of production

15  on summary judgment by contending that Plaintiff failed to produce any "affirmative evidence."

16          b)      *Internally Contradictory*

17  Defendant's next argument is that summary judgment is appropriate on the issue of falsity

18  because Dr. Bazinet's expert opinion is proven wrong by his deposition testimony.  Def.'s MSJ at

19  15-16.  Specifically, Defendant argues that Dr. Bazinet testified that: (1) AQ is digested into both

20  single amino acids and small peptides; (2) some peptides can cross the blood-brain barrier to affect

21  brain functioning; and (3) some peptides can affect brain functioning without crossing the blood-

22  brain barrier.  *Id.*  Furthermore, Defendant contends that Dr. Bazinet's opinion—that even if he is

23  wrong about AQ and its component parts being unable to affect brain functioning, the dosage of

24  Prevagen would produce neurologically trivial amounts of those substances—is wrong because:

25  _____

26  [3] In any case, Plaintiff did in fact present evidence specific to Prevagen and AQ.  The two safety
assessment studies that Defendant itself conducted and submitted to the FDA show that, at least in

27  vitro conditions, AQ is almost immediately and entirely hydrolyzed into components by pepsin,
the enzyme in the stomach that digests protein.  *See* Dkt. No. 64, Exs. C-E.  Even if Defendant is
correct that in vitro testing conditions do not mimic in vivo outcomes and that those assessments

28  did not test for the presence of small peptides, those claims do not make this evidence irrelevant.

United States District Court
Northern District of California

(1) he fails to take into account the recommended timing of dosage; and (2) a unique small peptide could affect the human brain at the smallest dosage possible, that is to say, one molecule. *Id.*

The Court finds that this is not the type of argument that is sufficient for a moving party to meet its initial burden of production on summary judgment. For reasons set forth in detail in the Court's order denying Defendant's motion to exclude Dr. Bazinet's expert opinion under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which the Court adopts and incorporates here, Dr. Bazinet's expert opinion is sufficiently reliable and therefore admissible at summary judgment. For that reason, the issues that Defendant raises here go to the weight of the evidence, not its sufficiency. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263-64 (9th Cir. 2001) ("Once [expert opinion] is admitted, however, follow-on issues of methodology, [study] design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility. These are issues for a jury or, in a bench trial, the judge."). A jury could conclude based on Dr. Bazinet's expert opinion that Prevagen cannot work as labeled.

In any case, Defendant largely mischaracterizes Dr. Bazinet's testimony to argue that it is internally contradictory. First, with respect to the small peptides issue, Dr. Bazinet opined in his expert report that the digestion of AQ would result in small amino acids and possibly some small peptides. Bazinet Report ¶¶ 9-14. He then explained that: (1) single amino acids created from the digestion of a dietary protein are indistinguishable from any other amino acids derived from other digested dietary protein and do not affect brain functioning, especially in trivial amounts; and (2) small peptides derived from dietary proteins, while potentially varying between digested proteins, cannot affect brain functioning because they can neither pass through the blood-brain barrier (with a few exceptions for peptides made within the body and synthetic peptides) nor affect brain functioning from outside the brain. *Id.* ¶¶ 22-24; *see also* Bazinet Rebuttal ¶¶ 3(c), 3(e). In light of those statements, Dr. Bazinet's deposition testimony to the same effect was not an admission of any kind. Second, with respect to Dr. Bazinet's triviality opinion, even if Defendant is correct that Dr. Bazinet failed to consider the effect that the timing of the dosage of Prevagen might have on its effect, that would not impact his opinion that AQ cannot affect brain functioning. It does not

United States District Court
Northern District of California

1  matter how a drug is administered, if the drug cannot have any effect regardless.

2      Accordingly, the Court finds that Defendant has failed to meet its burden of production on

3  summary judgment as to falsity because Dr. Bazinet's expert opinion raises a genuine dispute.

4          2.    Knowledge of Falsity

5      Defendant next contends that summary judgment is appropriate as to Plaintiff's UCL and

6  CLRA claims because he allegedly has failed to present any evidence that Defendant had actual or

7  constructive knowledge that Prevagen could not work as its label represented.  Def.'s MSJ at 1.

8      Summary judgment is not appropriate as to Plaintiff's claim under the fraudulent prong of

9  the UCL or the CLRA for failing to show knowledge.  "[T]o state a claim under . . . the UCL . . .

10  based on false advertising or promotional practices, it is necessary only to show that members of

11  the public are likely to be deceived."  *In re Tobacco II Cases*, 46 Cal. 4th at 312 (quotation marks

12  and citation omitted); *accord Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002).  Unlike a common

13  law fraud claim, for which the "deception" must be "known to be false by the perpetrator," such

14  knowledge is not "required to state a claim for injunctive relief under the UCL."  *In re Tobacco II*

15  *Cases*, 46 Cal. 4th at 312 (quotation marks omitted) (citing *Day v. AT&T Corp.*, 63 Cal. App. 4th

16  325, 332 (1998)).  As such, the "UCL imposes strict liability."  *Cortez v. Purolator Air Filtration*

17  *Prods. Co.*, 23 Cal. 4th 163, 181 (2000).  In light of this precedent, the Ninth Circuit has also held

18  that a defendant need not have knowledge of its deception under the UCL.  *Berger v. Home Depot*

19  *USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) ("Actual falsehood, the perpetrator's knowledge of

20  falsity, and perhaps most importantly, the victim's reliance on the false statements – each of which

21  are elements of common-law fraud claims – are not required to show a violation of California's

22  UCL."); *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (same).  And the same

23  consumer deception standard applies to claims made under the CLRA.  *Klein v. Chevron U.S.A.,*

24  *Inc.*, 202 Cal. App. 4th 1342, 1382 (2012).  Under these California Supreme Court and Ninth

25  Circuit precedents, the Court finds that Plaintiff did not need to present evidence that Defendant

26  knew the affirmative label representations at issue were false.

27      Defendant last argues that because Plaintiff is not seeking injunctive relief in this case, the

28  California Supreme Court's statement in *In re Tobacco II Cases* does not apply.  Def.'s Reply at

United States District Court
Northern District of California

1  13-14; *see also In re Tobacco II Cases*, 46 Cal. 4th at 312 (stating that knowledge is not "required

2  to state a claim for *injunctive* relief under the UCL") (emphasis added).  The Court disagrees.

3  There is no reason why evidence of knowledge of falsity would be required when a plaintiff seeks

4  restitution, as here, but not when a plaintiff seeks injunctive relief.  To that effect, the California

5  Supreme Court has stated that the common law elements of fraud do not apply to a plaintiff

6  seeking restitution for UCL fraud.  *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1266-67 (1992).

7        Accordingly, the Court denies Defendant's motion as to the issue of knowledge of falsity.

8        **B.    Plaintiff's Cross-Motion for Partial Summary Judgment**

9        The Court now considers Plaintiff's cross-motion for partial summary judgment on the

10  issue of falsity.  Plaintiff contends that its evidence is uncontroverted on several key issues, each

11  of which independently proves Defendant's labeling was false.  Pl.'s MSJ at 12-14.  Specifically,

12  Plaintiff argues that there is no genuine dispute that: (1) AQ is fully digested into non-functional

13  components once eaten like all other dietary proteins; (2) even if AQ survived digestion or its

14  digested components were functional, neither could not pass through the blood-brain barrier and

15  affect brain functioning; and (3) even if AQ survived digestion or its components were functional

16  and even if they could pass through the blood-brain barrier or affect the brain from the outside, the

17  recommended dosage of Prevagen would create only trivial amounts insufficient to materially

18  impact brain functioning.  *Id.*; *see also* Bazinet Report ¶ 8.

19        The Court finds that even if Plaintiff has succeeded in showing that these material facts are

20  uncontroverted, a reasonable jury could still conclude that Plaintiff was not entitled to a directed

21  verdict in its favor after the close of its case-in-chief.  Plaintiff relies entirely on logical deductions

22  from scientific premises to reach its conclusion.  While the Court has found that these premises

23  and deductions are reliable within the meaning of *Daubert*, the Court cannot rule out that a jury

24  might reasonably find after adversarial testing that they are not sufficiently persuasive to warrant a

25  directed verdict.  Accordingly, the Court finds that Plaintiff has failed to meet its burden of

26  persuasion and denies its motion for partial summary judgment on that basis.

27  **IV.    CONCLUSION**

28        For the foregoing reasons, the Court hereby **DENIES** Defendant's summary judgment

11

motion and **DENIES** Plaintiff's partial summary judgment motion.  Because the Court denies Plaintiff's motion for partial summary judgment, the Court **DENIES** Defendant's motion for leave to file a sur-reply in opposition to Plaintiff's motion as **MOOT**.  Additionally, the Court **SETS** a further case management conference for October 11, 2016, at 2:00pm to discuss trial scheduling.

      **IT IS SO ORDERED.**

Dated:  9/30/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge