1
BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
2
PATRICIA N. SYVERSON (CA SBN 203111)
MANFRED P. MUECKE (CA SBN 222893)
3
600 W. Broadway, Suite 900
San Diego, California 92101
4
psyverson@bffb.com
mmuecke@bffb.com
5
Telephone: (619) 798-4593

6
BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
7
ELAINE A. RYAN (*Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
8
Phoenix, AZ 85016
eryan@bffb.com
9
Telephone: (602) 274-1100

10
SIPRUT, PC
STEWART M. WELTMAN (*Admitted Pro Hac Vice*)
11
17 North State Street
Suite 1600
12
Chicago, IL 60602
sweltman@siprut.com
13
Telephone: (312) 236-0000

14
*Attorneys for Plaintiff and the Proposed Class*
*Additional Attorneys on Signature Page*
15

16
## UNITED STATES DISTRICT COURT

17
## NORTHERN DISTRICT OF CALIFORNIA

18

19
PHILLIP RACIES, on behalf of himself
and all others similarly situated,

20
            Plaintiff,

21
    v.

22
QUINCY BIOSCIENCE, LLC, a
23
Wisconsin limited liability corporation

24
            Defendant.
25

26

27

28

Case No.:    4:15-cv-00292-HSG

**PLAINTIFF'S NOTICE OF
MOTION AND MOTION FOR
CLASS CERTIFICATION**

Date:    November 16, 2017
Time:   2:00 p.m.
Place:  Ctrm 2
Complaint Filed: January 21, 2015
Trial Date:      None set

Judge: Hon. Haywood S. Gilliam, Jr.

PLEASE TAKE NOTICE in accordance with the schedule set forth in the Court's March 20, 2017 Order (D.E. 104), Plaintiff Phillip Racies hereby moves for an order certifying the following Classes pursuant to Federal Rules of Civil Procedure Rule 23:

**Multi-State UCL Class:**
> All consumers who, within the applicable statute of limitations period, purchased Prevagen in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington until the date notice is disseminated.

Or, alternatively,

**California-Only UCL Class**:
> All California consumers who, within the applicable statute of limitations period, purchased Prevagen until the date notice is disseminated.

And,

**California-Only CLRA Class:**
> All California consumers who, within the applicable statute of limitations period, purchased Prevagen until the date notice is disseminated.

Plaintiff seeks certification of his claims under the Unfair Competition Law, Business and Professions Code §§17200, *et seq.* ("UCL"), and the Consumer Legal Remedies Act, Civil Code §1750, *et seq.* ("CLRA"). As set forth in the accompanying memorandum, the proposed Classes satisfy all requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, thereby warranting class certification.

Further, Plaintiff meets all the requirements for appointment as a Class representative and, pursuant to Rule 23, Plaintiff moves for an Order appointing him as a Class representative of the Classes set forth above.

Finally, Plaintiff moves for an Order appointing the law firms of Bonnett, Fairbourn, Friedman & Balint, P.C., and Siprut, PC as Class Counsel. As set forth in the accompanying memorandum and the Declaration of Patricia N. Syverson, Plaintiff's counsel meet each of the requirements of Rule 23(g)(1).

Dated: September 15, 2017

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

s/ *Patricia N. Syverson*
PATRICIA N. SYVERSON (CA SBN 203111)
MANFRED P. MUECKE (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone:  (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN (*Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
Telephone:  (602) 274-1100

SIPRUT, PC
STEWART M. WELTMAN (*Admitted Pro Hac Vice*)
17 North State Street, Suite 1600
Chicago, IL  60602
Telephone:  (312) 236-0000
sweltman@siprut.com

BOODELL & DOMANSKIS, LLC
MAX A. STEIN (*Admitted Pro Hac Vice*)
NADA DJORDJEVIC (*Admitted Pro Hac Vice*)
353 North Clark Street, Suite 1800
Chicago, IL 60654
mstein@boodlaw.com
ndjordjevic@boodlaw.com
Telephone:  (312) 938-1670

*Attorneys for Plaintiff and the Proposed Classes*

2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    STATEMENT OF THE ISSUES ...................................................................1

II.   COMMON EVIDENCE WILL BE USED TO PROVE THE CLASS' CLAIMS ...........................................................................................................4

    A.  All Products Have the Same Active Ingredient, Have the Same Stated Purpose, and Bear Labels with Identical Brain Health Representations ......4

    B.  Common Evidence Will Be Used to Prove that Prevagen Does Not Provide Any of the Represented Brain Health Benefits ...............................................6

    C.  Prevagen Is Worthless, Entitling Plaintiff and the Classes Alike To A Full Refund Calculable on a Classwide Aggregate Basis .......................................7

III.  LEGAL ARGUMENT .......................................................................................7

    A.  Class Certification Should Be Granted .............................................................7

    B.  Plaintiff's Proposed Classes ..............................................................................9

    C.  Plaintiff Satisfies the Rule 23(a) Prerequisites ..............................................9

        1.  Rule 23(a)(1) - The Proposed Classes Are Numerous ...........................9

        2.  Rule 23(a)(2) - The Claims Are Common .................................................10

        3.  Rule 23(a)(3) – Plaintiff's Claims Are Typical ........................................11

        4.  Rule 23(a)(4) - Plaintiff and His Counsel Have and Will Continue to Adequately Represent the Classes ........................................................12

    D.  Rule 23(b)(3) is Satisfied .................................................................................13

        1. Predominance Is Satisfied .........................................................................14

          a.  The Common Issues Predominate ........................................................14

          b.  Reliance and Causation Issues Do Not Defeat Predominance .......17

          c.  Relief Can Be Calculated on An Aggregate Classwide Basis...........19

          d.  California Law Can Be Applied to the Multi-State Class.................22

        2. A Class Action is the Superior Method of Adjudication .........................22

IV.  CONCLUSION..................................................................................................23

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abbit v. ING USA Annuity*

    No. 13cv2310–GPC–WVG, 2015 WL 7272220 (S.D. Cal. Nov. 16, 2015).....17, 19

*Allen v. Hyland's Inc.*

    300 F.R.D. 643 (C.D. Cal. 2014) ....................................................... 3, 20, 22

*Amchem Prods. v. Windsor, Inc.*

    521 U.S. 591 (1997) ...........................................................................8, 14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*

    133 S. Ct. 1184 (2013) .......................................................................7, 18

*Barrera v. Pharmavite LLC*

    No. 11-cv-04153 (C.D. Cal. Nov. 19, 2014) ...................................... Passim

*Beck-Ellman v. Kaz USA, Inc.*

    283 F.R.D. 558 (S.D. Cal. 2012) ............................................................. 13

*Blackie v. Barack*

    524 F.2d 891 (9th Cir. 1975) .................................................................. 19

*Brown v. Hain Celestial Grp. Inc.*

    2015 WL 3398415 (N.D. Cal. May 26, 2015) ......................................... 17

*Bruno v. Quten Research Inst.*

    *LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) .................................................. 11

*Carnegie v. Household Int'l, Inc.*

    376 F.3d 656 (7th Cir. 2004) ..............................................................8, 23

*Chavez v. Blue Sky Natural Beverage Co.*

    268 F.R.D. 365 (N.D. Cal 2010)............................................................. 11

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*

    2015 WL 6638929 (N.D. Cal. Oct. 29, 2015)......................................... 17

*Colgan v. Leatherman Tool Group, Inc.*

    135 Cal.App.4th 663 (2006) ...................................................................3, 18

*Comcast Corp. v. Behrend*

    133 S. Ct. 1426 (2013) ...................................................................19, 20

*Davis-Miller v. Auto. Club of S. Cal.*

    201 Cal.App.4th 106 (Ct. App. 2011) ............................................. 2

*Delarosa v. Boiron, Inc.*

    275 F.R.D. 582 (C.D. Cal. 2011) ........................................... 11, 16, 23

*Ellis v. Costco Wholesale Corp.*

    657 F.3d 970 (9th Cir. 2011) .................................................. 10

*Eisen v. Carlisle & Jacquelin*

    417 U.S. 156 (1974) .................................................................. 7

*Forcellati v. Hyland's, Inc.*

    No. CV 12-1983, 2014 WL 1410264 (C.D. Cal. April 9, 2014)........................ Passim

*FTC v. Nat'l Urological Grp., Inc.*

    645 F. Supp.2d 1167 (N.D. Ga. 2008).................................................16, 19

*F.T.C. v. Pantron I Corp.*

    33 F.3d 1088 (9th Cir. 1994) ........................................... 3, 11, 18

*Gartin v. S & M Nutec, LLC*

    245 F.R.D. 429 (C.D. Cal. 2007) ............................................... 14

*Green v. Fed. Exp. Corp.*

    614 Fed. Appx. 905 (9th Cir. 2015) .............................................. 2

*Guido v. L'Oreal, USA, Inc.*

    284 F.R.D. 468 (C.D. Cal. 2012) ............................................10, 12, 18, 23

*Gutierrez v. Wells Fargo Bank NA*

    589 Fed. Appx. 824 (9th Cir. 2014) .............................................. 17

iii

*Hanlon v. Chrysler Corp.*

    150 F.3d 1011 (9th Cir. 1998) ..................................................................11, 12, 14, 15

*Hanon v. Dataproducts Corp.*

    976 F.2d 497 (9th Cir. 1992) ................................................................................ 11

*In re Computer Memories Sec. Litig.*

    111 F.R.D. 675 (N.D. Cal. 1986)......................................................................... 22

*In re Ferrero Litig.*

    278 F.R.D. 552 (S.D. Cal. 2011)......................................................................... 13

*In re Linkedin User Privacy Litig.*

    309 F.R.D. 573 (N.D. Cal. 2015)......................................................................... 10

*In re POM Wonderful Mktg. & Sales Practices Litig.*

    No. ML 10-02199 DDP (RZx), 2012 WL 4490860 (C.D. Cal. Sept. 28, 2012)..... 18

*In re Steroid Hormone Product Cases*

    181 Cal.App. 4th 145 (App. 2010)......................................................................... 2

*In re Tobacco II Cases*

    46 Cal. 4th 298, 93 Cal. Rptr. 3d 559 (2009) ..............................................Passim

*Int'l Molders' & Allied Workers' Local 164 v. Nelson*

    102 F.R.D. 457 (N.D. Cal. 1983)......................................................................... 10

*Jasso v. Money Mart Express, Inc.*

    879 F. Supp. 2d 1038 (N.D. Cal. 2012) ................................................................. 8

*Johns v. Bayer Corp.*

    280 F.R.D. 551 (S.D. Cal. 2012)....................................................................11, 12

*Khoday v. Symantec Corp.*

    2014 WL 1281600 (D. Minn. Mar. 3, 2014) ...................................................... 20

*Kwikset Corp. v. Super. Ct.*

    51 Cal. 4th 310, 120 Cal. Rptr. 3d 741 (2011) ...........................................Passim

iv

*Leyva v. Medline Indus. Inc.*
    716 F.3d 510 (9th Cir. 2013) ................................................................19, 20

*Lilly v. Jamba Juice Co.*
    308 F.R.D. 231 (N.D. Cal. 2014).................................................................. 11

*Mazza v. Am. Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012) .............................................. 2, 3, 12, 22

*Mullins v. Direct Digital, LLC*
    No. 13 CV 1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014)................................ 22

*Mullins v. Premier Nutrition Corp.*
    2016 WL 1535057 (N.D. Cal. Apr. 15, 2016)............................................... 20

*Neal v. NaturalCare, Inc.*
    EDCV 12-00531 DOC (OPx), (E.D. Cal. Dec. 20, 2012) ....................................... 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*
    287 F.R.D. 590 (C.D. Cal. 2012) ......................................................10, 19

*O'Donovan v. CashCall, Inc.*
    278 F.R.D. 479 (N.D. Cal. 2011)................................................................... 15

*Ortega v. Natural Balance*
    300 F.R.D. 422 (C.D. Cal. 2014) ..............................................................Passim

*Pecover v. Elec. Arts Inc.*
    2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ............................................. 23

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ....................................................................... 22

*Pulaski & Middleman, LLC v. Google, Inc.*
    802 F.3d 979 (9th Cir. 2015) .................................................................. 19

*Quesada v. Herb Thyme Farms, Inc.*
    62 Cal. 4th 298, 361 P.3d 868 (2015).......................................................... 16

v

*Rodriguez v. Hayes*
    591 F.3d 1105 (9th Cir. 2010) ........................................................................ 11

*Reynoso v. S. Cnty. Concepts*
    No. SACV 07-373-JVS(RCx), 2007 WL 4592119 (C.D. Cal. Oct. 15, 2007) .......... 9

*Stearns v. Ticketmaster Corp.*
    655 F.3d 1013 (9th Cir. 2011) .................................................................... 2, 18

*Sun Oil Co. v. Wortman*
    486 U.S. 717 (1988) ...................................................................................... 22

*Thurston v. Bear Naked, Inc.*
    2013 WL 5664985 (S.D. Cal. July 30, 2013) ................................................. 20

*Vaccarino v. Midland Nat. Life Ins. Co.*
    2014 WL 572365 (C.D. Cal. Feb. 3, 2014) ............................................... 20, 21

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ........................................................................ 23

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ...................................................................................... 10

*Weeks v. Kellogg Co.*
    No. CV-09-08102 (MMM) (RZx), 2013 WL 6531177
    (C.D. Cal. Nov. 23, 2013) .............................................................................. 11

*Werdebaugh v. Blue Diamond Growers*
    No. 12-CV-2724-LHK, 2014 WL 2191901 (N.D. Cal. May 23, 2014) ................. 11

*Wiener v. Dannon Co.*
    255 F.R.D. 658 (C.D. Cal. 2009) ......................................................... 12, 14, 16

*Williams v. Gerber Prods. Co.*
    552 F.3d 934 (9th Cir. 2008) .......................................................................... 8

*Yokoyama v. Midland Nat'l Life Ins. Co.*
    594 F.3d 1087 (9th Cir.2010) ........................................................................ 19

vi

*Zinser v. Accufix Research Inst., Inc.*

    253 F.3d 1180 (9th Cir. 2001) ........................................................................ 22

## RULES

Fed. R. Civ. P.  23(a) ........................................................................................ 4, 9

Fed. R. Civ. P.  23(a)(1) ....................................................................................... 9

Fed. R. Civ. P.  23(a)(2) ..................................................................................... 10

Fed. R. Civ. P.  23(a)(3) ..................................................................................... 11

Fed. R. Civ. P.  23(a)(4) ..................................................................................... 12

Fed. R. Civ. P. 23(b)(3) ............................................................................... Passim

Fed. R. Civ. P. 23(g) ............................................................................................. 4

Fed. R. Civ. P. 23(g)(1) ...................................................................................... 13

## CODES

Cal. Bus. & Prof. Code § 17200 ......................................................................... 4

Cal. Bus. & Prof. Code § 17203 ......................................................................... 3

Cal. Bus. & Prof. Code § 17208 ......................................................................... 4

Cal. Civ. Code § 1750 .......................................................................................... 4

Cal. Civ. Code § 1780(a)(1) ................................................................................ 3

Cal. Civ. Code § 1780(a)(3) ................................................................................ 3

Cal. Civ. Code § 1783 .......................................................................................... 4

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:15-cv-00292

# I.   STATEMENT OF THE ISSUES

Defendant Quincy Bioscience, LLC manufactures, distributes, markets, and sells five Prevagen products (the "Products"), representing on every Product label that Prevagen "improves memory" and "supports: healthy brain function, sharper mind, and clearer thinking" and Prevagen "improves memory within 90 days" (collectively the "brain health representations").[1]  There are no other represented benefits.  Defendant's brain health representations are false, misleading, and reasonably likely to deceive consumers because the Products provide no brain health benefits to anyone.  Every consumer who purchased Prevagen suffered a common economic injury when they paid for a Product that does not provide the only purported benefits promised on the label and a product that is otherwise worthless.

The issue presented by this Motion is not, however, whether Defendant's brain health representations are in fact false or misleading, which the Court has already determined are disputed issues of material fact to be determined by the trier of fact.[2]  Rather, the issue presented by this motion is whether Plaintiff's claims present common and predominant questions that warrant class certification.  They do.  Evidence common to the Classes will demonstrate that, as a matter of well-established principles of human digestion and brain chemistry, Defendant's Products do not and cannot provide the brain health benefits Defendant claims they do.  Even though this question

---

[1] In addition to the three products originally identified in the complaint, it appears that there are two additional products.  The first is Prevagen Extra Strength Chewable, essentially identical to the original Prevagen Extra Strength but in chewable form.  The second is Prevagen Professional Strength. *See* https://www.amazon.com/Prevagen-Professional-40mg-30-caps/dp/B0058HX4FI.  Retail sales information regarding the Professional product was recently produced by Defendant along with the retail sales ~~ducts.  The Professional product sales are relatively small,~~ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (*See* Ex. A, QUI004595-4599.)  While the Professional ~~ing~~ an unidentified period of time been offered to an undefined and amorphous group described as "health care practitioners" before it was made available to the public, its marketing materials and packaging had the same false brain health representations. (*See* Ex. B, QuincyFTC 001604.)  All Exhibits are attached to the Syverson Declaration filed herewith.

[2] *See* D.E. 89 at 6 (denying Defendant's Motion for Summary Judgment).

predominates over all other questions, because there is no other reason to purchase the Products, injury and damages also present common questions of fact that warrant class certification here.

Causation for the UCL claims and the CLRA claims are both determined based upon an objective standard – whether the representations would be material to a reasonable consumer. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327, 93 Cal. Rptr. 3d 559, 581–82 (2009) ("*In re Tobacco II*") (UCL claim); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 332–33, 120 Cal. Rptr. 3d 741, 759–760 (2011) ("*Kwikset*") (UCL claim); *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 157 (2010) (CLRA claim.)

With regard to the UCL claims, causation and thus materiality only has to be established for the named plaintiff, as proof of injury/causation/standing are not required to establish the class' right to restitution under the UCL. *In re Tobacco II*, 46 Cal. 4th at 314-324. *See also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) (noting that "Under California's UCL, restitution is available to absent class members without proof of deception, reliance, or injury" (citing *In re Tobacco II*).)[3]  Once reliance/causation is established for the Plaintiff in a UCL action, if the defendant's representations are found to be false, then restitution to the class is also appropriate. *In re Tobacco II, supra.*

Under the CLRA, an inference of classwide reliance is established if: (1) the representation is material under the objective reasonable person standard; and (2) the representations were made to the entire class. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), *abrogation on other grounds recognized by Green v. Fed. Exp. Corp.*, 614 Fed. Appx. 905 (9th Cir. 2015); *Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal.App.4th 106, 122 (2011).   Here, Defendant's false representations were made to all Class

---

[3] Court also rejected the argument that state UCL law could not confer Article III standing on absent class members without also showing proof of their reliance, injury and damage. *Id.*

members, as these representations are on all of the product labeling, and there is no other reason to buy Prevagen other than for its purported brain health benefits. Further, label representations are presumed to be material. *See F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095–96 (9th Cir. 1994) ("Express product claims are presumed to be material. . . ."); *see also Kwikset*, 51 Cal. 4th at 328. The inference is both warranted and irrefutable given the brain health benefits are the only represented Product benefits and thus are the only reason that any consumer would ever purchase Prevagen.

Further, if Plaintiff proves that the Products do not provide the brain health benefits represented on the label, under the CLRA, out-of-pocket costs or restitution is available and restitution is available under the UCL. *See, e.g., Mazza*, 666 F.3d at 591; *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 693 (2006), *as modified on denial of reh'g* (Jan. 31, 2006); *see also* Cal. Civ. Code §1780(a)(1) and (3); Cal. Bus. & Prof. Code § 17203. Where, as here, the product will be proven worthless, the monetary remedy for Class members' purchases is identical – the entire purchase price paid for the Products.[4] As a result, damages/restitution can be calculated on an aggregate classwide basis using retail sales data produced and maintained by Defendant. As discussed more fully in Section II(C) below, Defendant has produced a breakdown of Prevagen retail sales by quarter for each year from 2011 through the second quarter of 2017 and for each state sought to be included in the multi-state class, including California.

---

[4] Restitution under the UCL is akin to damages under the CLRA where, as here, the product will be proven worthless. "Where, as here, a plaintiff contends—and seeks to prove—that she purchased a worthless product, common sense dictates that the proper measure of restitution is the purchase price of the allegedly worthless product." Ex. C, *Barrera v. Pharmavite LLC*, No. 11-cv-04153 (C.D. Cal. Nov. 19, 2014) (slip op.), at p. 36. *See also Allen v. Hyland's Inc.*, 300 F.R.D. 643, 670-671 (C.D. Cal. 2014) ("Plaintiffs seek restitution of the purchase price of the products. Restitution or out-of-pocket costs can be 'readily calculated using Defendants' sales numbers and an average retail price.'") (citing *Ortega*); *Ortega v. Natural Balance*, 300 F.R.D. 422, 429-30 (C.D. Cal. 2014), *decertified on other grounds*, 2015 WL 12655388 (C.D. Cal. Feb. 20, 2015) ("Whether termed restitution or out-of-pocket costs, Plaintiffs are seeking to recover what they spent on Cobra. This can be readily calculated using Defendant's sales numbers and an average retail price.").

False advertising cases like this, which are based on uniform misrepresentations, are routinely certified as class actions under California law because common questions of fact and law predominate.  *See, e.g.*, *Forcellati v. Hyland's, Inc.*, No. CV 12-1983, 2014 WL 1410264, n. 5 (C.D. Cal. April 9, 2014) (collecting cases); *see also* Ex. C, *Barrera* (slip op.).

Because all of the elements of both Rule 23(a) and 23(b)(3) are met here,  Plaintiff Phillip Racies respectfully requests that the Court certify the following Classes: 1) a Multi-State Class brought under California consumer law and the laws of 9 states that have similar consumer fraud statutes or, alternatively, a California-Only Class,  pursuant to the Unfair Competition Law, California Business & Professions Code §17200, *et seq.* ("UCL") and 2) a California-only Class pursuant to  the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* ("CLRA").  Plaintiff also seeks to be appointed as Class representative, and for the law firms of Bonnett, Fairbourn, Friedman & Balint, P.C., and Siprut, PC, to be appointed as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## II.   COMMON EVIDENCE WILL BE USED TO PROVE THE CLASS' CLAIMS

### A.   All Products Have the Same Active Ingredient, Have the Same Stated Purpose, and Bear Labels with Identical Brain Health Representations

Throughout the Class periods[5], Defendant manufactured, distributed, marketed, and sold the Products to consumers throughout the United States, including California. (D.E. 40, Defendant's Answer to FAC, ¶ 21 ("Defendant admits it manufactures, advertises, markets, distributes, and/or sells Prevagen to consumers in California and the United States."); Ex. A at QUI 004595-96 and QUI 004599 (spreadsheets evidencing Defendant's sale of the Products in each of the multi-state Class States from 2011 through the second quarter of 2017).)

---

[5] For example, there is a four-year statute of limitations under the UCL (Cal. Bus. & Prof. Code § 17208) and a three-year statute of limitations under the CLRA (Cal. Civ. Code § 1783).

The Products contain only one active ingredient that Defendant contends provides brain health benefits – apoaequorin – a protein found in jellyfish. (Ex. D, Bazinet Report at ¶ 9; Ex. E, QUINCYFTC-005054-5065, at QUINCYFTC-005055 (document from Defendant identifying apoaequorin as the main ingredient in Prevagen and that it originated from jellyfish)[6]; Ex. F, QUINCYFTC-005052-5053 (Defendant's internal document titled "Prevagen Ingredient List" █████████████████████ █████████████████████████████████████████).)  The regular strength and mixed berry chewable Products contain 10 mg of apoaequorin per serving, the extra strength and mixed berry flavor extra strength chewable Products contain 20 mg of apoaequorin per serving, and the professional strength Product contains 40 mg of apoaequorin per serving.  (Ex. G, Labels.)  The labels instruct consumers to take one capsule or tablet of Prevagen daily.  (*Id.*)

**Every** package of Prevagen sold to consumers throughout the Class periods conveys the same affirmative brain health message.[7]  The front panels state that Prevagen "improves memory" and "supports: healthy brain function, sharper mind, and clearer thinking" (Ex. G, Labels).  The side panels state that Prevagen will "improve[] memory within 90 days" (*id.*).  The back panels state that "Prevagen improves memory" (*id.*).[8]  Thus, virtually anywhere one looks at the Prevagen label, one sees the represented false brain health benefits.  As demonstrated by the following representative Product packages, these were the only purported Product benefits stated

---

[6] This exhibit has been partially redacted by Plaintiff because the redacted portions were irrelevant to the proposition stated and referred primarily to various studies that have been barred from the record (*see* D.E. 120 (granting Plaintiff's motion to strike).)

[7] The Product labels were uniform across Class States.  *See* Ex. H, Defendant's Responses to Requests for Admission, No. 22 (Defendant "has not made any state-specific change to its labeling of the products Plaintiff identified in the First Amended Complaint").

[8] The professional strength Product label contains similar brain health benefit representations but their location on the Product differs slightly.

on the packages:



Thus, each and every consumer who purchased the Products was exposed to Defendant's deceptive brain health representations at the point of purchase. Because the purported brain health benefits were the only represented Product benefits there was only one reason to buy Prevagen – because of its purported brain health benefits.

**B.    Common Evidence Will Be Used to Prove that Prevagen Does Not Provide Any of the Represented Brain Health Benefits**

Plaintiff will prove with evidence common to the Classes that Defendant's uniform brain health representations are false and misleading.

Dr. Richard Bazinet, Ph.D., of the University of Toronto, Plaintiff's science expert, has opined that, as a matter of well-established, universally accepted and proven principles of human digestion and brain chemistry, "Prevagen cannot improve memory or support healthy brain function" for three reasons. (Ex. D, Bazinet Expert Report, at ¶¶ 8, 30.) The Court is fully aware of the scientific evidence in this matter as it has ruled on each side's summary judgment motions and concluded that material questions of fact exist regarding the falsity of Defendant's brain health claims. (D.E. 89.)   And, there can be no doubt that such questions are common and that these questions predominate over any other questions.

- 6 -

### C.    Prevagen Is Worthless, Entitling Plaintiff and the Classes Alike To A Full Refund Calculable on a Classwide Aggregate Basis

If Plaintiff proves Prevagen does not provide the represented brain health benefits, the monetary loss to each Class member is identical – the entire purchase price paid for Defendant's Product.   Dr. Bazinet's report and opinions support the conclusion that Prevagen is worthless.  He has explained why apoaequorin does not provide any brain health benefits.  Further, the only reason anyone would buy Prevagen is for its brain health benefits as no one would buy 10-20mg capsules of apoaequorin costing $1.25-$2.00 dollars per capsule for any other purpose.   Thus, aggregate classwide damages (either out-of-pocket damages/restitution under the CLRA or restitution under the UCL) can be calculated on a common basis using retail sales data produced and maintained by Defendant on a state-by-state basis.  (Ex. A at QUI 004599 (listing of retail sales on a state-by-state basis with a combined total of ███████ in sales during the Class periods and ███████ for California alone)); *see generally* Section III(D)(1)(c), below.)[9]

## III.   LEGAL ARGUMENT

### A.    Class Certification Should Be Granted

Again, the issue presented by this Motion is not whether Defendant's brain health representations are in fact false or misleading, but whether Plaintiff Racies' claims are amenable to classwide treatment.    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("'[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'") (citation omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) ("Merits questions

---

[9] Defense counsel confirmed that the documents produced and cited herein contain the retail sales data requested. (*See* Ex. I, email chain regarding production of retail sales data); *see also* Ex. J, Defendant's Supplemental Responses to Plaintiff's Interrogatories, Set Two, at Nos. 20 and 23 (Defendant produced documents from which Plaintiff may ascertain the retail pricing information requested).)

may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. . . . [A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.") (citation and quotation marks omitted).

Consumer protection claims are ideal for class certification.  *See, e.g.*, *Amchem Prods. v. Windsor, Inc.*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer … fraud").  False advertising cases based on uniform misrepresentations are routinely certified as class actions under California law because common questions of fact and law predominate.[10]  "[C]onsumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights. . . .  These actions supplement the efforts of law enforcement and regulatory agencies.  This court has repeatedly recognized the importance of these private enforcement efforts." *In re Tobacco II*, 46 Cal. 4th at 313 (internal citations and quotation marks omitted).  Class actions are particularly appropriate where, as here, individual damages are small.  *See Jasso v. Money Mart Express, Inc.*, 879 F. Supp. 2d 1038, 1045 (N.D. Cal. 2012) (noting that the Supreme Court has recognized class actions as "the only economically rational alternative" for instances where a large group of individuals each suffer a small amount of damages).

Any doubts should be resolved in favor of certification because denying certification will almost certainly terminate the action to the detriment of class members.  *See, e.g.*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis original).

---

[10] *See, e.g.*, *Forcellati,* 2014 WL 1410264, *8, n. 5 (collecting cases).  *See also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("the primary evidence in a false advertising case is the advertising itself"); *Barrera v. Pharmavite LLC,* No. 11-cv-04153 (C.D. Cal. Nov. 19, 2014) (slip op.) (Ex. C); *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422, 431 (C.D. Cal. 2014), *decertified on other grounds,* 2015 WL 12655388 (C.D. Cal. Feb. 20, 2015) (citation omitted).

- 8 -

### B.    Plaintiff's Proposed Classes

Plaintiff seeks class certification under Fed. R. Civ. P. 23(a) and 23(b)(3) of the following Classes: Multi-State or, alternatively, California-Only UCL Class and California-Only CLRA Class:[11]

> **Multi-State UCL Class:**
> All consumers who, within the applicable statute of limitations period, purchased Prevagen in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington until the date notice is disseminated.

Or, alternatively,

> **California-Only UCL Class:**
> All California consumers who, within the applicable statute of limitations period, purchased Prevagen until the date notice is disseminated.

And,

> **California-Only CLRA Class:**
> All California consumers who, within the applicable statute of limitations period, purchased Prevagen until the date notice is disseminated.

### C.    Plaintiff Satisfies the Rule 23(a) Prerequisites

#### 1.    Rule 23(a)(1) - The Proposed Classes Are Numerous.

Defendant admits that it markets and sells the Products to consumers throughout California and the United States.  (D.E. 40, Defendant's Answer to FAC, at ¶ 21 ("Defendant admits it manufactures, advertises, markets, distributes, and/or sells Prevagen® to consumers in California and the United States").   Based on Defendant's sales numbers, during the Class periods in California alone, ███████████ ███████████ were sold.  (*See generally* Ex. A at QUI 004595-4596 (listing units sold from 2011 to the second quarter of 2017 in each of the Class States).)  Thus, numerosity is satisfied. *See, e.g.*, *Reynoso v. S. Cnty. Concepts*, No. SACV 07-373-JVS(RCx), 2007 WL

---

[11] Excluded from the proposed Classes are Defendant, its officers, directors, and employees and those persons who purchased Prevagen for resale.

- 9 -

4592119, at *2 (C.D. Cal. Oct. 15, 2007); *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015) ("[S]satisfactions of the numerosity requirement is not dependent upon any specific number of proposed class members, but 'where the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met.'") (quoting *Int'l Molders' & Allied Workers' Local 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983)).

### 2.   Rule 23(a)(2) - The Claims Are Common.

Commonality requires that Plaintiff and the Class members share a common claim that is "capable of classwide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity. . . in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes II*"). Rule 23(a)(2) has "been construed permissively," and "all that is required is a ***single common question*** for plaintiffs to satisfy their 'limited burden' under Rule 23(a)(2)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quotation marks and citation omitted; emphasis added); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 603 (C.D. Cal. 2012). "What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes II*, 564 U.S. at 350 (quotation marks and citation omitted).

Plaintiff's claims arise from uniform product labels, meaning Class members were exposed to and saw the same brain health representations, the truth or falsity of which will resolve a common issue central to all claims "in one stroke." *See Guido v. L'Oreal, USA, Inc.,* No. CV 11-1067, 2013 WL 3353857 at *5 (C.D. Cal. July 1, 2013); *see also Barrera,* slip op., at 17 ("Because the [products'] packaging conveyed a uniform message, plaintiff's common questions can be resolved 'in one stroke'") (Ex. C); *Forcellati*, 2014 WL 1410264, at *9 ("'Because a determination of the truth or falsity of Defendant[s'] representation of [the products'] efficacy will resolve an issue that is

- 10 -

central to the validity of each one of the claims in one stroke,' and the products' efficacy can be established on a class-wide basis through …expert testimony, Plaintiffs have sufficiently shown commonality.") (quoting *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011)).

Materiality is also a common issue because "this inquiry focuses on *the [d]efendants'* representations about the product." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (collecting cases) (emphasis added). The uniform representations on the Product labels are material on their face as they were the only represented Product benefits such that there was no other reason for anyone to purchase the Products. Therefore, classwide reliance under the CLRA is properly presumed or inferred. *See, e.g.*, *Pantron I Corp.*, 33 F.3d at 1095-96 (label representations are presumed material); *Kwikset*, 51 Cal. 4th at 328 (same).

### 3.  Rule 23(a)(3) – Plaintiff's Claims Are Typical.

Typicality is satisfied where a named plaintiff's claims are "reasonably co-extensive" with absent Class members' claims. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).[12] Typicality does not require that the claims be "substantially identical" nor that the deceptive message be the sole reason for Plaintiff's purchase – even though it was here. *See, e.g.*, *Hanlon*, 150 F.3d at 1020; *Werdebaugh v. Blue Diamond Growers,* No. 12-CV-2724-LHK, 2014 WL 2191901, at *14 (N.D. Cal. May 23, 2014), *decertified on other grounds,* 2014

---

[12] *See also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014); *Weeks v. Kellogg Co.*, No. CV-09-08102 (MMM) (RZx), 2013 WL 6531177, at *7 (C.D. Cal. Nov. 23, 2013); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal 2010) (same).

WL 7148923 (N.D. Cal. Dec. 15, 2014).[13]   Further, "individual experience with a product is irrelevant" as the injury occurs at the moment-of-purchase. *Kwikset,* 51 Cal. 4th at 334 ("a buyer forced to pay more than he or she would have is harmed at the moment of purchase"); *Ortega*, 300 F.R.D. at 426 ("To the extent that class members were relieved of their money by [Defendant's] deceptive conduct… they have suffered an 'injury in fact.'") (citing *Mazza,* 666 F.3d at 595); *Johns*, 280 F.R.D. at 557 (typicality satisfied where "Plaintiffs and class members were allegedly injured when they paid money to purchase the Men's Vitamins").

Typicality is met here as the claims asserted on behalf of Plaintiff and the proposed Classes are the same, arising from the same course of conduct: false and misleading brain health representations prominently featured on the front, back, and side of **every** Prevagen package sold.   And, like every Class member, Plaintiff was injured when he paid money to purchase Defendant's Product. *See, e.g.*, *Kwikset,* 51 Cal. 4th at 334; *Johns*, 280 F.R.D. at 557.

#### 4.    Rule 23(a)(4) - Plaintiff and His Counsel Have and Will Continue to Adequately Represent the Classes.

A representative is adequate if: (1) there is no conflict of interest between the representative, his counsel, and absent class members; and (2) the representative and his counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F. 3d at 1020; *see also Wiener v. Dannon Co.*, 255 F.R.D. 658, 667 (C.D. Cal. 2009).

Plaintiff testified that he purchased Prevagen relying on the brain health representations.   (Ex. K, Racies Dep. at 85:6-25 (relied on ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[13] *See also Guido v. L'Oreal, USA, Inc.,* 284 F.R.D. 468, 475, n. 6 (C.D. Cal. 2012) (whether the misrepresentation at issue "may not have had the 'same impact on all consumers' and may not have informed an individual's buying decision is not relevant, because the standard is an objective one").

1 ██████████████████████████████████████████████████████████████

2 ████████████████; *see also* 88:9-23 (same).)   Plaintiff also testified that he purchased

3 Prevagen ███████████████████████ – the very thing for which Defendant falsely

4 promotes Prevagen. (*Id.* at 16:8-25.)  After his purchase and based on the information

5 he now has, Plaintiff now believes he ████████████████████████████████████████

6 ██████████████████████████████████████████████████████████████

7 ███████████████████████ (*Id.* at 13:22-14:2.)  Thus, the interests of Plaintiff and the

8 members of the Classes are fully aligned for purposes of determining whether

9 Defendant's brain health representations are false.  *Beck-Ellman v. Kaz USA, Inc.*, 283

10 F.R.D. 558, 566-67 (S.D. Cal. 2012) (holding that adequacy is met when plaintiff and

11 the proposed class share the same claims and interest in obtaining relief, and she is

12 vigorously pursuing relief on behalf of the proposed class); *In re Ferrero Litig.*, 278 F.R.D.

13 552, 559 (S.D. Cal. 2011) (holding that adequacy is met when there is no conflict of

14 interest between the proposed class representatives, their counsel, and the class).  In

15 addition, Plaintiff is aware that he is bringing this action as a representative of a class of

16 consumers and is knowledgeable and informed about the claims in this action and the

17 relief he is requesting.  (Ex. K, Racies Dep. at 58:17-60:6; 60:22-61:11; 62:3-15; 71:3-

18 21.)

19    Further, Plaintiff retained counsel with significant experience in prosecuting class

20 actions, including false advertising cases, as confirmed by their performance to date

21 including defeating a Motion for Summary Judgment.   (D.E. 89 (Order denying

22 summary judgment); *see also* Ex. L (firm resumes).)  Thus, Plaintiff and his counsel meet

23 the adequacy requirement.[14]

24    **D.**  **Rule 23(b)(3) is Satisfied**

25    Under Rule 23(b)(3), a class action may be maintained if "the court finds that the

26

27 _____
[14] Pursuant to Rul(1), Plaintiff requests that the Court appoint Bonnett, Fairbourn,
Friedman & Balint, P.C., and Siprut, PC as Class Counsel.

28

questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) encompasses cases "in which a class action would achieve economies of time, effort, and expense, and promote. . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.,* 521 U.S. at 615; *Wiener,* 255 F.R.D. at 668.

### 1. Predominance Is Satisfied.

#### a. The Common Issues Predominate.

Rule 23(b)(3) demands only predominance of common questions, not exclusivity or unanimity of them. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon,* 150 F.3d at 1022 (citation omitted). As such, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper . . . even though other matters will have to be tried separately." *Gartin v. S & M Nutec, LLC,* 245 F.R.D. 429, 435 (C.D. Cal. 2007) (internal citation omitted; alteration in original); *see also Wiener,* 255 F.R.D. at 668.

The Supreme Court has noted that predominance is readily met in consumer fraud cases. *Amchem Prods., Inc.,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer … fraud"). And, "[c]ourts in California 'routinely find that this inquiry focuses on the Defendants' representations about the product. . ..'" *Neal v. NaturalCare, Inc.,* EDCV 12-00531 DOC (OPx), Order Granting Class Certification, at 15 (E.D. Cal. Dec. 20, 2012), *decertified on other grounds,* 2014 WL 346639 (C.D. Cal. Jan. 30, 2014) (finding predominance satisfied where "central predominating question is whether Defendants' label and marketing statements are materially

- 14 -

1   misleading") (Ex. M.)

2      Common issues unquestionably predominate in this litigation. With respect to

3   liability, as noted above, there are two overriding common questions: (1) whether

4   Defendant misrepresented that Prevagen has the ability to provide brain health benefits;

5   and (2) whether the misrepresentations were material to a reasonable consumer. The

6   first common question is binary – either Defendant misrepresented Prevagen has the

7   ability to provide brain health benefits or not. This question, on its own, predominates

8   over any potential individual questions. It is *the* most significant aspect of this case and

9   "can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d

10  at 1022. If each Class member were to pursue his or her claim individually, the evidence

11  regarding the falsity of Defendant's brain health claims would be identical in each case.

12  *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 493 (N.D. Cal. 2011) (in finding

13  predominance, court found that each of the common questions can be proven with

14  "generalized evidence…on a class-wide basis").

15     Materiality is also a predominating question as it is relevant to the inference of

16  reliance under the CLRA and as to the determination of Plaintiff's reliance under the

17  UCL. Reliance is determined based upon an objective reasonable person inquiry which

18  is based on the materiality of the brain health representations. *See In re Tobacco II*, 46

19  Cal. 4th at 327 (UCL); *Kwikset*, 51 Cal. 4th at 332–33 (same). As the court in *Kwikset*

20  found: "Simply stated: labels matter. The marketing industry is based on the premise

21  that labels matter, that consumers will choose one product over another similar product

22  based on its label." 51 Cal. 4th at 328. More recently, the California Supreme Court

23  reiterated this same sentiment:

24       To buyers and sellers alike, "labels matter." They serve as markers for a
         host of tangible and intangible qualities consumers may come to associate
25       with a particular source or method of production. Misrepresentations in
         labeling undermine this signifying function, preventing consumers from
26       correctly identifying the goods and services that carry the attributes they
         desire while also hampering honest producers' attempts to differentiate
27       their merchandise from the competition.

28                                      - 15 -

*Quesada v. Herb Thyme Farms, Inc.*, 62 Cal. 4th 298, 302-03, 361 P.3d 868, 870 (2015) (citing *Kwikset*, 51 Cal.4th 310, 328).

Moreover, "when a customer makes a decision to purchase a health product that he or she will ingest for purported health benefits, any claim on the label regarding the health benefits (i.e., any product efficacy claims) or any claims regarding the safety of the product can be presumed material." *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp.2d 1167, 1191 (N.D. Ga. 2008). And even though the brain health misrepresentations were the only reason to purchase Prevagen, the misrepresentations need only be a "factor" – not the only factor nor even a "predominating factor" – motivating the purchase. *See In re Tobacco II*, 46 Cal. 4th at 326–27; *see also Kwikset*, 51 Cal. 4th at 327 (same). Further, as the Court found in *Forcellati*, whether "a large number of factors may have gone into each consumer's decision to purchase Defendants' products is immaterial here given the objective materiality of the alleged misrepresentations." 2014 WL 1410264, at *11. As the brain health benefits were the only represented Product benefits, they necessarily were a substantial "factor" motivating Plaintiff's and each Class member's purchase. Under similar circumstances in *Delarosa,* the "Court ha[d] no trouble finding that a 'reasonable man' would attach importance to a statement that a product, which appears to have no purpose other than to remedy colds, does, in fact, relieve the symptoms of a cold." 275 F.R.D. at 586.

Further, if Plaintiff proves that the Products do not provide any of the represented brain health benefits, Plaintiff and all Class members are entitled to the same legal remedies (including a full refund of the purchase price) premised on the same alleged wrongdoing in the form of restitution under the UCL and actual damages/restitution under the CLRA, which are equivalent here. *Barrera,* at p. 36 (slip op.) (Ex. C); *Ortega*, 300 F.R.D. at 429-30.

Under these circumstances, the requirements of Rule 23(b)(3) are clearly satisfied. *See Wiener*, 255 F.R.D. at 669 (finding predominance satisfied when alleged

- 16 -

misrepresentation of product's health benefits were displayed on every package).

> **b.  Reliance and Causation Issues Do Not Defeat Predominance.**

As discussed above, to establish a UCL class claim, one need only show the Plaintiff's actual reliance.  *In re Tobacco II*, 46 Cal. 4th at 312.  No proof of absent Class members' individual reliance, deception, or injury is required.  *Abbit v. ING USA Annuity*, No. 13cv2310–GPC–WVG, 2015 WL 7272220, at *10 (S.D. Cal. Nov. 16, 2015); *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *9 (N.D. Cal. June 7, 2011); *McCrary v. The Elations Co., Inc.*, No. EDCV 13-00242 JGB, 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014).  *See also Mass. Mutual Life Ins. Co. v. Superior Crt.,* 97 Cal. App. 4th 1281, 1288 (2002) (certifying class based on California cases holding "relief under the UCL is available without individualized proof of deception, reliance and injury").

Thus, for the Classes' UCL claim, reliance and causation must be established only for Mr. Racies.  *In re Tobacco II*, 46 Cal. 4th at 326-27; *Mass. Mutual,* 97 Cal. App. 4th at 1288.  Plaintiff Racies testified that he reviewed the Prevagen Product label and relied on all the representations on the label in making his purchase decision.  (Ex. K, Racies Dep. at 85:6-25; 88:11-23.)  Plaintiff's testimony establishes reliance and causation as to the brain health labeling representations and puts their falsity at issue for his claim.  And, where, as here, the misrepresentations are uniform and all Class members were "exposed" to them, proof of classwide reliance is not a requirement for a class to recover under the UCL.  *See Gutierrez v. Wells Fargo Bank NA*, 589 Fed. Appx. 824, 827 (9th Cir. 2014) (rejecting defendant's argument that district court was not "empowered" to award class-wide restitution under the UCL because class-wide reliance had not been established because "the record is replete with examples of [the defendant's] false and misleading statements" (citing *In re Tobacco II*)); *see also Circle Click Media LLC v. Regus Mgmt. Grp. LLC,* 2015 WL 6638929, at *13 (N.D. Cal. Oct. 29, 2015) (same); *Brown v.*

*Hain Celestial Grp. Inc.,* 2015 WL 3398415, at *8 (N.D. Cal. May 26, 2015) (UCL does not require proof of each class member's injury and causation).

Further, although the CLRA does require a showing of classwide reliance, the CLRA is to be "liberally construed" and "[c]onduct that is 'likely to mislead a reasonable consumer' violates the CLRA." *Colgan,* 135 Cal. App. 4th at 679-80.  The Ninth Circuit has held that under the CLRA: "If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns,* 655 F. 3d at 1022, *abrogated on other grounds,* 133 S.Ct. 1426 (2013) (emphasis in original; internal citations and quotation marks omitted); *see also Guido,* 284 F.R.D. at 482 (citing *Mass. Mutual,* 97 Cal. App. 4th at 1292).   As the court in *Mass Mutual* explained:

> Causation as to each class member is commonly proved more likely than not by materiality.  That showing will undoubtedly be conclusive as to most of the class.  The fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all.

97 Cal. App. 4th at 1292.

Materiality is "judged by an objective, 'reasonable man' standard," not individual subjective beliefs, and is "subject to common proof."  *In re POM Wonderful Mktg. & Sales Practices Litig.,* No. ML 10-02199 DDP (RZx), 2012 WL 4490860, at *5 (C.D. Cal. Sept. 28, 2012), *decertified on other grounds*, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) (citations omitted); *see also Amgen, Inc.*, 133 S. Ct. at 1195-96 (because the "'[t]he question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class.  Consequently, materiality is a 'common question[n]' for purposes of Rule 23(b)(3)") (citations omitted.) "Express product claims are presumed to be material. . . ."  *Pantron I Corp.*, 33 F.3d at 1095-96; *see also Kwikset*, 51 Cal. 4th at 328.

Here, an inference of classwide reliance is warranted.  Prevagen sold during the Class periods made only brain health representations on their labels such that the only reason any consumer would buy these Products is for brain health benefits.    Even though a UCL case, as the court in *Kwikset* noted, "labels matter."  51 Cal. 4th at 328. Likewise, in *Negrete*, although a RICO case, in finding predominance met, the court agreed that "'[c]onsumers are nearly certain to rely on prominent (and prominently marketed) features of a product which they purchase, particularly where there are not otherwise compelling reasons for purchasing a product that is allegedly worth less than the purchase price."  287 F.R.D. 590 at 612 (citations omitted).  And in *Ortega,* the court found a "strong case" for inferring classwide reliance based on the materiality of the misrepresentations, noting: "It strains credulity to think that a merchant would select exclusively immaterial statements to print on its product's packaging."  300 F.R.D. at 429, *decertified on other grounds*, 2015 WL 12655388 (C.D. Cal. Feb. 20, 2015).

Thus, proof of reliance under the CLRA should be inferred on a classwide basis.

### c.   Relief Can Be Calculated on An Aggregate Classwide Basis.

Individual damage questions do not preclude class certification.  *See, e.g.*, *Blackie v. Barack*, 524 F.2d 891, 905 (9th Cir. 1975).[15]  Even so, there are none here as common, classwide evidence will show that Plaintiff and Class members purchased Products that are worthless – they do not provide the represented brain health benefits which are the only represented Product benefits.  Thus, Plaintiff and all Class members are entitled to a full refund damages measure.  *See Abbit,* 2015 WL 7272220, at *7 (citing *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) ("*Google*") and *Kwikset,* 51 Cal. 4th at 329).  A full Product refund is appropriate and complies with *Comcast*

---

[15]   *See also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) ("In [the Ninth Circuit], however, damage calculations alone cannot defeat certification.'") (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir.2010)).

- 19 -

*Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013),[16] in that it is directly "tied" to Plaintiff's theory of the case: that because Prevagen is worthless, Plaintiff and Class members are entitled to receive the total retail price they paid. *Id.*; *see also Allen*, 300 F.R.D. at 671 ("Plaintiffs' theory is that the products are *entirely* ineffective" and, thus, "Plaintiffs' damages theory – predicated on the notion that class members are entitled to full restitution for products with no value – is consistent with Plaintiffs' liability theory") (emphasis original); *Lanoka v. Twinning's N. Am., Inc.*, 2014 WL 1652338, at *6 (N.D. Cal. Apr. 24, 2014) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received.").

The full refund that is due to Plaintiff and Class members under the UCL (restitution) or CLRA (damages/restitution) can be readily calculated on an aggregate classwide basis. *See, e.g.*, *Ortega*, 300 F.R.D. at 430, *decertified on other grounds*, 2015 WL 12655388 (C.D. Cal. Feb. 20, 2015) (finding plaintiffs' full refund theory presented a "workable classwide method for calculating monetary relief" where "[p]laintiffs argue that the product was valueless because it provided none of the advertised benefits and was illegal"); *see also Khoday v. Symantec Corp.*, 2014 WL 1281600, at *32 (D. Minn. Mar. 3, 2014). Although the full refund amount due Plaintiff and Class members need not be precisely determined and an approximation will suffice, because Defendant has produced detailed retail sales summaries that it has stated reflect the number and respective retail sales amounts for each quarter from 2011 to the second quarter of 2017 of the Prevagen Products sold on a state-by-state basis, aggregate classwide damages

---

[16] *See also Vaccarino v. Midland Nat. Life Ins. Co.*, 2014 WL 572365, at *12 (C.D. Cal. Feb. 3, 2014) ("*Comcast* requires that courts determine whether damages are susceptible of classwide measurement, not whether that measurement is precisely correct."). Courts routinely certify class actions *post-Comcast* where damages are capable of determination on a class-wide basis and the damages are traceable to a plaintiff's "liability case." *See, e.g.*, *Leyva*, 716 F.3d at 514; *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *6 (N.D. Cal. Apr. 15, 2016); *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985, at *10 (S.D. Cal. July 30, 2013).

1   may be fairly and reasonably determined.  *Vaccarino,* 2014 WL 572365, at *11-12

2   ("courts determine whether damages are susceptible of classwide measurement, not

3   whether that measurement is precisely correct."); *see also Google*, 802 F.3d at 989 (same);

4   *see also* Ex. A at QUI 004599 (detailed listing of retail sales on a state-by-state basis with

5   a combined total of ███████████ in sales during the Class periods for the multi-state

6   class and ████████████ for either of the California classes).  The court in *Barrera*

7   approved the use of similar retail pricing information to calculate damages in a full

8   refund false advertising case brought under both the UCL and CLRA.  *Barrera,* slip op.,

9   at 33-37 (Nov. 19, 2014) (Ex. C.)

10      Based on Defendant's April 5, 2017 production of product labels, it appears that

11   sometime in 2017 Defendant added 50 mcg of vitamin D3 to all its Prevagen products.

12   (Syverson Decl., at ¶ 2.)  No changes were made to the Prevagen labeling other than

13   the addition of "Now with Vitamin D" on the side panel and the inclusion of vitamin

14   D3 as an ingredient in the "Supplement Facts" on the back panel. (Ex. G, Labels, at

15   QUI 004323-26 and QUI004415-16.)  No statements are made that vitamin D provides

16   any brain health benefits. And, importantly, the label makes clear the purported brain

17   health benefits are attributable only to the apoaequorin as the label defines "Prevagen"

18   as "apoaequorin" – as indicated by the word "apoaequorin" appearing in a parenthetical

19   immediately under the name Prevagen on the front of the label and "apoaequorin"

20   appearing in a parenthetical immediately after "Prevagen" on the side panel discussing

21   the purported clinical support for the brain health representations.  (*Id.*)  Thus,

22   consumers are and have been similarly misled, as only apoaequorin is represented as

23   providing any brain health benefits and this makes sense, as no consumer would pay

24   the amounts charged for Prevagen to purchase some generic supplemental vitamin D.

25   Indeed, Defendant treats products containing vitamin D the same as the prior products

26   as evidenced by its recent production of Prevagen retail sales data wherein although

27   Defendant provided a breakdown by product, no mention of the vitamin D products

28

1    is made.

2              **d.      California Law Can Be Applied to the Multi-State Class**

3          While it is clear that class certification is warranted under the UCL and CLRA,

4    class certification of a multi-state class is also appropriate here.   Focusing on the

5    particular facts and circumstances of this case, there are no "outcome determinative"

6    differences between the laws of the ten states that Plaintiff seeks to certify as a multi-

7    state class – all have consumer protection laws that are materially identical to the UCL.

8    (*See* Ex. N (setting out the relevant laws in each of the 10 class states).)  *See also Phillips*

9    *Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) (multistate classes can be appropriate absent

10   a showing by defendant of outcome determinative conflicts among the states); *Sun Oil*

11   *Co. v. Wortman*, 486 U.S. 717 (1988) (same).   In fact, the very same multi-state class

12   Plaintiff proposes here was certified in *Mullins v. Direct Digital, LLC*, No. 13 CV 1829,

13   2014 WL 5461903 (N.D. Ill. Sept. 30, 2014) and affirmed by the Seventh Circuit in No.

14   15-1776, 795 F.3d 654 (7th Cir. 2015).    And, any non-outcome determinative

15   differences that may exist do not defeat predominance and can easily be dealt with, such

16   as different statutes of limitation which merely requires an arithmetic calculation.  *See,*

17   *e.g.*, *Forcellati*, 2012 WL 2513481, at *2; *Allen*, 2012 WL 1656750, at *2 ("*Mazza* explicitly

18   left open the possibility that a court could certify subclasses grouped around 'materially

19   different bodies of state law'"); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 685-

20   86 (N.D. Cal. 1986) (cited by *Mazza*) (holding that subclassing various state's law would

21   be appropriate and that "final resolution of any conflict-of-law issues that may arise"

22   should be resolved pursuant to Rule 23).

23              **2.      A Class Action is the Superior Method of Adjudication.**

24          Rule 23(b)(3) superiority "requires the court to focus on the efficiency and

25   economy elements of the class action so that cases allowed under subdivision (b)(3) are

26   those that can be adjudicated most profitably on a representative basis.'"  *Zinser v.*

27   *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (citation omitted); *see also*

28                                       - 22 -

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (superiority requirement satisfied where class certification "will reduce litigation costs and promote greater efficiency…..").

Judicial efficiency weighs in favor of a class action.  *See Delarosa*, 275 F.R.D. at 594–95.  It is not economically feasible for the many thousands of Class members to pursue their claims against Defendant on an individual basis given that the amount in controversy is approximately $24-$70 per purchase compared to the enormous expense of litigating whether Defendant's claims are false.  *Id.*; *see also Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at *25 (N.D. Cal. Dec. 21, 2010) ("[T]he modest amount at stake for each purchaser renders individual prosecution impractical.").  As the Seventh Circuit noted: "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie*, 376 F.3d at 661 (emphasis original).

Because there is no realistic alternative to a class action, a class action is the superior method of adjudication. *See Guido*, 2013 WL 3353857, at *17 (certifying a class of $10 serum purchasers); *see also Ortega*, 300 F.R.D. at 430 (finding superiority met in certifying a class of $16-17 dietary supplement purchasers).

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff, on behalf of himself and the proposed Classes, respectfully requests that the Court issue an order granting this motion for class certification and appointing Plaintiff as class representative and the firms of Bonnett, Fairbourn, Friedman & Balint, P.C., and Siprut, PC as Class Counsel.

Dated: September 15, 2017                 BONNETT, FAIRBOURN, FRIEDMAN
                                                              & BALINT, P.C.

                                                               /s/ Patricia N. SYVERSON
                                                              PATRICIA N. Syverson (203111)
                                                              MANFRED P. MUECKE (222893)
                                                              600 W. Broadway, Suite 900
                                                              San Diego, California 92101

psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 756-7748

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN (*Admitted Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
Telephone: (602) 274-1100

SIPRUT PC
STEWART M. WELTMAN (*Admitted Pro Hac Vice*)
17 North State Street
Suite 1600
Chicago, IL  60602
sweltman@siprut.com
Telephone: 312.236.0000

BOODELL & DOMANSKIS, LLC
MAX A. STEIN (*Admitted Pro Hac Vice*)
NADA DJORDJEVIC (*Admitted Pro Hac Vice*)
One North Franklin, Suite 1200
Chicago, IL 60606
mstein@boodlaw.com
ndjordjevic@boodlaw.com
Telephone: (312) 938-1670

*Attorneys for Plaintiff*

- 24 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

I certify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 15th day of September 2017.

/s/ Patricia N. Syverson
Patricia N. Syverson (203111)
**BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.**
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
Telephone: (619) 756-7748