BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
PATRICIA N. SYVERSON (CA SBN 203111)
MANFRED P. MUECKE (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ELAINE A. RYAN (*Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
Telephone: (602) 274-1100

SIPRUT, PC
STEWART M. WELTMAN (*Admitted Pro Hac Vice*)
17 North State Street
Suite 1600
Chicago, IL 60602
sweltman@siprut.com
Telephone: (312) 236-0000

*Attorneys for Plaintiff and the Proposed Class*
*Additional Attorneys on Signature Page*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP RACIES, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>       v.<br><br>QUINCY BIOSCIENCE, LLC, a Wisconsin limited liability corporation<br><br>                    Defendant. | Case No.:  4:15-cv-00292-HSG<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:    November 16, 2017<br>Time:   2:00 p.m.<br>Place:  Ctrm 10<br>Complaint Filed: January 21, 2015<br>Trial Date:      None set<br><br>Judge:   Hon. Haywood S. Gilliam Jr. |

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  PLAINTIFF HAS SATISFIED RULE 23 REQUIREMENTS...................................1

  A.   PLAINTIFF'S CLAIM IS TYPICAL ...............................................................1

  B.   PLAINTIFF HAS DEMONSTRATED COMMON ISSUES PREDOMINATE.......3

    1.   The "Clinically Tested" Representation Does Not Defeat The Predominance of the Brain Health Benefits Message ................................3

    2.   Plaintiff Will Prove Falsity with Common Class-wide Evidence......................5

    3.   The Addition of the Prevagen Professional Product and Prevagen Products containing Vitamin D3 Does Not Defeat Class Certification..........7

    4.   Certification of a UCL Multi-State Class Is Appropriate and Does Not Defeat Predominance..................................................................9

  C.   PLAINTIFF HAS SATIFIED SUPERIORTY .................................................11

    1.   Plaintiff's Proposed Classes Are Manageable ....................................11

    2.   A Class Action is Superior ....................................................................14

III. DISMISSAL OF THE FTC PREVAGEN ACTION IS IRRELEVANT TO CERTIFICATION.......................................................................................15

IV.  CONCLUSION ...................................................................................................15

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

**CASES**

3

*Abbit v. ING USA Annuity*
4
      2015 WL 7272220 (S.D. Cal. Nov. 16, 2015)...................................................................13
5

*Allen v. Hyland's Inc.*
6
      300 F.R.D. 643 (C.D. Cal. 2014) ...........................................................................7, 14
7

*AM Tr. v. UBS AG*
8
      78 F. Supp. 3d 977 (N.D. Cal. 2015) .......................................................................10
9

*Astiana v. Kashi Co.*
10
      291 F.R.D. 493 (S.D. Cal. 2013)..............................................................................12
11

*Barrera v. Pharmavite LLC*
12
      No. 11-cv-04153 (C.D. Cal. Nov. 19, 2014).........................................................8, 13
13

*Briseno v. ConAgra Foods, Inc.*
14
      844 F.3d 1121 (9th Cir. 2017)..................................................................................12
15

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*
16
      137 S.Ct. 1773 (2017)...............................................................................................10
17

*Bruno v. Eckhart Corp.*
18
      280 F.R.D. 540 (C.D. Cal. 2012).............................................................................10
19

*Capiccioni v. Brennan Naperville, Inc.*
20
      339 Ill.App.3d 927 (2003) .......................................................................................11
21

*Chamberlan v. Ford Motor Co.*
22
      402 F.3d 952 (9th Cir. 2005)....................................................................................13
23

*Chow v. Neutrogena Corp.*
24
      2013 WL 5629777 (C.D. Cal. Jan. 22, 2013) .........................................................13
25

*Clicks Billiards, Inc. v. Sixshooters, Inc.*
26
      251 F.3d 1252 (9th Cir. 2001)................................................................................6, 14
27

*Comcast Corp. v. Behrend*
28
      133 S. Ct. 1426 (2013)..............................................................................................13

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Conagra Brands, Inc. v. Briseno*

    2017 WL 1365592 (U.S. Oct. 10, 2017) ........................................................................ 12

*C.R. Bard, Inc. v. M3 Sys., Inc.*

    120 F. Supp. 2d 1145 (N.D. Ill. 2000) ........................................................................ 11

*E.R. Squibb and Sons, Inc. v. Bowen*

    870 F. 2d 678 (D.C. 1989) .......................................................................................... 7

*Federal Trade Commission v. Quincy Bioscience Holding Co., Inc., et al.*

    2017 WL 4382312 (S.D.N.Y. Sep. 28, 2017) ............................................................ 15

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*

    2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ......................................................... 10

*Forcelatti v. Hyland's*

    2014 WL 1410264 (C.D. Cal. April 9, 2014) ............................................... 2, 4, 9, 10, 13

*Frontier Oil Corp. v. RLI Ins. Co.*

    153 Cal. App. 4th 1436 (2007) .................................................................................... 9

*F.T.C. v. Pantron I Corp.*

    33 F. 3d 1088 (9th Cir. 1994) ...................................................................................... 7

*F.T.C. v. Think Achievement Corp.,*

    12 F.3d 259 (7th Cir. 2002) ....................................................................................... 14

*G.M. Sign Inc., v. Stealth Sec. Systems, Inc.*

    2017 WL 3581160 (N.D. Ill. Aug. 18, 2017) ......................................................... 9, 12

*Guido v. L'Oreal, USA, Inc*

    284 F.R.D. 468 (C.D. Cal. 2012) .............................................................................. 12

*Guido v. L'Oreal, USA, Inc. (Guido II)*

    2013 WL 3353857 (C.D. Cal. July 1, 2013) ......................................................... 12, 14

*Hanlon v. Chrysler Corp.*

    150 F.3d 1011 (9th Cir. 1998) ..................................................................................... 2

*Hanon v. Dataproducts Corp.*

    976 F.2d 497 (9th Cir. 1992) ....................................................................................... 2

*Hilao v. Estate of Marcos*

103 F.3d 767 (9th Cir. 1996)......................................................................................9

*In re ConAgra Foods, Inc.*

90 F. Supp. 3d 919 (C.D. Cal. 2015)..........................................................................5

*In re ConAgra Peanut Butter Prods Liab. Litig.*

251 F.R.D. 689 (N.D. Ga. 2008)...............................................................................15

*In re GNC Corp.*

789 F.3d 505 (4th Cir. 2015)..................................................................................5, 6

*In re Hotel Telephone Charges*

500 F.2d 86 (9th Cir. 1974)......................................................................................15

*In re Live Concert Antitrust Litig.*

247 F.R.D. 98 (C.D. Cal. 2007)..................................................................................7

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*

214 F.R.D. 614 (W.D. Wash. 2003)..........................................................................15

*In re POM Wonderful Mktg. & Sales Practices Litig.*

2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) .........................................................10

*In re Tobacco II Cases*

46 Cal. 4th 298 (2009)........................................................................................2, 4, 5

*Johns v. Bayer Corp.*

280 F.R.D. 551 (S.D. Cal. 2012)................................................................................3

*Korolshteyn v. Costco Wholesale Corp.*

2017 WL 1020391 (S.D. Cal. Mar. 16, 2017)...............................................4, 5, 13, 14

*Kwikset Corp. v. Super. Ct.*

51 Cal. 4th 310 (2011)..........................................................................................2, 13

*Lanovaz v. Twinings N. Am., Inc.*

2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) .........................................................13

*Leyva v. Medline Indus. Inc.*

716 F.3d 510 (9th Cir. 2013)....................................................................................13

*Lilly v. Jamba Juice Co.*
  2014 WL 4652283 (N.D. Cal. 2014) ................................................................ 12

*Martin v. Monsanto Co.*
  2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) .................................................... 4

*Mass. Mutual Life Ins. Co. v. Superior Crt.*
  97 Cal. App. 4th 1281 (2002) ........................................................................... 5

*Mazza v. Am. Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012) ....................................................................... 3, 10

*Menagerie Prods. v. Citysearch*
  2009 WL 3770668 (C.D. Cal. Jan. 6, 2011) .................................................... 10

*Minkler v. Kramer Labs., Inc.*
  2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) ................................................... 13

*Moheb v. Nutramax Labs. Inc.*
  2012 WL 6951904 (C.D. Cal. Sept. 4, 2012) ................................................... 12

*Mullins v. Direct Digital, LLC*
  795 F.3d 654 (7th Cir. 2015) ....................................................................... 9, 10

*Mullins v. Premier Nutrition Corp.*
  2016 WL 1535057 (N.D. Cal. April 15, 2016) .................................................. 4

*Ortega v. Natural Balance*
  300 F.R.D. 422 (C.D. Cal. 2014) ............................................................. 3, 5, 14

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985) ......................................................................................... 9

*Pilavsskaya v. Henderson*
  2012 WL 3279517 (C.D. Cal. Aug. 9, 2012) .................................................... 8

*Pulaski & Middleman, LLC v. Google, Inc.*
  802 F.3d 979 (9th Cir. 2015) ........................................................................... 8

*Randleman v. Fidelity Nat. Title Ins. Co.*
  646 F.3d 347 (6th Cir. 2011) ......................................................................... 13

v

*Ries v. Arizona Beverages USA LLC*

    287 F.R.D. 523 (N.D. Cal. 2012) ........................................................................12

*Rikos v. Proctor & Gamble Co.*

    799 F.3d 497 (6th Cir. 2015)..................................................................................4

*Rodman v. Safeway, Inc.*

    2014 WL 988992 (N.D. Cal. Mar. 10, 2014) ......................................................14

*Rubin v. Marshall Field & Co.*

    232 Ill.App.3d 522 (1992) ...................................................................................11

*Sandoval v. Pharmacare US, Inc.*

    2016 WL 3554919 (S.D. Cal. June 10, 2016)......................................................11

*Senne v. Kansas City Royals Baseball Corp.*

    105 F. Supp. 3d 981 (N.D. Cal. 2015) ................................................................10

*Simeon Mgmt. Corp. v. F.T.C.*

    579 F. 2d 1137 (9th Cir. 1978)...............................................................................7

*Sullivan v. Chase Inv. Services of Boston, Inc.*

    79 F.R.D. 246 (N.D. Cal. 1978) .............................................................................7

*Sullivan v. Kelly Servs.*

    268 F.R.D. 356 (N.D. Cal. 2010) ........................................................................13

*Sun Oil Co. v. Wortman*

    486 U.S. 717 (1988).................................................................................................9

*Torres v. Mercer Canyons Inc.*

    835 F.3d 1125 (9th Cir. 2016)..........................................................................2, 13

*Turner v. Murphy Oil USA, Inc.*

    234 F.R.D. 597 (E.D. La. 2006) ..........................................................................14

*Vaccarino v. Midland Nat. Life Ins. Co.*

    2014 WL 572365 (C.D. Cal. Feb. 3, 2014) ...........................................................8

*Webb v. Carter's, Inc.*

    272 F.R.D. 489 (C.D. Cal. 2011) .........................................................................15

*Warren v. LeMay*
    142 Ill. App.3d 550 (Ill. App. 5 Dist. 1986)....................................................................11

*Werdebaugh v. Blue Diamond Growers*
    2014 WL 2191901 (N.D. Cal. May 23, 2014)......................................................................2

*Wolin v. Jaguar Land Rover North America, LLC*
    617 F.3d 1168 (9th Cir. 2010).............................................................................................2

*Yokoyama v. Midland Nat'l Life Ins. Co.*
    594 F.3d 1087 (9th Cir. 2010)...........................................................................................13

*Zakaria v. Gerber Products Co.*
    2015 WL 4379743 (C.D. Cal. July 14, 2015) .....................................................................6

**FEDERAL RULES**

Rule 23(a) ...........................................................................................................................................1

Rule 23(b)(3) .......................................................................................................................................1

vii

## I.      INTRODUCTION

Defendant's Opposition (D.E. 128, "Oppn") does not contest these key facts: (1) Prevagen packages uniformly represent it supports and improves brain health; (2) Prevagen is a one purpose product so every consumer who bought Prevagen did so because of the represented benefits; (3) the truth or falsity of the brain health representations will be determined based upon common scientific evidence and proofs; and (4) if proven false, each purchaser will be entitled to repayment or restitution of the full purchase price.  The case law is both abundant and clear that, under these uncontroverted facts, certification is warranted, manageable, and a superior means of adjudicating this low-cost product, but large in the aggregate, consumer fraud case.  Faced with facts that compel certification and unable to dispute that Plaintiff has satisfied Rule 23(a)'s numerosity, adequacy, or commonality requirements as well as 23(b)(3), Defendant manufactures individual issues that do not exist and erroneously contends Plaintiff is not a typical Class member.  Defendant's arguments fail.  Plaintiff's Motion should be granted.

## II.     PLAINTIFF HAS SATISFIED RULE 23 REQUIREMENTS

### A.      PLAINTIFF'S CLAIM IS TYPICAL

Plaintiff purchased Prevagen in reliance on the brain health representations.  (D.E. 122-3, "Motion", at 17-18).  Plaintiff testified that he reviewed and █████████████████████████ ██████████████████████████████████████ (███, Deposition of Phillip Racies ("Racies Dep.") at 85:10-20; *see also id.* at 87:1-3 (recalls "████████████████████████"); 88:9-10 ("███ ████████████████████████████████"); 88:11-18 (relied on ██████████████████████████████████████)).  Mr. Racies testified: ██████████████ ██████████████████████████ (*Id.* at 87:16-17).

Defendant argues that because Plaintiff also relied upon the "clinically tested" representation he is not typical.  (Oppn, 11, 34).  But it is clear that the primary and most important representations – the brain health representations – was what drove his purchase decision.  To the extent that he or any others considered the "clinically tested" claim, this representation is inextricably linked to and merely serves as an adjunct to the brain health representations – it has no meaning on its own.  As a

result, anyone who considered this representation still purchased the Product based upon the underlying false brain health representations.

Defendant's argument has been soundly rejected by the Ninth Circuit and other courts. *See Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) ("The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class…The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'") (citations omitted). *Cited with approbation by: Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016); *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *11 (C.D. Cal. April 9, 2014). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (typicality is "permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical"); *Werdebaugh v. Blue Diamond Growers,* 2014 WL 2191901, at *14 (N.D. Cal. May 23, 2014), *decertified on other grounds,* 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) (same). Here, Plaintiff like all other purchasers bought Prevagen for its one stated purpose – brain health.

Defendant's contention that Plaintiff "may not" have purchased Prevagen absent the "clinically tested" representation is pure speculation (Oppn, 21, 34), particularly since Defendant never posed this question to Plaintiff. Further, the law is clear that the brain health representations need not be the only, or even predominant, reason Plaintiff purchased Prevagen – although Plaintiff's deposition testimony establishes they were. *See, e.g., In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (2009); *Forcellati,* 2014 WL 1410264, at *13. *See also* ███████, Racies Dep. at 24:22-25 (███████████ ████████████████████████████████████.

Finally, the length of time Plaintiff took Prevagen, whether he took it as directed, and whether he took it with other supplements (Oppn, 15, 23) have no bearing on his typicality and are not even admissible as evidence, since the law makes clear that Plaintiff's injury occurred at the time he purchased Prevagen, making post-purchase conduct irrelevant. *See, e.g., Kwikset Corp. v. Super. Ct.,* 51

- 2 -

Cal. 4th 310, 334 (2011) ("a buyer forced to pay more than he or she would have is harmed at the moment of purchase"); *Ortega v. Nat. Balance*, 300 F.R.D. 422, 426 (C.D. Cal. 2014) ("To the extent that class members were relieved of their money by [Defendant's] deceptive conduct… they have suffered an 'injury in fact.'") (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (typicality satisfied where "Plaintiffs and class members were allegedly injured when they paid money to purchase the Men's Vitamins").

Thus, Defendant's typicality arguments are without merit.

## B.   PLAINTIFF   HAS   DEMONSTRATED   COMMON   ISSUES PREDOMINATE

Plaintiff has established that common facts and issues predominate in that all the Prevagen Products have the same active ingredient, all the Product labels contain identical brain health representations, common scientific evidence will be used to prove the Products do not provide the represented brain health benefits, and, because the Prevagen Products are worthless, Plaintiff and Class members experienced a common loss (*i.e.*, the purchase price of the Products) (Motion, at Section II, pp. 4-7).  Confronted with this compelling evidence, Defendant points to supposed individual issues that either do not exist or are not the type that defeat certification.

### 1.   The "Clinically Tested" Representation Does Not Defeat the Predominance of the Brain Health Benefits Message

Defendant attempts to manufacture a "devastating" blow to predominance by claiming that because the Prevagen labels contain ***both*** non-actionable "clinically tested" and actionable brain health representations, Plaintiff will be unable to demonstrate "class cohesion" because he cannot identify which Class members found which of the representations material.  (Oppn, 19-21.)

First, it is a false premise to contend that Defendant's "clinically tested" representation is non-actionable.  It is actionable, as it serves as purported support for the false underlying claim that Prevagen provides brain health benefits when, if Plaintiff prevails on his body chemistry claims, the brain health representations will be irrefutably proven false.  All that the law of this case holds is that the determination of the falsity of Defendant's brain health claims will be made based upon the body chemistry evidence and no evidence from clinical trials will be considered.

The "clinically tested" representation only has meaning in the context of the underlying brain

- 3 -

1  health representations.  Any Class member who relied on it would also be relying upon the underlying

2  brain health representations. And, even if some placed more importance upon the "clinically tested"

3  representation than others, they remain a cohesive Class as the contested representation need not be

4  the "sole or even the predominating or decisive factor influencing [the consumer's] conduct." *In re*

5  *Tobacco II Cases*, 46 Cal. 4th at 326-27; *see also Forcellati,* 2014 WL 1410264, at *13 (whether "a large

6  number of factors may have gone into each consumer's decision to purchase Defendants' products is

7  immaterial here given the objective materiality of the alleged misrepresentations").

8       That Class members may have relied on factors other than the brain health representations is

9  hardly remarkable – let alone "devastating" to class certification. *See, e.g., Korolshteyn v. Costco Wholesale*

10  *Corp.,* 2017 WL 1020391, at *7 (S.D. Cal. Mar. 16, 2017) ("That class members may have learned about

11  [the product] from other sources does not absolve Defendants from liability for false statements that

12  appeared on the labels of the products purchased by the class members."); *Mullins v. Premier Nutrition*

13  *Corp.*, 2016 WL 1535057, at *3 (N.D. Cal. April 15, 2016) ("How consumers first learned about Joint

14  Juice—from a doctor, parent, Joe Montana, or the packaging—does not matter if 'they nonetheless

15  decided to purchase the product only for its purported health benefits.'") (quoting *Rikos v. Proctor &*

16  *Gamble Co.*, 799 F.3d 497, 512 (6th Cir. 2015)).

17       Plaintiff's testimony shows why common issues predominate as to the label representations,

18  as Plaintiff testified he ███████████████████████████

19  (████, Racies Dep. at 87:16-17.)  This is what any consumer necessarily had to believe before buying

20  Prevagen.  And while Plaintiff said the ████████████████████

21  ██████████████████████████████. (*Id.* at 24:22-25.)  The

22  same would be true for any other consumer as no one buys a product merely because it is clinically

23  tested without also considering what benefit it is clinically tested to provide.

24       For this reason, Defendant's speculation that Class members may have varying interpretations

25  of what "clinically tested" means also fails of its own weight.  (Oppn, 10, 20.)  No matter how they

26  interpreted it, they still had to be considering it in the context of the underlying brain health

27  representations.  *See, e.g., Martin v. Monsanto Co.*, 2017 WL 1115167, at *6 (C.D. Cal. Mar. 24, 2017)

28  (materiality "concerns objective features of allegedly fraudulent representations and omissions, not

- 4 -

subjective questions of how those representations and omissions were perceived by each individual consumer"); *In re ConAgra Foods, Inc.,* 90 F. Supp. 3d 919, 1018 (C.D. Cal. 2015) (regardless of what consumers believe the label means, the issue is whether the label claim "however [consumers] interpret it" is "material to their purchasing decisions"); *Ortega,* 300 F.R.D. at 427 (even if consumers "had somewhat varying conceptions of the results he could expect from a product marketed as virility-enhancing, each had the same marketing-induced expectation that the product would be virility-enhancing").

Class members' interpretations of the "clinically tested" representation, and for that matter the brain health representations, also are irrelevant to issues of reliance and causation. As to the UCL claim, reliance and causation must be established only for Mr. Racies, which Plaintiff has done. (Motion, at 17-18 (citing *In re Tobacco II,* 46 Cal. 4th at 326-27; *Mass. Mutual Life Ins. Co. v. Superior Crt.,* 97 Cal. App. 4th 1281, 1288 (2002)). Beyond that, all the UCL requires is evidence that "all members of the class were exposed to [the] deceptive practice", which Plaintiff has also demonstrated. (*Id.* at 2, 17-19.) As to the CLRA claim, materiality is determined based on an objective "reasonable person" standard – not the subjective standard Defendant urges. (*Id.* at 2-3, 15-17.) So, the fact finder will be the one who determines this question and it too is a common question.

Thus, whether Defendant's misrepresentations are misleading to reasonable consumers will "generate common answers apt to drive the resolution of the litigation" (*Guido v. L'Oreal, USA, Inc,* 284 F.R.D. 468, 476 (C.D. Cal. 2012)), making class certification appropriate.

### 2. Plaintiff Will Prove Falsity with Common Class-wide Evidence

Defendant argues Plaintiff cannot prove falsity because he "does not rely on testing," "cannot rely on scientific literature, because it is equivocal, at best" and thus, can only rely on anecdotal experiences which are individualized. (Oppn, 21.) These are merits arguments that have already been rejected by the Court in its denial of Defendant's summary judgment motion.

Nevertheless, Defendant claims that because this Court has already found Plaintiff's science on AQ is "equivocal," Plaintiff cannot establish falsity – relying on ***two*** non-binding opinions: a Fourth Circuit Court of Appeals decision (*In re GNC Corp.,* 789 F.3d 505 (4th Cir. 2015)) and a recently decided district court decision (currently on appeal) (*Korolshteyn v. Costco Wholesale Corp.,* 2017 WL

- 5 -

1    3622226 (S.D. Cal. Aug. 23, 2017) ("Costco")).

2         First, Plaintiff does not accept Defendant's literacy license in its interpretation of the Court's

3    summary judgment ruling as finding the evidence was equivocal.  (Oppn, 17-18, 22-23.)  The word

4    does not appear in the order and Defendant ignores that the Court concluded its order by stating,

5    "While Plaintiff appears to have a substantial argument, the Court cannot conclude that no reasonable

6    jury would find against it at trial. Accordingly, both motions will be denied." (D.E. 89, at 6.)

7         Nevertheless, both cases Defendant cites in support of this argument stand for the untenable

8    proposition that there are no "fact questions" if experts disagree on the science – that all a Defendant

9    has to do to defeat a claim on the merits is to find experts who may disagree with the Plaintiff's expert.

10   But that is not the law in the Ninth Circuit nor has that proposition been accepted by the vast majority

11   of California federal courts that have addressed *GNC*.  For example, in *Zakaria v. Gerber Products Co.*,

12   the Central District of California rejected the *GNC* holding as not controlling and contrary to Ninth

13   Circuit and California law. 2015 WL 4379743, at *2-3 (C.D. Cal. July 14, 2015).  As the court explained:

14   "In submitting any amended complaint, the plaintiff was required to allege that there was some factual

15   support for his theory of actual falsity. The decision did not state that Plaintiff had to allege that all

16   studies and experts were in accord on the issue raised by the health claim."  That is because "the

17   falsehood alleged by Plaintiff is not that all experts agree that Defendant's product lacks a health

18   benefit, but rather that the product in fact lacks that benefit." *Id.* at *3.

19        Here, in denying Defendant's summary judgment motion, this Court found "Plaintiff has

20   presented more than enough evidence to show the existence of a genuine dispute of material fact…"

21   and that "Plaintiff appears to have a substantial argument." (D.E. 89, at 6.)  Further, the Court found

22   that "Dr. Bazinet's expert opinion is sufficiently reliable and therefore admissible at summary

23   judgment. For that reason, the issues that Defendant raises here go to the weight of the evidence, not

24   its sufficiency" – issues which, in keeping with Ninth Circuit law – are issues for the trier of fact to

25   decide – and the fact finder "could conclude based on Dr. Bazinet's expert opinion that Prevagen

26   cannot work as labeled."  (*Id.* at 9 (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263-64

27   (9th Cir. 2001) (finding that issues of "weight" to be afforded evidence presented by experts are "issues

28   for a jury or, in a bench trial, the judge.")).  Defendant's claim that it goes scot-free because it found

- 6 -

some "experts" to disagree with Plaintiff's expert lacks merit and is contrary to Ninth Circuit law.

Finally, the law is clear that a defendant cannot defeat class certification by proposing that, in its case in chief, it will submit individual proofs, as Defendant does here with its supposed "satisfied" purchaser testimonials.  As the court held in *Sullivan v. Chase Inv. Services of Boston, Inc.,* 79 F.R.D. 246, 265 (N.D. Cal. 1978), "If [a defendant] could defeat class certification simply by disclosing evidence that suggests a valid defense against a representative plaintiff, 'it would follow that no class action could stand until the plaintiff proved every material element of his individual claim' and rebutted every arguable defense[,] an approach that clearly violates Rule 23." *See also In re Live Concert Antitrust Litig.,* 247 F.R.D. 98, 141 (C.D. Cal. 2007) ("that Defendants might ultimately demonstrate on the merits that some class members were not harmed … does not preclude class certification"). Further, because the only issue to be tried is whether Plaintiff's body chemistry contentions are meritorious, whether some people might believe that Prevagen worked for them is irrelevant and inadmissible particularly given the existence of the placebo effect. *See Simeon Mgmt. Corp. v. F.T.C.,* 579 F. 2d 1137, 1143 (9th Cir. 1978) ("[a]necdotal evidence, such as testimonials by satisfied patients or statements by doctors that, based on their experience, they 'believe' a drug is effective" are not deemed reliable evidence of efficacy) (emphasis added); *E.R. Squibb and Sons, Inc. v. Bowen,* 870 F. 2d 678, 685 (D.C. 1989) (same). *See also Forcellatti,* 2014 WL 1410264 *9 (same); *Allen v. Hyland's Inc.,* 300 F.R.D. 643, 661 (C.D. Cal. 2014) (same); *F.T.C. v. Pantron I Corp.,* 33 F. 3d 1088, 1100-01 (9th Cir. 1994) (same).  The FDA and FTC agree that anecdotal human experiences are not scientific evidence of efficacy.[1]

Thus, whether Prevagen provides the represented brain health benefits is a common predominant question for the fact finder to resolve based on consideration of the experts' opinions.

### 3.   The Addition of the Prevagen Professional Product and Prevagen Products Containing Vitamin D3 Does Not Defeat Class Certification

Defendant argues that inclusion of the Professional Product and Products with vitamin D3 "erodes" predominance.  (Oppn, 11, 24-15.)  There is no predominance issue as both these products

---

[1] *See* FDA Guidance for Industry (12/08), *available at* www.fda.gov/Food/GuidanceRegulation/ GuidanceDocumentsRegulatoryInformation/DietarySupplements/ucm073200.htm;         Dietary Supplements: An Advertising Guide for Industry, *available at* http://www.business.ftc.gov/doc uments/bus09-dietary-supplements-advertising-guide-industry, at (c)(1).

contain AQ and make the same brain health representations.[2] As such, Plaintiff also need not have purchased either product for his claims to be typical of those who did. And that includes any "health professionals"[3] who may have purchased the Professional Product, as they too were victims of Defendant's consumer fraud as the only reason to have purchased it was for the brain health benefits.

Further, Plaintiff should be permitted to amend his class definition to include these two products identified in discovery. (Oppn, 25.) In footnote 1 of Plaintiff's First Amended Class Action Complaint (D.E. 21), Plaintiff specifically "reserves the right to add additional products upon completion of discovery." Unless included, Defendant will get away with defrauding these purchasers if the brain health representations are found to be false and misleading. While the omission of these products will substantially prejudice their purchasers, Defendant will not be prejudiced by their inclusion as they too make brain health representations attributed solely to AQ. *See Pilavsskaya v. Henderson*, 2012 WL 3279517, at *4 (C.D. Cal. Aug. 9, 2012).

However, if the Court finds that either the Professional or the vitamin D3 Product should not be included in the Class, a class of the remaining Prevagen Products can and should be certified. Defendant has produced records to separate the sales of each of its respective Prevagen products. (D.E. 123-6 (QUI004599) (*e.g.*, Professional Product sales total approximately ████).) Thus, the relatively small sales of the Professional and vitamin D3 products can easily be subtracted from or just not included in the aggregate damage calculation.[4] And if a judgment is entered and aggregate damages are awarded to the Class, how those monies are distributed to individual Class members and how to exclude those who purchased these two products from making claims if they are excluded from the

---

[2] For the first time, Defendant makes a brief reference (Oppn, n.6), to a magazine article that discusses a study that contended low levels of vitamin D impaired cognitive impairment, not that increasing levels improved it. This article is inadmissible hearsay and no expert has sponsored this scientific contention. Moreover, Defendant's label for the vitamin D3 product belies the contention that vitamin D3 improves brain health, as the label merely lists vitamin D3, makes no indication that it provides any brain health benefits and, like all of the other Prevagen labels, proclaims AQ as the only active ingredient providing brain health benefits. Moreover, since this product containing vitamin D3 was only recently added to Defendant's product line, after merits discovery, Plaintiff's expert did not have the opportunity to opine on whether vitamin D3 can provide any brain health benefits.

[3] "Health care professional" is never defined by Defendant – it could fairly range from yoga instructor to an alternative health care practitioner.

[4] *See, e.g., Vaccarino v. Midland Nat. Life Ins. Co.,* 2014 WL 572365, at *11-12 (C.D. Cal. Feb. 3, 2014); *Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 989 (9th Cir. 2015) ("*Google*"); *Barrera v. Pharmavite LLC,* No. 11-cv-04153 (C.D. Cal. Nov. 19, 2014), slip op., at 33-37 (D.E. 123-4).

Class, is properly addressed during the claims administration process and is not a basis to deny class certification. *See, e.g., Hilao v. Estate of Marcos,* 103 F.3d 767, 786 (9th Cir. 1996) (defendant's interest is "only in the total amount of damages for which it will be liable," not "the identities of those receiving damage awards"); *Forcellati,* 2014 WL 1410264, at *6 ("because Defendants' liability will be determined in the aggregate, and they will have no claim to any leftover damages, whether any given individual is or is not a rightful class member is entirely immaterial to Defendants' monetary liability in this case"); *see also G.M. Sign Inc., v. Stealth Sec. Systems, Inc.,* 2017 WL 3581160, at *3 (N.D. Ill. Aug. 18, 2017) (regarding the "feasibility of identifying members of the class," district courts should "normally" "wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known.... And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation") (citing *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 664 (7th Cir. 2015)).

In short, whether included or not, the two new products do not preclude certification here.

### 4.    Certification of a UCL Multi-State Class Is Appropriate and Does Not Defeat Predominance

Despite Defendant's arguments about Plaintiff seeking to apply California law to out of state Class members, Plaintiff agrees with Defendant that "[e]ach proposed class member's claim should be governed by the laws of the state where the transaction occurred." (Oppn, 30.) Because the laws of the ten states that Plaintiff seeks to certify as a multi-state class all have consumer protection laws that are materially identical to the UCL (*see* D.E. 123-15 (setting out the relevant laws)), and, as applied to the particular facts and circumstances of this case, there are no "outcome determinative" differences between the laws of the ten states, consumers in these states have common claims with Plaintiff and other consumers in California such that a multi-state class is appropriate. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) (multistate classes can be appropriate absent a showing by defendant of outcome determinative conflicts); *see also Sun Oil Co. v. Wortman*, 486 U.S. 717 (1988) (same); *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1467 (2007) (a law "materially differs" only if the difference is relevant to the facts of or presents an actual issue in the case).

The Ninth Circuit recognized that multi-state class actions are appropriate where the proposed states' laws are similar to California law and the Seventh Circuit recently approved the certification of

1    a consumer fraud class action including the same states as are in Plaintiff's proposed multi-state class.

2    *See, e.g., Mazza,* 666 F.3d at 595; *Mullins,* 795 F.3d 654.[5]

3         Defendant attempts to show material differences in the state laws by submitting a chart (D.E.

4    128-7) providing nothing more than a summary of the law in the ten Class States. In certifying a

5    nationwide consumer class post-*Mazza,* Judge Pregerson considered a similar chart and found that

6    defendant Pom had "not met its burden" because although the "chart summarizes each law's

7    provisions regarding such elements as scienter, reliance, and timeliness, as well as remedies and

8    defenses," "nowhere does Pom apply the facts of this case to those laws or attempt to demonstrate,

9    beyond citation to *Mazza,* that a true conflict exists." *In re POM Wonderful Mktg. & Sales Practices Litig.,*

10   2012 WL 4490860, at *3-4 (C.D. Cal. Sept. 28, 2012), *decertified on other grounds,* 2014 WL 1225184 (C.D.

11   Cal. Mar. 25, 2014).[6]  Similarly, here, Defendant has made no attempt to apply the "facts of the case

12   to those laws" and to actually "demonstrate" a material or outcome determining difference in the laws

13   that will "make a difference in this litigation."  Like the defendant in *Forcellati,* Defendant's "fact-

14   specific materiality analysis ranges from sparse to nonexistent," consisting of only three paragraphs

15   devoid of any "outcome determinative" differences.  2014 WL 1410264, at *2.

16        Reliance is the first supposed "conflict." (Oppn, 28.)  Under the UCL, only the named Plaintiff

17   must demonstrate reliance, which he has done.  There are no reliance requirements for unnamed

18   California Class members – just as there are no reliance requirements under the consumer fraud laws

19   of the other nine Class States.  Thus, there is no material difference in the laws.

20        Scienter is the second supposed "conflict", but only as to Illinois. (Oppn, 28.)  In Illinois, a

21

22   ⁵ Defendant argues the "Court has no jurisdiction over Quincy as to such non-California claims",
     citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.,* 137 S.Ct. 1773 (2017) (Oppn, n.8).

23   But, apparently acknowledging the limitation of its argument, Defendant then cites *Fitzhenry-Russell v.
     Dr. Pepper Snapple Grp., Inc.,* in which the district court found defendant failed to present any

24   "persuasive argument—much less binding law—compelling the extension of *Bristol-Myers* to class
     actions [as opposed to a mass tort action]....the Court has personal jurisdiction over Dr. Pepper as to

25   the putative nationwide class claims." 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017).  The same
     holds true here and the Court should find it has jurisdiction over non-California class members' claims.

26   In fact, numerous Courts have rejected the application of *BMS* in the class context.  *Id.* (citing *AM Tr.
     v. UBS AG,* 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd,* 681 Fed.Appx. 587 (9th Cir. 2017) and
     *Senne v. Kansas City Royals Baseball Corp.,* 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015)).

27   ⁶ *See also Bruno v. Eckhart Corp.,* 280 F.R.D. 540, 547 (C.D. Cal. 2012) (the law requires an analysis based
     on the "circumstances of the *particular* case" and "the *particular* [legal] issue in question") (emphasis

28   and brackets original); *Menagerie Prods. v. Citysearch,* 2009 WL 3770668, at *15 (C.D. Cal. Jan. 6, 2011).

"defendant need not have intended to deceive the plaintiff; innocent misrepresentations or omissions intended to induce the plaintiff's reliance are actionable under the statute." *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill.App.3d 927, 933 (2003); *Rubin v. Marshall Field & Co.*, 232 Ill.App.3d 522 (1992). And, a party "is considered to intend the necessary consequences of his own acts or conduct" – here, that consumers would purchase Prevagen based on the label representations. *Warren v. LeMay*, 142 Ill. App.3d 550 (Ill. App. 5 Dist. 1986). Thus, the "intent" requirement under the ICFA does not materially differ from that of the UCL.

Finally, variations in the available remedies in the Class States is not a material difference. (Oppn, 29.) Whether providing for restitution or actual damages, the measure of monetary relief – the purchase price of the Products – is the same. States that allow damages to be trebled can be handled by a simple arithmetic calculation post-verdict as is done in antitrust actions. *See, e.g.*, *C.R. Bard, Inc. v. M3 Sys., Inc.*, 120 F. Supp. 2d 1145, 1150 (N.D. Ill. 2000) (trebling damages post-judgment). And, as to attorneys' fees, because they are recoverable under the laws of all ten Class States, an award under any would satisfy the claim for all.[7]

Because there is no "true conflict" between the ten Class States' laws, Plaintiff's claim under California law is typical and representative of the claims of all other proposed Class members. Further, because the law of each of the Class States will be applied, Defendant's, and Plaintiffs' counsels' in the *Vanderwerff* and *Karathanos* cases[8] argument that each of the Class States have a significant interest in applying their own state's law disappears – the relevant law will be applied the same whether by this Court or a court in the forum district.

### C.   PLAINTIFF HAS SATIFIED SUPERIORTY

#### 1.   Plaintiff's Proposed Classes Are Manageable

None of Defendant's "manageability" issues present true concerns. (Oppn, 11, 31-33.)

**Self-Identification aka "ascertainability"**: The Ninth Circuit recently strongly rejected such

---

[7] Defendant's reliance on *Sandoval v. Pharmacare US, Inc.*, 2016 WL 3554919 (S.D. Cal. June 10, 2016) is misplaced as there the court was considering application of California law to a nationwide class.
[8] The letter plaintiffs' counsel in *Vanderwerff* and *Karathanos* submitted to this Court (D.E. 130) is similarly misplaced as Plaintiff does not seek to apply California law to New Jersey and New York claims – but to apply the respective laws of those states to class members' claims in those states.

- 11 -

ascertainability arguments: "[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification, and the policy concerns that have motivated the Third Circuit to adopt a separately articulated requirement are already addressed by the Rule. We therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017), *cert. denied sub nom. Conagra Brands, Inc. v. Briseno,* 2017 WL 1365592 (U.S. Oct. 10, 2017).  Self-identification is a claims administration issue as it only pertains to distributing an aggregate damages award, at which time questions of residence, location, date of purchase, product purchased, and the like will be addressed.  *Id.* at 1133 ("we see no reason to refuse class certification simply because that same consumer will present her affidavit in a claims administration process after a liability determination has already been made"); *G.M. Sign Inc.,* 2017 WL 3581160, at *3 (approving "testimony, such as affidavits, as a way of proving class membership").[9]

Further, for all the reasons discussed in Section II(B)(1) above, there is no reason to identify Class members who may have relied on the "clinically tested" representation because, among many other reasons, the "clinically tested" representation is tied to the brain health representations and means nothing on its own.

**Injury and Standing:** For all the reasons set forth above in Section II(B)(1), Class members who may have relied on the "clinically tested" representation were injured and have standing because, among other reasons, no Class member could have relied solely on the "clinically tested" representation as it was tied to the brain health representations and means nothing on its own.

And, as set forth above in Section II(B)(2), Class members who may be "satisfied users" were injured nonetheless because, if Plaintiff proves his body chemistry theory, those experiences would have been due to the placebo effect.[10]

---

[9] *See also Astiana v. Kashi Co.,* 291 F.R.D. 493, 500 (S.D. Cal. 2013); *Lilly v. Jamba Juice Co.,* 2014 WL 4652283, at *4 (N.D. Cal. 2014); *Guido v. L'Oreal, USA, Inc. (Guido II),* 2013 WL 3353857, at *18-19 (C.D. Cal. July 1, 2013); *Ries v. Ariz. Beverages USA LLC,* 287 F.R.D. 523, 535–36 (N.D. Cal. 2012).
[10] The cases Defendant relies on are distinguishable. *Cf. Moheb v. Nutramax Labs. Inc.,* 2012 WL 6951904, at *3-*4 (C.D. Cal. Sept. 4, 2012) (class not ascertainable based on court's belief that "[s]cientific data suggests that Cosamin works for some" (an assertion the plaintiff in *Moheb* apparently did not contest) – in contrast to Plaintiff's allegations and evidence that the science establishes Prevagen does not work for anyone and that those who perceive benefits are experiencing a placebo

- 12 -

1   Because all Class members have been injured, and thus have standing, there is no need to

2   "winnow" the Class members, as Defendant argues. (Oppn, 32.)[11]

3   **Individualized damages:** There are no individualized damages issues.[12]  Consistent with

4   Plaintiff's theory of liability that all the Prevagen Products are worthless, Plaintiff has set forth a

5   reliable method for estimating damages based on a full refund of the purchase price using common

6   proof and a common formulaic approach.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013); *see*

7   *also Abbit v. ING USA Annuity,* 2015 WL 7272220, at *7 (S.D. Cal. Nov. 16, 2015) (citing *Google,* 802

8   F.3d at 989 and *Kwikset,* 51 Cal. 4th at 329); *Lanovaz v. Twinings N. Am., Inc.,* 2014 WL 1652338, at *6

9   (N.D. Cal. Apr. 24, 2014); *Barrera,* slip op., at 33-37 (D.E. 123-4); *Korolshteyn*, 2017 WL 1020391, at *7.

10  **Multi-state Class:**  As set forth above in Section II(B)(4), because the laws of the ten Class

11  States are materially the same when applied to the facts of this case, the same evidence and same

12  witnesses will be relevant to proving Plaintiff's and all Class members' claims.  In the unlikely event

13  different jury instructions will be needed for any of the Class States, this can be addressed during the

14  pre-trial phase of the case.  And, Plaintiff has not submitted a formal trial plan because "[n]othing in

15  Rule 23 requires Plaintiff to submit a formal trial plan along with [her] motion for class certification."

16  *Sullivan v. Kelly Servs.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010); *see also Chamberlan v. Ford Motor Co.*, 402

17  F.3d 952, 961 n.4 (9th Cir. 2005) ("[n]othing in the Advisory Committee Notes suggests grafting a

18  requirement for a trial plan onto [Rule 23]").  If the Court certifies the proposed Class here and desires

19  a trial plan, Plaintiff will provide one.

20

---

21  effect); *Minkler v. Kramer Labs., Inc.,* 2013 WL 3185552, at *3 (C.D. Cal. Mar. 1, 2013) (no allegation
    anti-fungal pen did not work for everyone, so proposed class included people who were successfully
22  treated by the product); *Chow v. Neutrogena Corp.,* 2013 WL 5629777, at *2 (C.D. Cal. Jan. 22, 2013)
    (unmanageable because there were "significant individualized questions" as to whether wrinkle cream
23  provided advertised benefits to certain class members "necessitate[ing] consulting each class member
    individually to determine if they experienced the advertised result"); *Randleman v. Fidelity Nat. Title Ins.*
24  *Co.,* 646 F.3d 347, 353 (6th Cir. 2011) (given how plaintiffs "framed the issues and defined the class"
    "determining liability would require an examination of each individual policy" defeating predominance
25  and manageability).
    [11] "[F]ortuitous non-injury to a subset of class members does not necessarily defeat certification of the
26  entire class, particularly as the district court is well situated to winnow out those non-injured members
    at the damages phase of the litigation, or to refine the class definition." *Torres,* 835 F.3d at 1137.
27  [12] Even if there were, "[g]enerally, potential manageability problems during the damages phase of a
    class action do not defeat certification."  *Forcellati,* at *8.  *See also Leyva v. Medline Indus. Inc.,* 716 F.3d
28  510, 513 (9th Cir. 2013); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010).

1

### 2.    A Class Action is Superior

Defendant's refund policy is not a superior means of **adjudicating** Plaintiff's and Class members' claims (Oppn, 33-34), because it is not an adjudication.   As one district court recently explained in finding superiority satisfied despite the existence of a refund policy,

> allowing class members to obtain a refund is not an alternative to "adjudicating" whether Defendants are liable for material misrepresentations on the labels of their products. If it were, then Costco (and any retail store) could freely misrepresent the benefits of their products secure in the knowledge that their return policy effectively immunizes them from any suit seeking restitution. Moreover, to require each absent class member to drive to a Costco store, wait in line, deal with an employee and ask for a relatively small refund is not superior to obtaining relief as a class.

*Korolshteyn*, 2017 WL 1020391, at *8.   *See also Allen,* 300 F.R.D. at 672 (the plain text of Rule 23(b)(3) requires a class action to be the superior form of "*adjudicating* the controversy," not of recovering) (emphasis added); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 610 (E.D. La. 2006) (same).

In addition, the offer of a refund is illusory as it is not made on the Prevagen Products' labels, would require a consumer to know to go to Defendant's website and then requires several clicks on links on the Prevagen website to find it, and is only given if the purchase was through an "authorized reseller," requested within "45 days after date of purchase", and if the purchaser has the "original receipt and the original bottle[s]," and calls the customer service number for instructions.   Not to mention, "[n]o one would buy something *knowing* that it was worthless and that therefore he would have to get a refund of the purchase price" when they must wait 6-8 weeks for their refund to come in the mail. *(see* http://www.prevagen.com/faqs.).   *F.T.C. v. Think Achievement Corp.*, 312 F.3d 259, 261 (7th Cir. 2002) (emphasis in original).   Tellingly, Defendant does not disclose the amount, if any, of refunds it has ever provided to Class members and did not do so during merits discovery.[13]

Given that Prevagen is a low-cost consumer item, "there is no realistic alternative to a class action in this case, making a class action understandably the superior method of adjudication." *Guido II,* 2013 WL 3353857, at *17 (certifying a class of $10 serum purchasers); *see also Ortega*, 300 F.R.D. at 430 (finding superiority met in certifying a class of $16-17 dietary supplement purchasers).[14]

---

[13] And, any refunds Class members did receive can be excluded from the aggregate damages calculations and also from individual damage awards during the claims administration process as Defendant surely maintains records of to whom it provided a refund. *See Rodman v. Safeway, Inc.*, 2014 WL 988992, at *17 (N.D. Cal. Mar. 10, 2014).

[14] The cases Defendant relies on are distinguishable as cases involving substantial publicity of the

- 14 -

### III. DISMISSAL OF THE FTC PREVAGEN ACTION IS IRRELEVANT TO CERTIFICATION

In yet another improper attempt to inject untimely merits arguments based upon clinical studies into the class certification process, Defendant cites to the recent dismissal of the FTC's Prevagen lawsuit, *Federal Trade Commission v. Quincy Bioscience Holding Co., Inc., et al.*, 2017 WL 4382312 (S.D.N.Y. Sep. 28, 2017).   Defendant contends the court in the FTC action reviewed Defendant's purported "clinical testing" for its brain health representations – the Madison Memory Study ("MMS") – and found that the FTC and the New York Attorney General could not allege "any actual errors occurred" and the FTC "failed to state even a plausible claim that reliance upon the subgroup data is likely to mislead reasonable consumers." (Oppn, 15.)  The order, however, was not a vindication of the MMS nor of Defendant's purported "clinical" evidence that Prevagen works as represented. Rather, the complaint was dismissed on the highly technical ground that the FTC failed to *plead* that the MMS study was unreliable and instead only pled that it was most likely a false positive.

Nevertheless, Defendant goes all in by devoting 2 pages of its brief to a detailed discussion of the MMS.  (Oppn, 13-14.)  But even if it were relevant and properly considered, the reliability of the MMS and whether it establishes anything would be a common classwide question, further favoring class certification.

### IV. CONCLUSION

Plaintiff respectfully requests the Court grant certification here and appoint Plaintiff as class representative and Bonnett, Fairbourn, Friedman & Balint and Siprut, PC as Class Counsel.

Dated: November 3, 2017                   BONNETT, FAIRBOURN, FRIEDMAN
                                          & BALINT, P.C.

                                            /s/ Patricia N. Syverson

availability of a refund.  *Cf. e.g.*, *Webb v. Carter's, Inc.*, 272 F.R.D. 489, 504-5 (C.D. Cal. 2011) (communicated in a joint public statement subject to a high degree of public visability); *In re ConAgra Peanut Butter Prods Liab. Litig.*, 251 F.R.D. 689, 691, 701 (N.D. Ga. 2008) (all purchasers were "immediately offered full refunds," nearly a million phone calls notifying purchasers of recall, and media coverage generated over 600,000,000 media "impressions"); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003) (numerous newspaper articles noting the availability of consumer refunds).  Further, Defendant has not presented any facts – as there are none – demonstrating that this case presents any of the "gigantic burdens" at issue in *In re Hotel Telephone Charges*, 500 F.2d 86, 90-91 (9th Cir. 1974), which involved over 600 defendants, millions of plaintiffs and complex legal claims which "virtually insured that the litigation would be intolerably time-consuming" and "consume decades of judicial time" which a *de minimus* recovery to each class member.

- 15 -

1   Patricia N. Syverson
    Manfred P. Muecke (222893)
2   600 W. Broadway, Suite 900
    San Diego, California 92101
3   psyverson@bffb.com
    mmuecke@bffb.com
4   Telephone: (619) 756-7748

5   BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
6   Elaine A. Ryan (*Admitted Pro Hac Vice*)
    2325 E. Camelback Rd., Suite 300
7   Phoenix, AZ 85016
    eryan@bffb.com
8   Telephone: (602) 274-1100

9   SIPRUT PC
    Stewart M. Weltman (*Admitted Pro Hac Vice*)
10  17 North State Street
    Suite 1600
11  Chicago, IL  60602
    sweltman@siprut.com
12  Telephone: 312.236.0000

13  BOODELL & DOMANSKIS, LLC
    Max A. Stein (*Admitted Pro Hac Vice*)
14  Nada Djordjevic (*Admitted Pro Hac Vice*)
    One North Franklin, Suite 1200
15  Chicago, IL 60606
    mstein@boodlaw.com
16  Telephone: (312) 938-1670

17  *Attorneys for Plaintiff*

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## CERTIFICATE OF SERVICE

1

2          I hereby certify that on November 3, 2017, I electronically filed the foregoing with the Clerk of

3   the Court using the CM/ECF system which will send notification of such filing to the email addresses

4   denoted on the Electronic Mail Notice List.

5          I certify under the penalty of perjury under the laws of the United States of America that the

6   foregoing is true and correct.  Executed on this 3rd day of November.

7

8                                                   */s/ Patricia N. Syverson*
                                                    Patricia N. Syverson (203111)
9                                                   **BONNETT, FAIRBOURN, FRIEDMAN &**
                                                    **BALINT, P.C.**
10                                                  600 W. Broadway, Suite 900
                                                    San Diego, California 92101
11                                                  psyverson@bffb.com
                                                    Telephone: (619) 756-7748

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION