UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP RACIES, <br><br> Plaintiff, <br><br> v. <br><br> QUINCY BIOSCIENCE, LLC, <br><br> Defendant. | Case No. 15-cv-00292-HSG <br><br> **ORDER ON PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND ADMINISTRATIVE MOTION TO FILE UNDER SEAL** <br><br> Re: Dkt. Nos. 238, 239 |

Plaintiff filed a motion to reopen discovery to depose a Rule 30(b)(6) witness regarding Defendant's sales of Prevagen to California consumers. Dkt. No. 239 ("Mot."). Because Plaintiff fails to establish good cause to reopen discovery, the Court **DENIES** Plaintiff's motion.

## I. BACKGROUND

### A. Procedural Background

This dispute stems from Plaintiff's second motion *in limine*, which the Court denied on the record at the December 17, 2019 pretrial conference. Plaintiff's second motion *in limine* sought to preclude Defendant from contesting the dollar amount paid by Class Members for Prevagen Products during the Class Period. *See generally* Dkt. No. 199. Defendant argued that Plaintiff was improperly trying to shift his burden to prove damages onto Defendant. Dkt. No. 213 at 2. The Court agreed and denied the motion, since Plaintiff has the burden of proving damages at trial. Dkt. No. 244 at 8:1–9; *see also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1184 (9th Cir. 2017), *rev'd and remanded on other grounds,* 139 S. Ct. 710 (2019) (burden is on plaintiff to prove "damages to a reasonable certainty on the basis of his full refund model").

Defendant also claimed that the figures it had provided to Plaintiff were not "reasonable and accurate estimates of the Class damages," because the figures represented Defendant's sales to

its own customers, which are third-party retailers and wholesalers. Dkt. No. 213 at 2–3. As such, Defendant would not stipulate to these figures as the actual dollar amount paid by Class Members. *Id.* at 3. At the pretrial conference, Plaintiff's counsel claimed that Defendant had made misrepresentations about the nature of the provided California sales figures and thus requested that he be allowed to depose a Rule 30(b)(6) witness regarding the figures. Dkt. No. 244 at 10:10–12:9, 14:2–10. Defendant objected on the basis that Plaintiff could have made this request during discovery. *Id.* at 14:11–15:5.

To resolve the newly-raised dispute, the Court directed Plaintiff to file a motion with the specific relief sought and supporting authority, now presently before the Court. *See id.* at 16:20–17:9.

### B. Discovery Concerning California Sales Figures

In 2016, Plaintiff served interrogatories on Defendant, seeking the following information regarding sales: (1) the number of wholesale and retail units sold; (2) "net sales attributable to Your Product in each of the Class States"; (3) the "gross profit margin for Your Product in each of the Class States"; (4) the average "wholesale price, manufacturer suggested retail price, [and] the average retail price for Your Product sold in each of the Class States"; and (5)"the number of each Product sold." Dkt. No. 239-2, Ex. A at 10–13. Defendant responded with boilerplate objections, and also represented that it would produce documents "from which [Plaintiff] may ascertain" some of the requested information. With respect to the request for information on net sales, Defendant responded that it would produce documents "from which [Plaintiff] may ascertain the gross sales revenue of each of [Defendant's] products on an annual nationwide basis." *Id.* at 11. Defendant produced the "requested sales information" on September 7, 2017, and supplemented the "estimated California sales" information on November 13, 2019. Dkt. No. 239-5, Ex. D; Dkt. No. 239-7, Ex. F.

On October 13, 2017, in support of Defendant's opposition to Plaintiff's motion for class certification, Mark Y. Underwood, then President of Quincy, submitted a declaration explaining the produced sales information. Dkt. No. 128-1, Declaration of Mark Y. Underwood In Support Of Defendant's Opposition to Plaintiff's Motion for Class Certification ("Underwood Decl.").

Specifically, Mr. Underwood explained that "the vast majority of Quincy's sales are currently to third-party retailers and distributors, and Quincy has no way of identifying consumers who purchased Prevagen from those retailers and distributors." *Id.* ¶ 10. According to Mr. Underwood, in 2015 and 2016, direct sales to individual consumers constituted less than 20% of Quincy's sales revenues, and before then, direct sales constituted about half of all sales in California. *Id.* In addition, Mr. Underwood made clear that the sales information Defendant produced to Plaintiff on September 7, 2017, "included direct and wholesale sales, not retail sales as Plaintiff's Motion asserts. Quincy does not have retail sales information for third-party retailers." *Id.* ¶ 11.

## II. MOTION TO REOPEN DISCOVERY

### A. Legal Standard

Federal Rule of Civil Procedure 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992); *see also* Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 amendment) (noting court may modify schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension"). Thus, "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.*; *see also Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294 (9th Cir. 2000). Where the moving party has not been diligent, the inquiry ends, and the motion should be denied. *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson,* 975 F.2d at 609. Whether or not to reopen discovery is in the discretion of the district court: the district court has "wide latitude in controlling discovery." *United States v. Reliance Ins. Co.*, 799 F.2d 1382, 1387 (9th Cir. 1986).

### B. Discussion

Plaintiff seeks the following "sanctions" from the Court: (1) the Court "order Defendant to produce for deposition, before trial, a Rule 30(b)(6) corporate designee who is knowledgeable and prepared to testify as to Defendant's California sales during the Class Period … and will produce all of the underlying backup information"; or (2) the Court "direct that the [ ] California sales

3

figure disclosed by Quincy and its counsel … will be taken as established for purposes of the trial of this class action."[1] Mot. at 8. According to Plaintiff, sanctions are necessary because Defendant failed to timely disclose relevant "California sales" information to Plaintiff and "admit the veracity of the information it has produced through its counsel." *Id*. Plaintiff's counsel stated that based on Defendant's 2017 and 2019 responses, he "made the strategic decision, in reliance upon the numbers being verified, to accept these numbers as the damages amount as it simplified what might otherwise be more a complicated presentation to and decision for the Jury." Dkt. No. 239-8, Declaration of Stewart M. Weltman ¶ 7. Plaintiff's counsel further asserts that he "had no way of knowing, until recently, that Quincy and its counsel would disavow the fact that the sales figures they were producing, both in 2017 and 2019, were 'California sales figures.'" Mot. at 7.

The Court is not persuaded. Defendant is not "disavowing" that the figures are "California sales figures," but rather disputes Plaintiff's characterization that the figures represent California *retail sales figures* to individual consumers (in other words, to Class Members). *See* Dkt. No. 249 ("Opp.") at 6. Even if Defendant initially may have been vague in its discovery responses, the critical fact is that since at least October 13, 2017, Plaintiff has been on notice that the provided figures were mainly comprised of Prevagen sales to third-party retailers and distributors, and that Quincy did not have retail information from its third-party retailers. Once Plaintiff became aware of this, he could have sought third-party discovery from the retailers, conducted expert discovery, deposed a Rule 30(b)(6) witness, or requested any other relief available to him. Plaintiff's failure to do anything in over two years is fatal to his motion, as Plaintiff clearly was not diligent.[2]

At trial, Plaintiff may present whatever admissible evidence he has to prove his damages theory, including calling Mr. Underwood to testify about the significance of the provided sales information. But he may not reopen discovery, nor will the Court impose any type of sanctions on

---

[1] The Court already denied Plaintiff's second request, which was the subject of Plaintiff's second motion *in limine*, and will not revisit the issue.

[2] Mr. Underwood's declaration from October 2017 directly contradicts Plaintiff's assertion that "no one from Quincy, neither its counsel nor Mr. Underwood, took issue with the [ ] number for California sales that was cited by Plaintiff to this Court in support of class certification." *See* Mot. at 5. Clearly that was not the case, as Mr. Underwood made clear that the sales information Plaintiff used in his motion for class certification "included direct and wholesale sales, not retail sales as Plaintiff's Motion [for Class Certification] asserts." Underwood Decl. ¶ 11.

4

1    Defendant for Plaintiff's lack of diligence. More than two years later at the eve of trial, Plaintiff

2    asks the Court to make up for his failure to diligently conduct discovery on damages. But that

3    decision falls on Plaintiff alone.

4    Because Plaintiff was not diligent in seeking to reopen discovery, the Court **DENIES**

5    Plaintiff's motion. Defendant is on notice that, should any defense witness contradict prior

6    representations regarding what the produced figures are, the Court may allow Plaintiff to cross-

7    examine defense counsel regarding any discrepancies.

### III. ADMINISTRATIVE MOTION TO FILE UNDER SEAL

The Court now turns to Plaintiff's administrative motion to file under seal the unredacted version of his motion to reopen discovery and supporting documents. Dkt. No. 238.

#### A. Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

5

Records attached to nondispositive motions must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 1179–80 (quotations omitted). This requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

### B. Discussion

Plaintiff's sealing request seeks to seal information materially identical to prior sealing requests, which the Court granted. *See* Dkt. No. 227. Plaintiff requests to seal the Prevagen California sales information referenced in his motion to reopen discovery, the supporting declarations, and Exhibits C and F. Dkt. No. 238. Defendant filed its supporting Rule 79-5 declaration reaffirming that the sales information contained sensitive and confidential information "not known to the public or competitors of Defendant," and disclosure of such information would injure its business interests. Dkt. No. 250 at ¶ 11. The Court previously held the information was sealable, and sees no reason why it should here find that the information no longer meets the "good cause" standard. *See* Dkt. No. 227 at 2–3. Plaintiff's administrative motion to file under seal is **GRANTED**.

## IV. CONCLUSION

The Court **DENIES** Plaintiff's motion to reopen discovery, Dkt. No. 239, and **GRANTS** the administrative motion to seal, Dkt. No 238. Pursuant to Civil Local Rule 79-5(f)(1), documents filed under seal as to which the motion is granted will remain under seal. The public will have access only to the redacted versions accompanying the administrative motion.

**IT IS SO ORDERED.**

Dated: 1/4/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

6