UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP RACIES,<br><br>    Plaintiff,<br><br>  v.<br><br>QUINCY BIOSCIENCE, LLC,<br><br>    Defendant. | Case No. 15-cv-00292-HSG<br><br>**ORDER ON REMAINING MOTIONS *IN LIMINE* AND ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 201, 202, 204, 205, 240, 245 |

Pending before the Court are the parties' remaining motions *in limine*. Dkt. Nos. 201, 202, 204, 205. At the December 17, 2019 pretrial conference, the Court indicated that it was likely to exclude Defendant's witness Lori Osterheldt and Plaintiff's witness Dr. Patricia Falcone, the subjects of Plaintiff's third motion *in limine* and Defendant's second motion *in limine*, respectively. Dkt. No. 244 at 24:1–4. The Court now **GRANTS** the parties' motions to exclude Ms. Osterheldt and Dr. Falcone, and issues this order explaining its reasoning for the record.

The Court also directed the parties to submit detailed offers of proof describing the substance of the proffered evidence at issue in Plaintiff's fourth motion *in limine* and Defendant's first motion *in limine*, and the purpose for which the parties seek to introduce the evidence. Dkt. No. 244 at 30:25–31:5, 32:22–33:24. Having received the offers of proof, the Court **GRANTS** Plaintiff's motion to exclude certain testimony by Mark Y. Underwood and **GRANTS IN PART AND DENIES IN PART** Defendant's motion to exclude evidence of the FDA investigations.

### I. PLAINTIFF'S MOTION *IN LIMINE* NO. 3 RE: LORI OSTERHELDT

Defendant seeks to introduce Ms. Osterheldt as a fact witness and elicit testimony about her "personal experience as to the purchase and use of Prevagen." Dkt. No. 214 at 4. Plaintiff moved *in limine* to preclude Defendant from offering her testimony at trial, because Defendant allegedly did not timely disclose her, and her "so-called 'satisfied customer' testimony [ ] is

routinely excluded as irrelevant in consumer protection cases." Dkt. No. 201 at 1.

First, the Court finds that Defendant timely disclosed Ms. Ostherheldt. Plaintiff argues that Defendant did not disclose Ms. Ostherheldt as a witness until November 19, 2019, and therefore did not amend its disclosures in a timely manner as required under Rule 26(e)(1). Dkt. No. 201 at 1–2. However, Defendant did not learn of Ms. Ostherheldt until November 12, 2019, when Plaintiff's counsel provided Defendant with the names of the eight opt-outs from the class, which included Ms. Ostherheldt. Dkt. No. 214-2, Ex. 2. The Court finds that a one-week difference between the time Defendant learned of Ms. Ostherheldt and its supplementation of its disclosures is timely, and therefore exclusion is not warranted under Rule 37.

However, Defendant has failed to show how Ms. Ostherheldt's proffered testimony is relevant. The inquiry for claims under the California consumer protection statutes (CLRA, UCL, and FAL) is whether the reasonable consumer is likely to be deceived. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "Whether consumers were satisfied with the product is irrelevant." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 507 (6th Cir. 2015) (citing *McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014)). The focus is on "the actions of the defendants, not on the subjective state of mind of the class members." *McCrary*, 2014 WL 1779243, at *14. Therefore, Ms. Ostherheldt's "personal experience as to the purchase and use of Prevagen" is irrelevant, as it has no probative value on the central question of whether Defendant's representations about Prevagen's benefits were false and misleading. *See Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) ("If Plaintiffs' allegations are proven true, Defendants' representations about the products' effectiveness would constitute false advertising 'even though some consumers may experience positive results.'" (quoting *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994))).

Accordingly, because Ms. Ostherheldt's testimony is not relevant, the Court **GRANTS** Plaintiff's motion to exclude Ms. Ostherheldt as a witness.[1]

---

[1] On January 3, 2020, Defendant submitted a revised witness list that does not include Ms. Ostherheldt. Dkt. No. 254. The Court nonetheless rules on the motion to make clear for the record

2

## II. DEFENDANT'S MOTION *IN LIMINE* NO. 2 RE: DR. PATRICIA FALCONE

Defendant's second motion *in limine* seeks to preclude Dr. Falcone for similar reasons as Plaintiff's third motion *in limine*, discussed above. Specifically, Defendant contends that Plaintiff's failure to disclose Dr. Falcone until the eve of trial was "neither harmless nor justified" under Rule 37. Dkt. No. 205 at 4. Further, Defendant argues that Dr. Falcone's testimony would be "duplicative" of Plaintiff's testimony and irrelevant. *Id*. at 4–5.

Here, the Court agrees that Plaintiff did not timely disclose Dr. Falcone and did not demonstrate that the failure to do so was substantially justified or harmless. Under Rule 37, if a party fails to "provide information or identify a witness as required by Rule 26(a) or (e)," then the party is not allowed to use that information or witness at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiff's counsel asserts that counsel did not learn of Dr. Falcone until August 30, 2019. Dkt. No. 210 at 1; Dkt. No. 210-1 ¶ 2. But counsel provides no explanation as to why counsel failed to disclose or otherwise notify Defendant of Dr. Falcone until November 5, 2019, more than two months later. Because the Court finds Dr. Falcone's disclosure unjustifiably late, exclusion of her testimony is warranted under Rule 37.

Even were the Court to find that Dr. Falcone was timely disclosed, the Court would still exclude Dr. Falcone's testimony as irrelevant. Plaintiff argues that Dr. Falcone's testimony is "relevant to the materiality of Quincy's Brain Health Benefit representations." Dkt. No. 210 at 1. Plaintiff seeks testimony from Dr. Falcone about "her purchase of Defendant's Prevagen," including the reasons "why she purchased Prevagen, what she relied upon in making her purchase decision, and how much she paid for the Prevagen." *Id*. at 4 (emphasis removed and quotations omitted). Her testimony purportedly "supports the 'materiality' requirement under the CLRA and provides an example of another Class member and her purchasing process." *Id*. However, materiality is judged by the effect on a "reasonable consumer." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (citing *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal. App. 4th 1351, 1360 (2003)); *see also In re Sony Grand Wega KDF–E A10/A20*

---

why the testimony would be excluded even if offered.

3

*Series Rear Projection HDTV Television Litigation,* 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) ("Information is material if its disclosure would have caused a reasonable consumer to behave differently."). Therefore, Dr. Falcone's testimony as to why she purchased Prevagen and what she relied upon in making her purchase is irrelevant.

The Court thus **GRANTS** Defendant's motion to exclude Dr. Falcone as a witness.[2]

### III.   PLAINTIFF'S MOTION *IN LIMINE* NO. 4 RE: MARK Y. UNDERWOOD[3]

Plaintiff's fourth motion *in limine* seeks to preclude Defendant from having Mr. Underwood, the Chief Operating Officer and founder of Quincy, testify about scientific articles and documents for which Mr. Underwood has been listed as the sponsoring witness.[4] Dkt. No. 202 at 3–5. According to Plaintiff, Mr. Underwood may not give his opinion about these scientific articles, as he is not an expert witness. *Id*. at 3–5. In addition, Plaintiff also seeks to exclude articles that were "never cited by or relied upon by Defendant's experts." *Id*. at 3–5.

According to Defendant's offer of proof, Defendant intends to question Mr. Underwood about "the literature and articles Quincy researched and relied on in forming its decision with respect to the labeling claims at issue in this action." Dkt. No. 243 at 2. Defendant lists thirty exhibits for which Mr. Underwood is the sponsoring witness and, without describing any of the exhibits in any detail, asserts that the documents "relate to the use of apoaequorin ("AQ"), an active ingredient of Prevagen as it developed the product." *Id*.; *see* Dkt. No. 243-1, Ex. A. Defendant claims that Mr. Underwood should be allowed to testify about these documents "as they are relevant to Quincy's development of Prevagen, as well [as] Plaintiff's intention to characterize the label claims as 'misrepresentations.'" Dkt. No. 243 at 2.

Defendant's bare assertions fail to shed any light on the substance of Mr. Underwood's

---

[2] On January 3, 2020, Plaintiff also submitted a revised witness list that does not include Dr. Falcone. Dkt. No. 255. For the same reason explained at note 1 above, the Court nonetheless rules on the motion so the record is clear.

[3] Plaintiff filed a response to Defendant's offer of proof. Dkt. No. 246. But as Plaintiff himself acknowledges, he did not obtain Court approval before filing his response. *See id*. at 1. The Court **STRIKES** Plaintiff's response for failure to comply with the local rules. *See* Civ. L.R. 7-3(d).

[4] Plaintiff also raised a Rule 26 and Rule 37 untimely disclosure argument. Dkt. No. 202 at 1–3. At the pretrial conference, the Court rejected this argument, as Mr. Underwood was on Plaintiff's own initial disclosures. Dkt. No. 244 at 24:7–13.

4

proffered testimony. The Court remains of the view that this is simply an effort either to offer opinions from a nonexpert or to present testimony regarding Defendant's intent. The first purpose is not permissible, and the second is not relevant. Mr. Underwood was not designated as an expert and Defendant does not assert that he is one. He therefore cannot provide his opinion on scientific literature and articles. *See* Fed. R. Civ. P. 26(a)(2). That Defendant characterizes Mr. Underwood as a "fact witness" offering testimony on these scientific articles does not somehow make his testimony permissible.

Further, any testimony by Mr. Underwood about the documents that Quincy "relied on" when it "developed the label claims about Prevagen that Plaintiff challenges" is not relevant. To state a claim under the UCL and CLRA, it is necessary "only to show that members of the public are likely to be deceived by the business practice or advertising at issue." *See Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1160 (N.D. Cal. 2011) (citing *In re Tobacco II Cases,* 46 Cal. 4th 298, 312 (2009). Defendant's motivation or subjective assessment of the nature of the alleged misrepresentations is not an element under the CLRA or UCL.[5] *See id*. at 1161. In other words, even if Defendant subjectively believed that Prevagen would provide brain health benefits because of its reliance on certain scientific literature, if Plaintiff proves at trial that Prevagen does not work, Defendant would still be liable under the UCL and CLRA. *See id*. at 1159 ("California courts have also suggested that while claims of common law fraud require a deception 'known to be false by the perpetrator," this element is not required to state a claim under the fraudulent prong of the UCL.'" (quoting *In re Tobacco II*, 46 Cal. 4th at 312)). Defendant fails to establish how any permissible testimony by Mr. Underwood would have any probative value regarding the efficacy of Prevagen.

In addition, to the extent that there theoretically could be some relevant purpose for Mr. Underwood's testimony, the Court finds that any limited probative value would be substantially

---

[5] The standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA. *Kowalsky*, 771 F. Supp. 2d at 1162 (citing *Consumer Advocates*, 113 Cal. App. 4th at 1360).

5

outweighed by Rule 403 considerations. To be clear, Defendant's only proffered reason for Mr. Underwood's testimony (discussing the "literature and articles Quincy researched and relied on in forming its decisions with respect to the labeling claims at issue," Dkt. No. 243 at 2) is not permissible and not relevant. But Mr. Underwood's testimony and the articles theoretically could provide some background context regarding Quincy's process in creating the labels at issue. For example, Mr. Underwood might testify that he considered certain articles before making the label statements, even while (for the reasons discussed above) he could not testify about his state of mind when doing so or about the content of the articles. But sending to the jury room a large number of articles which no expert will discuss for this purpose, without any context or means for the jury to assess the underlying science discussed in the articles, creates a substantial risk of confusing the issues and misleading the jury. Further, any "process" testimony by Mr. Underwood would be very difficult to distinguish from impermissible testimony about his state of mind or the substance of the articles. Accordingly, any limited probative value the proffered evidence might have is substantially and decisively outweighed by the danger that the evidence will confuse the issues, mislead the jury, and unfairly prejudice Plaintiff. *See* Fed. R. Evid. 403.

Defendant also asserts that even if Mr. Underwood does not "ultimately sponsor" the articles listed in Exhibit A, the documents "should remain on the exhibit list, as Quincy may properly use them to question designated expert witnesses or for impeachment." Dkt. No. 243 at 3. These include the thirty articles listed in Group 1 and an additional five articles listed in Group 2, which Defendant contends it may use "for purposes of refreshing witness' recollection, rebuttal testimony, or use in other witnesses' testimony." *Id*. Without knowing who would be proffered to admit the exhibits, or the precise purpose for which each one would be offered, the Court cannot now weigh in on any hypothetical scenarios. Proper refreshment of recollection, for example, does not require the material used to refresh to be admitted (or even admissible). Whether the exhibits "remain on the exhibit list" is unimportant: the question is whether Defendant meets its burden as to any attempt to use or admit them. So to the extent Defendant thinks the exhibits could be used for some purpose other than those precluded above, the Court will decide whether it agrees when and if Defendant tries to do so. Defendant is warned that the Court will strictly

6

enforce the Federal Rules of Evidence, the disclosure requirements of Rule 26, and the penalties authorized by Rule 37 in assessing any such proposed use.

The Court **GRANTS** Plaintiff's motion to exclude the identified testimony by Mr. Underwood.

## IV. DEFENDANT'S MOTION *IN LIMINE* NO. 1 RE: FDA INVESTIGATION

Defendant moved *in limine* to exclude "any evidence or argument of other lawsuits against Quincy and regarding any government investigations of Quincy." Dkt. No. 204 at 3. Plaintiff asserts that he has "no intention of introducing evidence of any other lawsuit," but argues that he may introduce evidence regarding FDA investigations. Dkt. No. 236 at 1. His offer of proof lists seventeen exhibits he contends should be admitted into evidence. *See generally* Dkt. No. 241. In particular, Plaintiff seeks to admit Exhibits N through Q. *Id*. at 14. The Court has reviewed the proffered exhibits and finds that many of the exhibits, with the exception of Exhibits B, C, N, O, and P, are not relevant, or that any limited probative value is substantially outweighed by Rule 403 considerations.[6]

### A. Exhibits B, C, N, O, and P

With respect to Exhibits B, C, N, O, and P, the Court finds that these exhibits are relevant to the question of whether apoaequorin can clear the brain blood barrier. Exhibit B is a cover letter from Quincy to the FDA dated May 30, 2012, attaching Defendant's premarket notification for New Dietary Ingredient ("NDI"), apoaequorin. Dkt. No. 241-3, Ex. B. Exhibit C is the attached NDI. Dkt. No. 241-4, Ex. C. Exhibit N is Defendant's September 2, 2014 "Generally Recognized as Safe" ("GRAS") submission. Dkt. No. 241-15, Ex. N. The GRAS submission also includes a supporting August 2014 "Expert Panel Statement," with appendices. *Id*. at 000018–

---

[6] Plaintiff seeks to introduce Exhibits A and Q, documents not related to the FDA investigations. Exhibit A is Quincy's preliminary amendment to its patent titled "Apoaequorin-Containing Compositions and Methods of Using the Same." Dkt. No. 241-2, Ex. A. Exhibit Q is an article in the *Regulatory Toxicology and Pharmacology* journal, authored by Dr. Daniel L. Moran (Quincy), Afua O. Tetteh (non-Quincy), Richard E. Goodman (expert retained by Quincy), and Mr. Underwood. Dkt. No. 241-18, Ex. Q. However, these exhibits do not concern the FDA investigations, so it is unclear why Plaintiff included these two exhibits in his offer of proof. Because these exhibits do not come within the scope of Defendant's first motion *in limine*, the Court defers ruling on the admissibility of Exhibits A and Q at this time.

7

000313. At the request of Defendant, the expert panel prepared the report "to determine the Generally Recognized As Safe (GRAS) status of Apoaequorin." *Id*. at 000021. Exhibit O is a February 17, 2016 letter from Defendant responding to an earlier FDA letter. Dkt. No. 241-16, Ex. O. And Exhibit P is a letter dated February 11, 2016 from Dr. Paul Pencharz to the FDA discussing whether apoaequorin raises safety concerns. Dkt. No. 241-17, Ex. P. Dr. Pencharz was retained by Quincy to review the safety of apoaequorin. *Id*. Since the exhibits contain statements being offered against Defendant and were drafted by Defendant's attorneys and retained experts— individuals whom Defendant "authorized to make a statement on the subject"— these statements are not hearsay under the party admission exclusion. Fed. R. Evid. 801(d)(2).

Plaintiff's theory in this case is that Defendant's statements regarding the brain health benefits are false and misleading because apoaequorin is either completely or substantially destroyed by the human digestive tract and thus unable to biologically affect memory or support brain function. Statements in Exhibits B, C, N, O, and P discuss how apoaequorin is digested and whether it can cross the blood brain barrier, and thus are probative regarding Prevagen's efficacy. For example, Exhibit C, the NDI, contains a section on "Resistance to digestion" and reflects Dr. Richard Goodman's conclusion that: "The results of this study demonstrated that recombinant-produced apoaequorin protein was rapidly digested by more than 90% after incubation in SGF … [b]ased on this study, the digestion characteristics of the apoaequorin are similar to those of common non-allergenic dietary proteins."[7] Dkt. No. 241-4, Ex. C at QUINCY-003362. Similarly, Exhibit N contains party admissions by Defendant's retained experts that "Apoaequorin is digested or enzymatically hydrolyzed to individual amino acids that can be absorbed in the digestive tract (Appendix IV)." Dkt. No. 241-15, Ex. N at 000039; *see also id*. ("Additionally, as a polypeptide with 196 amino acids that are common components of dietary proteins, Apoaequorin is likely to be metabolized similar to other dietary proteins and is unlikely to cause any adverse effects."). And in Exhibit O, the specific statements Plaintiff seeks to introduce

---

[7] Exhibits C and O are letters from Defendant which repeat conclusions from Defendant's retained experts, and therefore raise another layer of potential hearsay. However, as discussed previously, these experts were retained by Quincy to review apoaequorin, so their statements may also come in as party admissions.

8

contain conclusions from Dr. Pencharz's report that "the unpublished dog data does not demonstrate that apoaequorin crosses the blood brain barrier in dogs." Dkt. No. 241-16, Ex. O at 3. Dr. Pencharz's report, Exhibit P, states the same. Dkt. No. 241-17, Ex. P at 2–3 ("Therefore, in my opinion the unpublished study report does not establish that apoaequorin crosses the blood brain barrier in dogs."). Accordingly, the Court finds that these exhibits are relevant and admissible.

However, with respect to Exhibit N, the Court does not find that the appendices to the expert panel report (in other words, all pages after 000046) are relevant. These appendices include, for example, a letter from Quincy to the FDA concerning adverse event studies that may unfairly prejudice Defendant, because Prevagen's safety is not at issue in this trial. Any limited probative value of these appendices would be substantially outweighed by Rule 403 considerations. *See* Fed. R. Evid. 403.

### B. Exhibits D–M

Exhibits D through M reflect correspondence with the FDA concerning the safety and early marketing of Prevagen, whether Prevagen qualified as a "dietary supplement" under FDA regulations, and Defendant's corrective actions in response to the FDA letters. *See, e.g.*, Dkt. Nos. 241-5–241-14, Exs. D–M. Plaintiff argues that they are admissible because letters from Defendant are party admissions, and FDA letters fall into the public records exception to the hearsay rule. Dkt. No. 241 at 8; *see also In re Bard IVC Filters Prod. Liab. Litig.*, No. CV-16-00474-PHX-DGC, 2018 WL 1109554, at *4 (D. Ariz. Mar. 1, 2018) (finding FDA warning letter admissible under public records exception in FRE 803(8)).

The Court finds that Plaintiff has failed to show how these communications are relevant to the issues in this case. Plaintiff argues that these exhibits are relevant because they concern statements "directed at Class members to further induce them to purchase Prevagen." Dkt. No. 241 at 6. But the FDA communications in Exhibits D through M do not concern the efficacy of Prevagen. In other words, they do not reflect communications regarding the process of digesting apoaequorin, whether it could clear the brain blood barrier, or whether it works as represented, the

9

key issues in this case.[8]

Further, the Court finds that any limited probative value of Exhibits D through M would be substantially outweighed by Rule 403 considerations. Defendant's involvement with the FDA is not admissible to prove that it also acted in an allegedly unlawful manner with respect to Class Members. As Plaintiff himself admits, these are "bad acts," *see* Dkt. No. 246 at 6, and the Court finds that the evidence proffered would lead to an impermissible propensity inference against Defendant.[9] Any probative value of Exhibits D through M is substantially outweighed by the danger that the evidence will confuse the issues, mislead the jury, unfairly prejudice Defendant, and waste time. *See* Fed. R. Evid. 403.

The Court thus **GRANTS IN PART** and **DENIES IN PART** Defendant's first motion *in limine*, according to the discussion above.

## V.   PLAINTIFF'S ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL

The Court next addresses two of Plaintiff's administrative motions to file under seal: his administrative motion to file under seal portions of his offer of proof and certain exhibits, Dkt. No. 240, and his administrative motion to file under seal Exhibit A to his response to Defendant's offer of proof, Dkt. No. 245.

### A.  Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion

---

[8] The Court rejects Plaintiff's offer to remove all statements other than those "that directly relate to the safety/body chemistry issues," or his suggestion that the Court "issue a limiting instruction to the jury," as Plaintiff fails to identify any statements in these exhibits which discuss the relevant issues regarding how Prevagen does (or does not) work. *See* Dkt. No. 241 at 6.

[9] Because Rule 404(b) refers to "other," not "prior," acts, it is irrelevant whether these events occurred during the Class Period as Plaintiff contends. Dkt. No. 241 at 6; Fed. R. Evid. 404(b).

10

must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

Records attached to nondispositive motions must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 1179–80 (quotations omitted). This requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

**B. Discussion**

Because Plaintiff moves to file documents related to the motions *in limine*, the Court will apply the lower good cause standard. Plaintiff's proffered reason for sealing the requested documents is that Defendant designated the documents "Confidential" under the protective order. Dkt. No. 241-1 ¶¶ 3–9; Dkt. No. 245-1 ¶ 3. In Defendant's supporting Rule 79-5(e)(1) declaration, Defendant requests that portions of Plaintiff's Offer of Proof that reflect correspondence with the FDA, and the entirety of Exhibits C, F, and M be maintained under seal. Dkt. No. 250 ¶ 10. According to Defendant, its sealing request contains "proprietary information concerning apoaequorin" and "confidential information submitted to the FDA." Dkt. No. 250 ¶ 7. Disclosure of this information would injure its business interests and standing in the marketplace,

1 as competitors would "have access to information that they would not otherwise have about
2 Defendant's sales and product." *Id.* ¶ 11. Defendant did not request that the other currently sealed
3 exhibits, Exhibit D, L, and Q, be kept under seal. It also did not provide a supporting declaration
4 with respect to Plaintiff's second administrative motion, Dkt. No. 245.

The Court does not find that there is good cause to grant the administrative motions to seal. As the Court previously explained, a designation of confidentiality is not sufficient to establish that a document is sealable. *See* Civ. L. R. 79-5(d)(1)(A). With respect to the Offer of Proof and Exhibits C, F, and M, the parties have failed to narrowly tailor the redactions to proprietary and confidential business information. For example, Defendant does not explain why it only seeks to seal certain FDA correspondence and not other letters that discuss the same issues (such as Exhibits D and M). Some of the information is also unredacted elsewhere and publicly available. Sealing these exhibits in their entirety is substantially overbroad, and Defendant does not thoroughly articulate how disclosure of the material in each proposed redaction would lead to specific harm or prejudice.

Accordingly, the Court **DENIES** Plaintiff's administrative motions to seal.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's third and fourth motions *in limine*, Dkt. Nos. 201, 202; **GRANTS IN PART AND DENIES IN PART** Defendant's first motion *in limine*, Dkt. No. 204; **GRANTS** Defendant's second motion *in limine*, Dkt. No. 205; and **STRIKES** Plaintiff's response to Defendant's offer of proof, Dkt. No. 246. The Court further **DENIES** Plaintiff's administrative motions to file under seal, Dkt. Nos. 240, 245, and **DIRECTS** Plaintiff to file public versions of all documents for which the proposed sealing has been denied within seven days of this offer. The parties may also file new motions to seal within seven days of this order according to the requirements discussed above.

**IT IS SO ORDERED.**

Dated: 1/4/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge