1  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
2  PATRICIA N. SYVERSON (CA SBN 203111)
  MANFRED P. MUECKE (CA SBN 222893)
3  600 W. Broadway, Suite 900
  San Diego, CA  92101
4  E-mail:  psyverson@bffb.com
           mmuecke@bffb.com
5  Telephone:  (619) 798-4593

6  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
7  ELAINE A. RYAN (*Admitted Pro Hac Vice*)
  2325 E. Camelback Road, Suite 300
8  Phoenix, AZ 85016
  E-mail:  eryan@bffb.com
9  Telephone:  (602) 274-1100

10  WELTMAN LAW LLC
   STEWART M. WELTMAN (*Admitted Pro Hac Vice*)
11  3841 N. Wayne Avenue
  Chicago, IL  60613
12  E-mail:  sweltman@weltmanlawfirm.com
  Telephone:  (312) 504-1988
13
  **Attorneys for Plaintiff and the Class**
14  [Additional Attorneys Listed on Signature Page]

15
               **UNITED STATES DISTRICT COURT**
16            **NORTHERN DISTRICT OF CALIFORNIA**

17  PHILLIP RACIES, on behalf of himself and     Case No.:  4:15-cv-00292-HSG
  all others similarly situated,
18                            **PLAINTIFF'S OPPOSITION TO MOTION**
           Plaintiff,           **TO DECERTIFY THE CLASS**
19
20      v.                          Judge: Hon. Haywood S. Gilliam, Jr.

21  QUINCY BIOSCIENCE, LLC, a Wisconsin    Complaint Filed:  January 21, 2015
  limited liability corporation            Trial Date:         January 6, 2020
22
23           Defendant.
24
25
26
27
28

1

2

## TABLE OF CONTENTS

**Page**

3   I.     THE LEGAL STANDARD GOVERNING DEFENDANT'S MOTION ....................1

4   II.    PLAINTIFF'S PROOF AT TRIAL IS MORE THAN SUFFICIENT TO
         DEMONSTRATE TYPICALITY, ADEQUACY, MATERIALITY,
5        AND RELIANCE ......................................................................................................1

6   III.   PLAINTIFF'S COUNSEL CONTINUE TO DEMONSTRATE THEIR ADEQUACY
7       OF REPRESENTATION AND HAVE PRESENTED MORE THAN SUFFICIENT
        EVIDENCE TO PROVE DAMAGES ......................................................................  2
8

9   IV.   CONCLUSION ........................................................................................  11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. Hyland's, Inc.,*
    300 F.R.D. 643 (C.D. Cal. 2014) ...............................................................7

*Barrera v. Pharmavite LLC,*
    No. 2:11-cv-04153-CAS-AGRx, D.E. 192 (slip op.)
    (C.D. Cal. Nov. 19, 2014) ......................................................................10

*Bernstein v. Virgin America, Inc.,*
    2018 WL 3349135 (N.D. Cal. July 9, 2018) ............................................1

*Chavez v. Lumber Liquidators, Inc.,*
    2012 WL 6115611 (N.D. Cal. Dec. 10, 2012) ..........................................1

*Eggleston v. Chicago Journeymen Plumbers Local Union No. 130,*
    657 F.2d 890 (7th Cir. 1981) ....................................................................5

*Estrella v. Freedom Fin. Network, LLC,*
    2012 WL 214856 (N.D. Cal. Jan. 24, 2012) .............................................1

*Farar v. Bayer AG,*
    2017 WL 5952886 (N.D. Cal. Nov. 15, 2017) .........................................8

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.,*
326 F.R.D. 592, 608 (N.D. Cal. 2018) (Cousins, M.J) ..................................2

*Groover v. Michelin North Am., Inc.,*
    187 F.R.D. 662 (M.D. Ala. 1999) .............................................................1

*In re Apple iPhone App. Litig.,*
6 F. Supp. 3d 1004 (N.D. Cal. 2013) (Koh, J.) ...............................................2

*In re HP Inkjet Printer Litig.,*
2008 WL 2949265 (N.D. Cal. July 25, 2008) (Fogel, J.) ...............................2

*In re Integra Res., Inc.,*
262 F.3d 1089 (10th Cir. 2001) .......................................................................3

*Kandel v. Brother Int'l Corp.,*
    264 F.R.D. 630 (C.D. Cal. 2010) (Fischer, J.) ........................................4

*Knight v. Kenai Peninsula Borough Sch. Dist.,*
    131 F.3d 807 (9th Cir. 1997) ....................................................................1

*Lambert v. Nutraceutical Corp.,*
    870 F.3d 1170 (9th Cir. 2017) ...........................................................5, 7, 9

- 1 -

*Lewert v. Boiron, Inc.*,
   2014 WL 12626335 (C.D. Cal. Nov. 5, 2014) ..................................................... 10-11

*Makaeff v. Trump Univ.*,
   309 F.R.D. 631, 639 (S.D. Cal. 2015) ........................................................7

*Motty v. First Student, Inc.*,
   2016 WL 4498452 (C.D. Cal. Aug. 26, 2016) (Wright, J.) ...........................................4

*Mullins v. Premier Nutrition Corp.*,
   178 F. Supp. 3d 867 (N.D. Cal. 2016) ..................................................... 7-8

*O'Connor v. Boeing N. Am., Inc.*,
   197 F.R.D. 404 (C.D. Cal. 2000) .......................................................4

*Quinonez v. Pharmaceutical Specialties, Inc.*,
   2017 WL 4769436 (C.D. Cal. Aug. 10, 2017) ...........................................4

*Rikos v. Procter & Gamble Co.*,
   2014 WL 11370455, at *13 (S.D. Ohio June 19, 2014), *aff'd*, 799 F.3d 497 (6th Cir.
   2015) ........................................................................................10, 11

*Rodman v. Safeway Inc.*,
   2015 WL 2265972 (N.D. Cal. May 14, 2015) ...........................................1

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir.1996) .......................................................1

*Zeno v. Ford Motor Co.*,
   238 F.R.D. 173 (W.D. Pa. 2006) .......................................................3


**TREATISE**

3 William B. Rubenstein et al., NEWBERG ON CLASS ACTIONS (5th ed. 2013) ...................1, 3

## I.      THE LEGAL STANDARD GOVERNING DEFENDANT'S MOTION

Defendant Quincy Bioscience, LLC ("Quincy"), in moving for decertification, "must show that the class no longer meets Rule 23's certification requirements." *Estrella v. Freedom Fin. Network, LLC*, 2012 WL 214856, at *4 (N.D. Cal. Jan. 24, 2012); *Chavez v. Lumber Liquidators, Inc.*, 2012 WL 6115611, at *3 (N.D. Cal. Dec. 10, 2012) ("The 'moving party' bears the burden of showing that decertification is proper."); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996).  Defendant's burden in urging decertification is relatively heavy because "doubts regarding the propriety of class certification should be resolved in favor of certification." *Id*. (citing *Groover v. Michelin North Am., Inc.*, 187 F.R.D. 662, 670 (M.D. Ala. 1999) (citing 4 NEWBERG ON CLASS ACTIONS § 7540 (3d ed.1992)).  "[D]ecertification and modification should theoretically only take place after some change, unforeseen at the time of the class certification that makes alteration of the initial certification decision necessary." *Bernstein v. Virgin America, Inc.*, 2018 WL 3349135, at *2 (N.D. Cal. July 9, 2018) (citing 3 William B. Rubenstein et al., NEWBERG ON CLASS ACTIONS § 7:34 (5th ed. 2013) and *Rodman v. Safeway Inc.*, 2015 WL 2265972, at *2 (N.D. Cal. May 14, 2015)).  However, the decision to decertify a class ultimately lies within the sound discretion of this court. *Knight v. Kenai Peninsula Borough Sch. Dist.,* 131 F.3d 807, 816 (9th Cir. 1997).

## II.     PLAINTIFF'S PROOF AT TRIAL IS MORE THAN SUFFICIENT TO DEMONSTRATE TYPICALITY, ADEQUACY, MATERIALITY, AND RELIANCE

As will be seen below, nothing material has changed since the Class was certified in December 2017 as to: (1) what Plaintiff relied upon when he saw the Prevagen label in the Walgreens store; or (2) that what he saw was identical or similar in substance to what the Class members saw.  And, Defendant's arguments are not any different.  (*See* Defendant's Opposition to Plaintiff's Motion for Class Certification, at pp. 11, 15-6, 20-21, 34).  The Court rejected Defendant's arguments.  (*See* Dkt. No. 148, Order granting certification).

Plaintiff's testimony at trial is a virtual carbon copy of what he testified to at his deposition. (*Cf.*, Plaintiff's Reply in Support of Class Certification, at 1-3).  And as to the latter, evidence of what the key representations were on the label and the fact that they remained consistent throughout the

Class Period, making the same or similar Brain Health Representations, is based upon: (1) the testimony of Mark Underwood, who admitted that the "Improves Memory" claim – the one that he said was prominently displayed in a larger font on the front of the label – began sometime in 2013 – almost one year before Plaintiff purchased Prevagen in September 2014; (2) Plaintiff testified that he saw and relied upon the "Improves Memory" claim among other things, during his trial testimony and that, at a minimum, it was a substantial factor in his purchase decision; and (3) even if somehow Plaintiff purchased a Prevagen product with the "Brain Cell Protection" representation on the front of the package, despite Defendant's failure of proof as to how Plaintiff could have done so well over a year after  "Improves Memory" was the tagline, per Mr. Underwood's testimony), the Brain Cell Protection label, Ex. 536, makes very similar Brain Health Representations, such that Plaintiff's claims are typical no matter which Product label Plaintiff saw because what he saw would be similar to that of all other Class members.[1]     Moreover, just because Walgreens one year after the "Improves Memory" tagline had been introduced by Quincy – still had it described for inventory purposes as "PREVAGEN BRN Cell PROTECT" does not necessarily mean that this was the Product Plaintiff purchased, because this appellation could have just remained on Walgreens database, even though the front-of-the-label representations changed.

In fact, as seen below, Defendant made the same or similar "typicality" arguments opposing Class certification and, for this reason, they should be rejected now as they were in December 2017.

## III.   PLAINTIFF'S COUNSEL CONTINUE TO DEMONSTRATE THEIR ADEQUACY OF REPRESENTATION AND HAVE PRESENTED MORE THAN SUFFICIENT EVIDENCE TO PROVE DAMAGES

Quincy and its counsel assert to this Court and tell the world, including the press that has been sitting in the courtroom throughout the trial, that Plaintiff's counsel is guilty of disqualifying conduct in *other* litigation:

---

[1] Mr. Racies' trial testimony is more than sufficient to provide the requisite amount of evidence that he saw one or more of Quincy's alleged misrepresentations, that he actually relied on those misrepresentations, and that he was harmed thereby.  *See In re Apple iPhone App. Litig.*, 6 F. Supp. 3d 1004, 1027 (N.D. Cal. 2013) (Koh, J.); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, 326 F.R.D. 592, 608 (N.D. Cal. 2018) (Cousins, M.J.); *In re HP Inkjet Printer Litig.*, 2008 WL 2949265, at *4-5 (N.D. Cal. July 25, 2008) (Fogel, J.).

**Plaintiff's Inability to Substantiate His Damages Model *and the Conduct of Plaintiff's Counsel in Other Litigation* Further Requires Decertification Under Rule 23(a)(4)'s Adequacy Requirement**

Dkt. No. 269 at 9:1-4 (emphasis added).

The accusation about Plaintiff's counsel's conduct in "other litigation", if it were not made in the context of litigation, would be defamatory; it is defamatory and baseless. Other than making this accusation in its header, when one reads the ensuing section of the motion, searching for information about "the Conduct of Plaintiff's Counsel *in Other Litigation*," one finds *nothing. Id.* at 9-11. (The rest of the brief is silent on this subject as well.) This is a deliberate and unsubstantiated attempt to libel Plaintiff's counsel and should neither be countenanced nor ignored.

We do not pass lightly over this unprecedented attack but, in any event, Quincy's latest attempt to attack the adequacy of Plaintiff's counsel is without merit and should be summarily rejected.

The adequacy of counsel prong of Rule 23(a)(4) asks whether counsel are qualified, experienced, and generally able to conduct the litigation, and whether counsel will vigorously prosecute the interests of the class. 1 William B. Rubenstein, Newberg on Class Actions § 3:72 (5th ed. 2019) ("1 Newberg"). During class certification proceedings in the Fall of 2017, Plaintiff's counsel clearly established their adequacy, Dkt. No. 123 at 13:19-23 & n.14. Quincy did not challenge counsel's adequacy and this Court specifically found adequacy by appointing Class Counsel. Dkt. No. 148 at 12. And one might ask, what has Plaintiff's counsel done in other litigation since that time that Defendant's and its counsel would sling the above-referenced accusation – *nothing*.

It is a given that this Court maintains a continuing duty to monitor class counsel, and is obligated to return to the issue of adequacy in the course of the litigation if necessary to protect the interests of the class, *see* 1 Newberg § 3:72; *In re Integra Res., Inc.,* 262 F.3d 1089, 1112 (10th Cir. 2001). But "[o]f course, high-quality lawyering will weigh in favor of finding counsel adequate." *Id.,* § 3:76 (footnote omitted) (citing, *inter alia, Zeno v. Ford Motor Co.,* 238 F.R.D. 173, 188 (W.D. Pa. 2006) ("In addition, plaintiff's counsel have provided diligent and competent representation … during the proceedings thus far. The court, therefore, finds plaintiff's counsel … to be adequate class counsel.").

In making this determination, this Court "should look to the actual progress of the proceedings

- 3 -

to th[is] point," and "should consider the quality of counsel's work up to that point in the litigation." *Motty v. First Student, Inc.,* 2016 WL 4498452, *3 (C.D. Cal. Aug. 26, 2016) (Wright, J.); *see also Kandel v. Brother Int'l Corp.,* 264 F.R.D. 630, 634 (C.D. Cal. 2010) (Fischer, J.) (reviewing the history of the litigation and finding an absence of adequacy due to plaintiff's counsel's "numerous errors and deficiencies in representation").[2]  Thus, in evaluating the performance of Class Counsel, this Court must consider the quality of counsel's work since January 2015 and up to this point in the case, including the litigation of: (1) Quincy's motion to dismiss Plaintiff's amended complaint, Dkt. No. 34; (2) Plaintiff's and Defendant's summary judgment motions, Dkt. No. 89; (3) Defendant's *Daubert* motion challenging Plaintiff's expert, Dkt. No. 90; (4) Plaintiff's motion for class certification, Dkt. No. 148; and (5) the myriad factual and legal issues that were litigated before and during trial.  *See O'Connor v. Boeing N. Am., Inc.,* 197 F.R.D. 404, 410 (C.D. Cal. 2000) (when considering a class decertification motion, the court must not ignore "its rulings and the case history").  Moreover, this Court cannot ignore the efficient presentation of Plaintiff's and Class members' claims during trial. Quincy ignores the lengthy procedural history of this case, and it cannot assert with a straight face that Class Counsel failed to conduct this litigation "vigorously."  Dkt. No. 269 at 9:14.  We respectfully submit that a fair interpretation of the trial record is that Plaintiff's and Class members' presentation of their case was so cogent, comprehensive, and persuasive that Quincy made the decision not to offer any case, much less put on the stand three so-called "experts" who could not rebut a single word of Dr. Richard Bazinet's compelling testimony during his four hours on the witness stand.

Quincy's specific complaints about the performance of Class Counsel are merely criticisms of Class Counsel's strategic decisions on how to try this case most effectively on behalf of the Class. But the case law is legion that when Defendants start arguing about how Plaintiff's counsel are not adequately representing the Class' interests, it is tantamount to the fox guarding the chicken house.

---

[2] In *Kandel,* the key case cited by Quincy in the instant motion, Dkt. No. 269 at 9, the district court found class counsel inadequate where they failed to (1) give pre-suit notice for the Consumers Legal Remedies Act claim, (2) serve and agreed to dismiss a key defendant, (3) consider an important standing issue, and (4) follow the court's local rules, standing order and instructions.  264 F.R.D. at 634-35.  Even then, as Judge Fischer acknowledged, "[a]ll lawyers make mistakes and perfection is not the standard for Rule 23(a)(4)." *Id.* at 635.  *See also Quinonez v. Pharmaceutical Specialties, Inc.,* 2017 WL 4769436, *4-5 (C.D. Cal. Aug. 10, 2017).

*See Eggleston v. Chicago Journeymen Plumbers Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).[3]   As Class Counsel, Mr. Weltman, made a strategic decision to accept Quincy's and its counsel's admissions to California sales amounting to at least $54 million because it would be far simpler for the jury to calculate damages – simply by adding together the provided numbers.  Dkt. No. 269 at 9-10.  The fact that this may not have been what Defendant's counsel would have done (or for that matter what other lawyers would have done) does not make Class Counsel inadequate.  Even if this amount actually represents wholesale numbers, this is again nothing more than the "fox" saying that Class Counsel did not get all the damages possible and, thus, no damages should be awarded.

Class Counsel obtained  admissions from Defendant and its counsel sufficient to prove his and Class members' damages under the Full Refund Model explicated by the Ninth Circuit in *Lambert v. Nutraceutical Corp.,* 870 F.3d 1170, 1182-84 (9th Cir. 2017).  It is notable that in the instant motion Quincy purports to analyze the Full Refund Model without even citing *Lambert,* the controlling authority on this measure of damages under the CLRA.  Dkt. No. 269 at 9-10.

More important, Quincy ignores the substantial amount of discovery that was entered into evidence at trial:

- Ex. 487:  Defendant Quincy Bioscience, LLC's Responses to Plaintiff's Interrogatories, Set Two, at 487-010 to 487-013 (responses to Interrogatory Nos. 20-23) (Dec. 28, 2016).

- Ex. 452:  Defendant Quincy Bioscience, LLC's Supplemental Responses to Plaintiff's Interrogatories, Set Two, at 452-006 to 452-010 (responses to Interrogatory Nos. 20-23) (Sept. 7, 2017).

- Ex. 516:  Quincy Spreadsheet concerning Prevagen Products sales (2001 Q1 – 2017 Q2), at Ex. 516-001 (California "sales information"); 516-003 (California number of units sold);

---

[3] The Seventh Circuit stated:

> Some overlap may be unavoidable. The burden of establishing class requirements rests on plaintiff, but it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class," or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.

657 F.2d at 895 (internal citations omitted).

and 516-005 (California average retail prices).

- Ex. 451:  E-mail messages between Patti Syverson (Plaintiff's counsel) and Joshua Simon (Defendant's counsel) (Sept. 7-12, 2017) (containing defense counsel's affirmative representations as to "requested sales information," "average retail price," and "number of units sold)."[4]

- Ex. 473:  E-mail messages between Patti Syverson and Kevin Roddy (Plaintiff's counsel) and Matt Orr (Defendant's counsel (June 27-Nov. 13, 2019) (containing defense counsel's representations as to "Approximate California Sales" and "California sales").

- Ex. 349:  Prevagen Products sales sheet showing "Wholesale" and "Retail" prices for Regular Strength and Extra Strength capsules.

- Ex. 355 at 355-012:  Prevagen Products sales presentation showing "SRP" (suggested retail price) and "MAP" (minimum advertised price) and "cost" to distributor.

At trial, Mr. Underwood conceded that he authorized Defendant's counsel to represent that the information provided in discovery represented *average retail prices*.

> Q. [Mr. Weltman]:  Well, do you know whether you recall or not that you authorized your attorneys to represent to us that these were the retail – average retail prices?
> A. [Mr. Underwood]:  I – I don't recall. I'm a little…. Yeah, that's – ***I guess that's correct***.

Trial Tr. at 269:21-25.

The fact that the addition of vitamin D had absolutely no impact on the value of Prevagen is reflected in Quincy's own discovery responses.  Quincy's counsel, Joshua Simon, affirmatively represented that the "average retail price[s]" of the Prevagen Products sold in California, Ex. 451-002, were listed on the spreadsheet produced by Quincy in discovery on September 7, 2017, Ex. 516-005.

---

[4] Plaintiff's counsel relied in good faith upon the representations made by Quincy's counsel in the September 7-12, 2017, e-mail messages, and duly considered the representations made the following month by Mark Underwood, Quincy's President, in his Declaration in Support of Defendant's Opposition to Plaintiff's Motion for Class Certification, Ex. 480, ¶¶ 1, 6, 10 & 11 (Oct. 13, 2017).  If, as asserted therein, the California sales information set forth on the Quincy spreadsheet *is all the information that Defendant had*, then why was it incumbent upon Class Counsel to pursue additional discovery?  Even if all of the information that Quincy had "included direct and wholesale sales," *id.,* ¶ 11, the Ninth Circuit's decision in *Lambert,* 870 F.3d at 1183 & n.9, makes clear that such information can be relied upon to calculate damages under the Full Refund Model.

- 6 -

This data included the four quarters in 2016 – both before vitamin D was added and after.   Mr. Underwood testified that vitamin D was added to Prevagen sometime in the "Summer" or "Fall" of 2016. Yet if one compares the pricing of Prevagen in the First Quarter of 2016 versus the fourth quarter of that year, one sees that there is no discernible difference in the amount that consumers paid, or as now claimed by Quincy prices that were charged and paid by its direct purchasers (retailers and wholesale purchasers).   Thus, as Exhibit 516-005 shows, the price of Prevagen Extra Strength in the First Quarter of 2016 was $34.57, when no vitamin D was in the product; in the Fourth Quarter of 2016, it was $34.22 when vitamin D *was* added.   And it remained in that same range during the first half of 2017.   Whether these prices were retail prices, as admitted by Quincy and its counsel, or wholesale prices makes no difference for this comparison as, in either event, it is an apples-to-apples comparison.   The before - and - after prices for all of 2016 and the first half of 2017 are set forth below for the Court's convenience:

| Sales Period | Average Retail Price (Extra Strength) | Average Retail Price (Regular Strength) (30 ct) |
|---|---|---|
| 2016 Q1 | $ 34.57 | $25.16 |
| 2016 Q2 | $ 34.42 | $25.20 |
| 2016 Q3 | $ 34.23 | $25.01 |
| 2016 Q4 | $ 34.22 | $24.95 |
| 2017 Q1 | $ 34.81 | $25.32 |
| 2017 Q2 | $ 34.43 | $25.13 |

Ex. 516-005.

Under the Full Refund Model, damages are measured by "presuming a full refund for each customer, on the basis that the product has no or only a de minimis value." *Lambert*, 870 F.3d at 1183 (emphasis added).   Contrary to Quincy's assertion, Dkt. No. 269 at 6-7, the California federal courts have approved a full refund in cases involving drugs and dietary supplements that were not effective, as well as cases involving other consumer products.   *See, e.g., Allen v. Hyland's, Inc.,* 300 F.R.D. 643, 671 & nn. 25-26 (C.D. Cal. 2014); *Makaeff v. Trump Univ.,* 309 F.R.D. 631, 639 (S.D. Cal. 2015) (allowing full refund model where plaintiffs' theory of liability was that the students "received none of the ***advertised*** benefits of [Trump University]") (emphasis added); *Mullins v. Premier Nutrition*

*Corp.,* 178 F. Supp. 3d 867, 898-99 (N.D. Cal. 2016) (Seeborg, J.) (allowing full refund model where product was advertised to "treat joint health problems or to keep joints healthy" but did not do so); *Farar v. Bayer AG,* 2017 WL 5952886, *9-11 (N.D. Cal. Nov. 15, 2017) (Orrick, J.) (where consumers purchased multivitamin products and alleged that defendants' products contained false or misleading health claims relating to heart health, immunity, and physical energy, and presented a damages model that provided for full restitution because defendants' products provided no health benefits to consumers, and did not provide any other benefits that foods might, such as calories, satisfaction of hunger, tastiness, or nutrition; Judge Orrick "agree[d] with plaintiffs" and rejected defendants' argument that their multivitamins were food products and provided nutritional value in the form of essential vitamins and nutrients; court observed: "No plaintiff claimed that she decided to purchase [defendants'] products for the so-called [vitamin] benefit. Nor do defendants market this supposed benefit on then product packaging or other marketing materials.").

Here, Plaintiff presented evidence that the key and only represented active ingredient in the Prevagen Products, AQ, was "valueless and therefore amenable to full refund treatment." *Lambert,* 870 F.3d at 1183. There is no evidence in the record that the addition of Vitamin D in the "Summer" or "Fall" of 2016 provided even "a de minimis value" to California consumers, and the above-referenced analysis shows that even Quincy knew this because it did not charge (nor could it), any more money for the odd addition of vitamin D to its products.

And if the "no change" in pricing were not enough, there was no change in the Brain Health Representations because the labels, Ex. 536 and Ex. 355, all make similar if not identical Brain Health Representations including the key ones about memory, clearer thinking, and sharper mind.

Thus, contrary to Quincy's assertion, Dkt. No. 269 at 7, Plaintiff did not fail to take account of the "value" that vitamin D supposedly "adds" to Prevagen. As noted above, the evidence introduced by Plaintiff allows the inference that *no value* was imparted by the addition of vitamin D in 2016. And as Mr. Underwood admitted, Quincy did not proclaim to consumers that the addition of vitamin D changed the product in any way with regard to the Brain Health Representations. It was merely mentioned in the ingredient listing on the back of the package, as opposed to the emphasis on AQ on

- 8 -

the front of the labeling (including pictures of jellyfish in the upper left-hand corner) and throughout its promotional materials.  (*See* Ex. 355 – depicting front labels of all three products in the class as well as promotional materials, all of which emphasized AQ and its connection to jellyfish, as the sole active ingredient).

In fact, in documents submitted to the Food and Drug Administration, Quincy continuously equated AQ as being Prevagen.  Thus, for example, in its GRAS submission Quincy states: "Apoaequorin protein preparation manufactured as Prevagen ® has been marketed as a dietary supplement, since 2007." Thus, in Quincy's own words, since 2007 its synthetic AQ has been sold under a trademarked name Prevagen ® - or, in other words, AQ is Prevagen and Prevagen is AQ.  *See* Ex. 4-034. *See also* Ex. 4-028, 036, 037, and 038. So, whatever purpose the addition of vitamin D to the Products served, Prevagen is AQ.

To the extent that Quincy claims that vitamin D provided *any* value, it was *Defendant's* burden to prove the amount of any offset due to the supposed value.  *See Trump Univ.*, 309 F.R.D. at 642-43.  Thus, it is Defendant who suffers from a failure of proof on this issue – not Plaintiff.

Finally, even if *all* of the information provided by Quincy and its counsel in discovery admissions in 2017 and 2019 was limited to "wholesale," rather than "retail" sales – and it is not – the Ninth Circuit's analysis of this issue in *Lambert* makes clear that we uncovered sufficient evidence in our discovery efforts from Fall 2016 to Fall 2019, and supplied the trier of fact with enough information to compute damages – even if the result reached is an approximation:

> This is not to say that every case proceeding under a full refund theory must produce figures for the average price and unit sales of a product. As Lambert argued in his motion for class certification, point-of-sale data approximating the total retail expenditure would also be an appropriate method of calculating restitution on a worthless item. ***So, too, would evidence of the defendant's wholesale revenue, if reasonably capable of being weighed or adjusted by the trier of fact to account for the possible difference between wholesale and retail values.***

870 F.3d at 1183 n.9 (emphasis added).  As set forth above, the Prevagen Products' sales sheets – Exhibits 349-001 & 355-012 – taken in combination with the spreadsheet, Ex. 516 -003, which sets forth the units sold, provided the fact finder with the means of "weigh[ing] or adjust[ing]" the "wholesale revenue" to determine its equivalent in "retail values."

- 9 -

Nor can Quincy properly claim that Plaintiff has "failed to produce any evidence" in support of the Full Refund Model.  Dkt. No. 269 at 10:6.  The preceding paragraphs of this brief demonstrate that the opposite proposition is true: Plaintiff and Class members introduced ample damages-related evidence into the record, and none of it was contradicted by the Defendant.  Contrary to Quincy's assertion, nothing in *Lambert*, 870 F.3d at 1182-84, or in the cases it cites, requires Plaintiff and Class members to "produce expert testimony," Dkt. No. 269 at 10:8, to prove damages under the Full Refund Model.  Indeed, using the information *provided by Quincy and its counsel* in discovery during 2017-2019, we presented the jury with the following "CLRA Damages Calculations" that were not contradicted by Quincy or its counsel:

| From Defendant's discovery responses (California sales through 2Q 2017) [EXHIBIT 516] | $ 34,015,880 |
|---|---|
| Add From Matt Orr email message (California sales – all of 2017) [EXHIBIT 473] | + $9,693,141 |
| Add From Matt Orr email message (thru Sept 2018) [EXHIBIT 473] | + $9,299,030 |
| Add From Matt Orr email message (Oct 2018 – May 2019) [EXHIBIT 473] | + $8,023,000 |
| **Total** | **= $61,031,051** |

Nor were these sizable damages numbers ever contradicted by Mr. Underwood, who attested in his October 2017 declaration that he was knowledgeable about, and familiar with, Quincy's company records regarding sales of Prevagen Products. Ex. 480, ¶ 6.

Even if the sales figures provided by Quincy and its counsel in 2017 and 2019 represent "wholesale sales" figures, they would undisputedly be "conservative" figures.  *Rikos v. Procter & Gamble Co.*, 2014 WL 11370455, at *13 (S.D. Ohio June 19, 2014), *aff'd*, 799 F.3d 497 (6th Cir. 2015) (analyzing California UCL and CLRA claims); *see also* Dkt. No. 123-4, *Barrera v. Pharmavite LLC*, No. 2:11-cv-04153-CAS-AGRx, D.E. 192 (slip op.), at 34-37 (C.D. Cal. Nov. 19, 2014) (finding "that plaintiff has proffered an adequate classwide theory of relief that is tethered to her [worthless] theory of liability" where damages can be ascertained based on either the "Retail Method" or the "Wholesale Method"); *Lewert v. Boiron, Inc.*, 2014 WL 12626335, at *7 (C.D. Cal. Nov. 5, 2014)

- 10 -

(finding class-wide damages model appropriate where plaintiff "asserts that Oscillo is nothing more than a sugar pill and is thus worthless" and argued he will be able to estimate damages to a reasonable degree of economic certainty based on either retail or wholesale prices). As a general matter, a wrongdoer cannot escape liability by stating that its records do not permit calculating damages or restitution with exact precision.  As Judge Black stated:

> The principle is an ancient one and is not restricted to proof of damage in antitrust suits" that "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946). Accordingly, while the jury "may not render a verdict based on speculation or guesswork" the jury "may make a just and reasonable estimate of the damage based on relevant data...[and] act upon probable and inferential, as well as direct and positive proof." *Id.* at 264.  "Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim." *Bigelow*, 327 U.S. at 264.

2014 WL 11370455, at *13 (citations omitted).  In this case, as in *Rikos*, the fact finder has a "wealth of evidence from which a just and reasonable estimate of damages or restitution" can be made.  *Id.* at *14.

Finally, Quincy's attacks upon Class Counsel's conduct of this trial should hold little weight with this Court.  Dkt. No. 269 at 11.  After all, it was Quincy's counsel who insisted that the jury be provided with an *unredacted* copy of Ex. 516 – the spreadsheet that Defendant produced in discovery in September 2017 – showing multi-million dollar sales of Prevagen Products (approximately $63 million) in numerous states <u>other</u> than California (specifically, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington).  Given these facts and circumstances, it does not behoove Quincy's counsel to attack the "adequacy" of Plaintiff's counsel.

## IV.  CONCLUSION

For the reasons set forth herein, Defendant's Motion to Decertify the Class should be denied.

Dated: January 12, 2020

Respectfully Submitted,
BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

By: */s/ Patricia N. Syverson*
Patricia N. Syverson (CA SBN 203111)
E-mail:psyverson@bffb.com

- 11 -

Manfred Muecke
E-mail:Mmuecke@bffb.com
600 W. Broadway, Suite 900
San Diego, CA 92101
Telephone:  (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN & BALINT,
P.C.
Elaine A. Ryan (*Admitted Pro Hac Vice*)
E-mail:eryan@bffb.com
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone:  (602)-274-1100

WELTMAN LAW LLC
STEWART M. WELTMAN (*Admitted Pro Hac Vice*)
3841 N. Wayne Avenue
Chicago, IL  60613
E-mail:sweltman@weltmanlawfirm.com
Telephone:  (312) 504-1988

WILENTZ, GOLDMAN & SPITZER, P.A.
Kevin P. Roddy (CA SBN 128283)
E-mail:kroddy@wilentz.com
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
Telephone:  (732) 636-8000

**Attorneys for Plaintiff and the Class**

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

I certify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this12th day of January 2020.

*/s/ Patricia N. Syverson*
Patricia N. Syverson (CA SBN 203111)
BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
600 W. Broadway, Suite 900
San Diego, CA  92101
E-mail:psyverson@bffb.com
Telephone:  (619) 756-7748

- 13 -