Pages 1 - 15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Haywood S. Gilliam, Jr., Judge

PHILLIP RACIES, ON BEHALF OF  )
HIMSELF AND ALL OTHERS        )
SIMILARLY SITUATED,           )
                              )
          Plaintiff,          )
                              )
  VS.                         )     **NO. CV 15-00292-HSG**
                              )
QUINCY BIOSCIENCE, LLC,       )
                              )
          Defendant.          )
                              )

Oakland, California
Friday, February 14, 2020

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
    WELTMAN LAW LLC
    3841 N. Wayne Avenue
    Chicago, IL  60613
**BY:  STEWART M. WELTMAN, ESQUIRE**


For Defendant:
    CALL & JENSEN
    610 Newport Center Drive - Suite 700
    Newport Beach, CA  92660
**BY:  WILLIAM P. COLE, ESQUIRE**
**MATTHEW R. ORR, ESQUIRE**

    KELLEY, DRYE & WARREN LLP
    1 Jefferson Road
    Parsippany, NJ  07054
**BY:  GEOFFREY W. CASTELLO, ESQUIRE**


Reported By:   Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
               Official Reporter

```
 1    Friday - February 14, 2020                          10:00 a.m.
 2                         P R O C E E D I N G S
 3                              ---oOo---
 4         THE CLERK:  We're calling CV 15-292, Racies vs. Quincy
 5    Bioscience, LLC.
 6         Please step forward and state your appearances for the
 7    record, please.
 8         MR. WELTMAN:  Good morning, Your Honor.  Stewart
 9    Weltman on behalf of the plaintiff.
10         THE COURT:  Good morning, Mr. Weltman.
11         MR. COLE:  Good morning, Your Honor.  William Cole,
12    Matthew Orr, and Geoffrey Castello for the defendant.
13         THE COURT:  Good morning, Mr. Cole.
14         There are three motions that are teed up for hearing.  One
15    is the defendant's motion to decertify the class.  The
16    defendants also made a motion for judgment as a matter of law,
17    and the plaintiffs have made a motion for judgment as a matter
18    of law.
19         Here is how we'll proceed.  I don't need to hear any
20    argument on the plaintiff's motion for judgment as a matter of
21    law because I'm going to deny it.  Based on the record at
22    trial, there was certainly evidence upon which the jury could
23    have gone either way on the question of the efficacy of the
24    product, which was the basis for the motion, so we don't need
25    to talk about that.
```

1        I really want to talk about the motion to decertify
2   because in reviewing the record, I had some real concerns about
3   the manner in which the evidence came in.  It was odd to me --
4   and I went back and looked at the record from the class
5   certification motion -- that there were particular labels that
6   were presented.  The case that was made to me at the class
7   certification stage seemed to be materially different than the
8   case that was put on at trial.  And essentially when it came
9   down to it -- and I think Mr. Racies was awfully careful on the
10  stand, and he admitted that he just couldn't remember which
11  product he bought.
12       It also seemed very strange to me that he assiduously kept
13  the receipt years later but somehow couldn't find the actual
14  bottle, and that he was never even shown a label, and that the
15  only label that was actually put in evidence was put in by the
16  defense, and that was the brain cell protection label, and it
17  looked like it's actually a bottle label rather than a package,
18  Exhibit 536.
19       Exhibit 355 was what the plaintiff purported to offer as
20  evidence with the product that Mr. Racies bought actually said,
21  but it's in a deck that was used in discussions with a
22  pharmacy.  The labels appear on the first slide, and no witness
23  was even questioned about that piece of it.
24       All of this is troubling, bluntly, not to mention the way
25  that the evidence came in about Mr. Racies having been in

1   Portland at the time when he then somehow was down in the Bay
2   Area buying the product at a Walgreens.  And the evidence that
3   Dr. Bazinet was already working on Prevagen-related research
4   before Mr. Racies even bought the product and the story about
5   how he got connected with Mr. Crane and came to be the
6   plaintiff in this case, all of it struck me as marginal at
7   best.
8       And I have some real concerns about what the state of the
9   record is when the plaintiff, in the end, is very equivocal
10  about what product he bought, and it's very hard to understand
11  how the presumption of reliance can attach when the plaintiff
12  makes the sort of evidentiary showing that it did in this case.
13          **MR. WELTMAN:**  Do you want me to respond, or is that a
14  ruling?
15          **THE COURT:**  You can respond.
16          **MR. WELTMAN:**  Your Honor, where do I start?
17      First off, this is the way we get plaintiffs in cases, is
18  through referrals, and I can't state why this happened this
19  way, other than it did.
20          **THE COURT:**  Who had contact with Mr. Racies from your
21  team before he bought the product?
22          **MR. WELTMAN:**  None.
23          **THE COURT:**  How did Mr. Racies become connected to
24  your team?
25          **MR. WELTMAN:**  Through Mr. Crane.

1    **THE COURT:** And what were your communications with
2  Mr. Crane before Mr. Racies was connected to you?
3    **MR. WELTMAN:** We told him that we were investigating
4  Prevagen, and that's why Dr. Bazinet, who has been working for
5  us for years, was looking at it before he bought the product.
6  This is just a coincidence that he did a billing the day before
7  Mr. Racies bought the product.  They're two unrelated -- they
8  never saw each other.  They don't know each other.
9    **THE COURT:** Did you have any communications with
10 Mr. Crane about Mr. Racies before he approached Mr. Crane?
11   **MR. WELTMAN:** None.  Not -- I certainly don't -- I
12 don't -- I know my co-counsel didn't either.
13     This is the way we get plaintiffs.  We get them through
14 referring attorneys, and, you know, we -- we take them as we
15 get them.
16     He bought the product.  There is no doubt about it.  I
17 don't think there is any confusion.  He said he remembered
18 "memory," "improves memory," and he said he remembered the MMS
19 or the reference to the -- to the MMS study.  Those are things
20 that have been on the label since 2010 and 2013 respectively
21 before he bought his product.
22   **THE COURT:** Why wouldn't you put in the labels that
23 were on your exhibit list that you introduced at the class
24 certification stage?
25   **MR. WELTMAN:** We thought that these were sufficient to

1   show what the labels were.  I can't argue with you about that
2   then.
3           **THE COURT:**  Okay.
4           **MR. WELTMAN:**  It is what it is.
5           **THE COURT:**  Again, it's just exceptionally odd.  It
6   makes me wonder if you're covering up some problem with your
7   witness.
8           **MR. WELTMAN:**  No.  That wasn't it.  If anything, it
9   was a minor oversight because we believed that these labels
10  were sufficient, but it was not --
11          **THE COURT:**  Do you agree that you never asked any
12  witness, your client, or anyone else, about the substance of
13  the first page of the slide?  The way that you used Exhibit 355
14  was focused on the price list; right?
15          **MR. WELTMAN:**  Well, we knew the labels were coming in.
16  We didn't have to ask anybody.  It was admitted evidence.  It
17  was an admitted exhibit.  Do we have to ask Mr. Underwood, "Are
18  these the labels?"  They're the labels.  They were
19  authenticated and admitted into evidence.
20          **THE COURT:**  When?
21          **MR. WELTMAN:**  It's an exhibit in evidence.  It was
22  agreed to and admitted into evidence.
23          **THE COURT:**  Mr. Cole.
24          **MR. COLE:**  Thank you, Your Honor.
25       We agree with the Court.  The Jury Instruction No. 18,

1    which both parties agreed to and the Court delivered, said,
2    "The plaintiff must prove that he relied on defendant's
3    representations and the class have been exposed to the same
4    representations."
5         The label he's talking about now, which I think is
6    Exhibit 355 -- I may be off -- that label that was in a slide
7    deck, they never showed it to Mr. Racies.  They never said --
8    he never said he saw it or relied on it.  And they also never
9    even put in evidence as to which class members were exposed to
10   it.  So we believe there was a fundamental failure of proof
11   under the jury instruction that was given to the jury that we
12   believe actually requires judgment as a matter of law, and we
13   think that the only way -- the only way not to have judgment as
14   a matter of law would be to reach the conclusion that the class
15   shouldn't be saddled with this representative or with what
16   happened at trial and to decertify it.
17        We think there has to be one or the other because this
18   witness said that he honestly couldn't remember what he saw.
19   He used the word "honestly."  He honestly couldn't remember --
20   and he didn't even know anymore if what he saw was based on
21   something he was shown after he became a plaintiff in the case
22   or whether he saw it beforehand.  That is not an adequate
23   representative.
24        And we think that's -- actually, we think because we've
25   had a trial now and that was the evidence and this was their

1  chance to put on their evidence of a certified class, we think
2  it actually requires judgment as a matter of law, but it
3  certainly, at a minimum, would require, if not that -- and we
4  think it is a ground for judgment -- it would have to be
5  decertification.
6      **THE COURT:** Well, I think it could be both; right?  It
7  could be decertification and then there is the question of what
8  happens with the individual plaintiff's claim.
9      **MR. COLE:** That's fair enough, Your Honor.  That's a
10 fair point.
11     **MR. WELTMAN:** May I respond?
12     **THE COURT:** Yes.
13     **MR. WELTMAN:** Your Honor, Mr. Underwood, the president
14 of the company, testified on the stand to two common
15 representations that were made to -- on the labels, whether the
16 labels were in evidence or not.  He said, "These two common
17 representations were."  One was the MMS study was added on the
18 label in 2010, and the other one was the tagline "improves
19 memory" was put on the front of the label in 2013, and that
20 remained throughout the class period.
21     **THE COURT:** What is your cite to the transcript for
22 that --
23     **MR. WELTMAN:** It's --
24     **THE COURT:** -- so I can look at what he actually said.
25 That's not my recollection.

1     **MR. WELTMAN:**  Well, it's in the briefs, Your Honor.  I
2  don't have it memorized.  I couldn't memorize every record
3  citation, but it is in all of our briefs that he testified to
4  that, and Mr. Racies testified that he -- he was being honest
5  that he can't -- they show him a label; they show another
6  label.  He's being honest, rather than covering up, and says,
7  "Well, right now, I can't completely remember exactly the
8  label, but I remember these things.  I remember that it said
9  'improves memory' and that it had the MMS" -- "it had the
10 reference to the clinical trial on it."  Those are the two
11 representations that Mr. Underwood testified under oath were
12 consistent throughout the class period.
13    So whether we even admitted any label, we now have the
14 admission from the president of the company as these two
15 uniform representations on the front of the label.
16     **THE COURT:**  But that's -- A, I don't remember him
17 testifying quite that way; B, your client -- I'll give him
18 credit.  I think he was very careful.  He didn't want to get
19 himself in hot water on the stand, so he was very careful, as
20 he should be.
21     **MR. WELTMAN:**  Here, I --
22     **THE COURT:**  How can we have a case that is a false
23 advertising/false labeling case where, for reasons I struggle
24 to understand, you didn't put in the label that you offered at
25 class certification and had ready on your exhibit list?

1  Because talking about the -- what words were said on the label
2  I don't think establishes class-wide reliance.  It's how it
3  looked and how it was presented, and you've got to show that
4  that presentation was the same for all class members.  That's
5  what entitles you to the benefit of the presumption of
6  reliance.
7      And so to have him say on direct, "I remember it said
8  these things" and then for him to say on cross, "Well, I've
9  looked at a lot of labels since then and it all gets mixed up
10 in my head," and fundamentally when just flatout put to him, he
11 said, "Honestly, I agree with you.  I don't recall exactly what
12 it said."
13         **MR. WELTMAN:**  But he then told you what he remembered,
14 the impressions that he had.  It's unrealistic to think that a
15 consumer who made a purchase six years ago is going to have
16 complete recollection at a trial this last January.  He was
17 being honest, but what he did recall was very specifically
18 reference to the clinical trial and reference to the "improves
19 memory" representation, and I've got the record cite now --
20 counsel just gave it to me -- where Mr. Underwood testifies to
21 this.  And let me just give -- it's at 295, 3 through 6, quote:
22     "Sometime in 2013, labels with 'improves memory' on the
23 labels was being shipped out?
24     "A. That's probably -- if it's just within the year, I
25 would say that's probably right."

1  That's a direct quote.

2  And he had previously stated that was the tagline; in
3  other words, it was the main, in bold print, representation.

4  Now, Your Honor, I guess if you think that the 355 labels
5  are not sufficient enough to be examples of the labels, then we
6  made -- we, I guess, made the wrong call.

7  **MR. COLE:**  Your Honor, if I could just briefly respond
8  to that.

9  This isn't a case where the consumer, the class
10  representative, couldn't just say he remembered exactly what
11  the label said.  I asked him on cross-examination if he could
12  even remember if it said 'improves memory," and that's --
13  that's -- that's at page 193 of the transcript.  And I asked
14  him, I said:

15  "Q. Isn't it the case, Mr. Racies, that the bottle of
16  Prevagen you purchased did not say 'improves memory' on the
17  front but, instead, said 'brain-cell protection'?  Isn't that
18  correct?

19  "A. I couldn't honestly tell you at this point."

20  And, by the way, when Mr. Underwood said that at sometime
21  in 2013 -- this was testimony that was elicited by the
22  plaintiff -- that sometime in 2013 there would have been
23  packages rolling out that said "improves memory," well, this
24  class goes back to 2012, so there is a problem right there with
25  this class that would have to be decertified.

1    And, secondly, Mr. Underwood also testified that there is
2    no shelf life on this product and so we still are stuck with
3    having no evidence that Mr. Racies actually purchased a product
4    that said "improves memory" on it.
5        **MR. WELTMAN:**  Well, that's also wrong because even, as
6    we pointed out in our brief, even if he had purchased the
7    cell-protection version of the label, it represents that it
8    supports memory.
9        **THE COURT:**  Based on what?
10       **MR. WELTMAN:**  On the label itself it says it.
11       **THE COURT:**  I've got the label in my hand.  Tell me
12   where.  Mr. Weltman --
13       **MR. WELTMAN:**  I'm going to tell you.
14       **THE COURT:**  Okay.  Why don't you do that.  Why don't
15   you get the label -- do you have it?
16       **MR. WELTMAN:**  I have a pretty good idea.  It's not on
17   the front of the label; it's on the side panel.
18       **THE COURT:**  Okay.  So right there, the whole point of
19   this presumption of reliance is the representation is presented
20   in the same way substantially to everybody in the class.  How
21   is something on the side panel in a white box the same as the
22   exhibits that you relied upon in getting me to certify this
23   class in the first place?
24       **MR. WELTMAN:**  Well, Your Honor, I could have -- if you
25   are saying that we don't have evidence prior to 2013 that

1  "improves memory" was the tagline, I'll accept that, but the
2  fact is that Mr. Racies bought their product in 2014, in
3  September, well after the tagline with this label came out, and
4  he testified that he remembered that as one of his major
5  impressions.
6      So when counsel throws a label up in front of him, you
7  know, six years after the purchase, he was just being honest
8  there.  But the fact of the matter is he was also honest about
9  the fact that he remembered buying this for memory improvement,
10 and that was the major impression he had.
11     **THE COURT:**  So they actually didn't show him 536.
12 They put it in later.  Mr. Cole asked the question that he just
13 read, and the answer was what he just represented.
14     **MR. WELTMAN:**  Okay.  Well, I mean, he was being
15 honest.  I -- I -- I guess if you don't believe him, we have a
16 big problem.  I thought he was very credible.  You don't.
17 That's -- you know, it's -- I guess *Rashomon* or whatever the
18 movie is where everybody has a different view.
19     I thought he was highly credible, but you didn't.  I
20 can't -- I can't change your mind on that.  If you believe it,
21 it's probably not going to make any difference what I say.
22     **THE COURT:**  Well, I'm just saying what's being offered
23 as the main evidence by the defense in support of
24 decertification is your client's words.  I don't know that it's
25 that I didn't believe him about this.  I think -- like I said,

1   I think he was very appropriately careful about his testimony.
2        **MR. WELTMAN:**  Well, I think he should be because he
3   was talking about an event that happened six years prior.  And
4   he did remember the key tagline, "improves memory", which
5   Mr. Underwood testified as of 2013 appeared on the labels.
6        So for that -- for that portion of the class, from 2013
7   forward, he is an adequate representative for them,
8   notwithstanding the fact that we don't have every label that
9   we've submitted in class certification.  We have a label, and
10  if you compare that label to the labels we submitted, you will
11  see that they're identical or virtually identical.  They all
12  have the "improves memory" tagline on them.  Do we have to put
13  in 25 to prove that point?
14       **THE COURT:**  You could have put in one.
15       **MR. WELTMAN:**  Well, we did.  We put in three.
16       **THE COURT:**  Mr. Weltman, look, you offered that
17  document.  The testimony about it was for something totally
18  different.  That's just a fact.
19       **MR. WELTMAN:**  There was no testimony on that document.
20  It was a stipulated-admitted document.
21       **THE COURT:**  No.  That's not true --
22       **MR. WELTMAN:**  Oh, yeah.  There was testimony.  I'm
23  sorry.  I'm sorry.
24       **THE COURT:**  Stop overlapping with me.
25       **MR. WELTMAN:**  I'm sorry.

1    **THE COURT:** Anything further?
2    **MR. WELTMAN:** No, Your Honor.
3    **MR. COLE:** No, Your Honor.
4    **THE COURT:** All right. Submitted.
5    **MR. WELTMAN:** Thank you.
6    **MR. COLE:** Thank you.
7             (Proceedings adjourned at 10:18 a.m.)

```
 1
 2
 3                    CERTIFICATE OF REPORTER
 4         I certify that the foregoing is a correct transcript
 5    from the record of proceedings in the above-entitled matter.
 6
 7    DATE:    Wednesday, February 19, 2020
 8
 9    /s/ Pamela Batalo Hebel
      _____
10    Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
      U.S. Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```