UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP RACIES,<br><br>                   Plaintiff,<br><br>          v.<br><br>QUINCY BIOSCIENCE, LLC,<br><br>                   Defendant. | Case No. 15-cv-00292-HSG<br><br>**ORDER ON MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND MOTION TO DECERTIFY THE CLASSES**<br><br>Re: Dkt. Nos. 268, 269, 271 |

Pending before the Court are the following motions: (1) Defendant's motion to decertify the class, Dkt. No. 269; (2) Defendant's motion for judgment as a matter of law, Dkt. No. 268; and (3) Plaintiff's motion for judgment as a matter of law. The Court held a hearing on the motions on February 14, 2020. Dkt. No. 298. After carefully considering the parties' papers and oral arguments, the Court **GRANTS** Defendant's motion to decertify the class; **DENIES** Defendant's motion for judgment as a matter of law; and **DENIES** Plaintiff's motion for judgment as a matter of law.

**I.   BACKGROUND**

Plaintiff Phillip Racies filed this consumer class action on January 21, 2015, bringing claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"). The operative complaint alleges that Defendant Quincy Bioscience, LLC, made false, misleading, and deceptive statements about its brain health supplement, Prevagen. *See generally* Dkt. No. 21 ("FAC"). Specifically, the FAC claims that Defendant's representations that Prevagen products "'improve[] memory' and 'support[]: healthy brain function, sharper mind, and clearer thinking'" were false and misleading. FAC ¶¶ 23–25.

On December 15, 2017, the Court certified the following class for both Plaintiff's UCL and CLRA claims:

> All California consumers who, within the applicable statute of limitations period, purchased Prevagen Regular Strength, Prevagen Extra Strength, or Prevagen Mixed Berry Chewable.

Dkt. No. 148 at 12.

During trial, Plaintiff testified that he purchased Prevagen because he was "dealing with some memory recall issues" and wanted to purchase a Prevagen product to "help me with those issues, focus, memory, recall." Dkt. No. 137 ("Trial Tr. Vol. 1") at 136:25–137:10. Plaintiff testified that he believed Prevagen could help him because of "what it says on the box. It says it targets enhancing memory and improving brain functioning. It -- yeah, so it looked like it was targeted right for what I was feeling I needed help with at that time." *Id*. at 137:11–18. In response to a question as to what "specifically" about the Prevagen product appealed to him, Plaintiff stated:

> A: ... That it addresses memory problems. It improves memory, focus, recall. It -- it seemed like a -- a relatively natural supplement. I remember the jellyfish reference, said clinical studies done on it, I think a blind placebo.
> I believe I got the impression in a relatively short amount of time I would -- I would experience improvement in my memory.

*Id*. at 140:17–23. Plaintiff further explained that he purchased the "Regular Strength" Prevagen product, and that he purchased a Prevagen product instead of another branded supplement because the Prevagen product "seemed like it was focused on what I was looking for and had the -- the things that convinced me to try it." *Id*. at 141:4–6.

The Court admitted into evidence Plaintiff's receipt, which shows a purchase of an item listed as "Prevagen Brn Cell Protect Cap 30S" for $27.99 on September 25, 2014, from a Walgreens in San Rafael, California. Trial Ex. 3. He testified that the product was a 30-day supply of Prevagen, and he took it for about nine consecutive days. *Id*. at 142:19–21, 144:7–11. While Plaintiff kept the receipt, he no longer had the purchased Prevagen bottle. *Id*. at 143:11–22; *see also* Dkt. No. 282 ("Trial Tr. Vol. 2") at 192:9–193:11.

1       During cross-examination, Defendant questioned Plaintiff about whether he purchased a
2  Prevagen product that said "Improves Memory" on the front, or a product that said "Brain Cell
3  Protection," given his receipt:

> Q: Again, Exhibit 3 is the receipt from the purchase, correct?
> A: That's correct.
> Q: I'd like you to focus in on the top portion of that exhibit. Do you see where it says "Prevagen Brn Cell Protect"?
> A: I do.
> Q: And isn't it the case, Mr. Racies, that the bottle of Prevagen you purchased did not say "Improves Memory" on the front, but instead, said "Brain Cell Protection"? Isn't that correct?
> A: I -- I couldn't honestly tell you at this point.

Trial Tr. Vol. 2 at 193:16–194:2.

The evidence shows that the label with the front claim of "Brain Cell Protection" makes the following representations:

> As we age, we lose calcium-binding proteins that protect our brain cells. This protein loss affects our ability to learn, retain memories, think and concentrate.
> Prevagen (Apoaequorin) replaces these proteins in the body and helps protect our cells during this natural process of aging. Originally discovered in jellyfish, Prevagen is now made in a controlled scientific process, so no jellyfish are harmed.

*Id*. at 299:20–23, 300:1–12; Trial Ex. 536. There is no mention of "Improves Memory" on the label. *See* Trial Ex. 536. Mark Y. Underwood, President of Quincy, did not remember when Quincy first started selling the product with the "Brain Cell Protection" label or when Quincy stopped using that particular label. *Id*. at 299:9–13.

At the end of Plaintiff's case-in-chief, the parties moved for judgment as a matter of law under Rule 50. Dkt. No. 283 ("Trial Tr. Vol. 3") at 510:2–17. The Court took the motions under advisement and deferred ruling. *Id*. For Defendant's case-in-chief, Defendant requested that the Court take judicial notice of the fact that September 24, 2014 was a Wednesday, and closed its case. *Id*. at 510:20–511:10.

On January 14, 2020, after deliberating for a few days, the jury was unable to come to a unanimous decision. Dkt. No. 296. The Court declared a mistrial and dismissed the jury. Dkt. No. 285 ("Trial Tr. Vol. 5") at 681:7–682:4.

## II. MOTION TO DECERTIFY THE CLASS

### A. Legal Standard

An order certifying a class "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1). "A district court's order respecting class certification is 'inherently tentative' prior to final judgment on the merits." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 633 (9th Cir.1982); *see also* Fed. R. Civ. P. 23(c)(1)(C). "In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 927 (N.D. Cal. 2017) (citation omitted). The burden of proof remains on the plaintiff. *Id*. (citing *Marlo v. UPS*, 639 F.3d 942, 947 (9th Cir. 2011)).[1] The manner and degree of evidence required for the plaintiff to meet his burden depends on the stage of the litigation. *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (citation omitted). As the Ninth Circuit has acknowledged, "the manner and degree of evidence required at the preliminary class certification stage is not the same as at the successive stages of the litigation—i.e., at trial." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (quotation omitted).[2]

### B. The Court's Class Certification Order

The Court first recounts the relevant key holdings from its December 15, 2017 order certifying the class. *See generally* Dkt. No. 148. The Court found that the evidence presented at the class certification stage suggested that Plaintiff was motivated to purchase Prevagen based on "representations that the product '[i]mproves memory' and '[s]upports healthy brain function," a

---

[1] The Court notes that other district courts in this circuit have found that the party seeking decertification bears the burden of demonstrating that the elements of Rule 23 have not been established. *See, e.g.*, *Zakaria v. Gerber Prod. Co.*, No. LACV1500200JAKEX, 2017 WL 9512587, at *16 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018); *Cole v. CRST, Inc.*, 317 F.R.D. 141, 144 (C.D. Cal. 2016); *Rosales v. El Rancho Farms*, No. 09-cv-00707, 2014 WL 321159, at *4 (E.D. Cal. Jan. 29, 2014). While the Ninth Circuit has not affirmatively articulated the burden of proof for decertification, in *Marlo*, the panel held that the district court, in its order decertifying the class, "properly placed the burden on [the plaintiff] to demonstrate that Rule 23's class-certification requirements had been met." *Marlo*, 639 F.3d at 947. In any event, the Court does not find that this distinction would change its analysis.

[2] For example, the Ninth Circuit has recognized that numerous courts in this circuit have concluded that during the class certification stage, it is appropriate to consider evidence that may ultimately be inadmissible at trial. *Sail*, 909 F.3d at 1004 n.2.

4

1   "[s]harper mind," and "[c]learer thinking." *Id.* at 4 (citing Dkt. No. 145, Ex. K at 85:6–20, 88:11–
2   20). The Court held that because Prevagen is "not marketed for uses other than improving brain
3   health and memory," the representations about these purported benefits were a "substantial factor"
4   in "Plaintiff's—and all consumers'—purchasing decisions." *Id*. Thus, the Court found that
5   Plaintiff satisfied the typicality requirement under Rule 23(a).

Relatedly, the Court found that Plaintiff had satisfied the predominance requirement. With respect to reliance, Plaintiff had made a sufficient showing that the challenged representations about Prevagen would be material to a reasonable consumer, and that at a minimum, everyone who purchased Prevagen would have been exposed to the same brain health claims that appeared on its products. *Id*. at 6–7. Accordingly, Plaintiff was entitled to a presumption of reliance, which is an essential element of both the UCL and CLRA claim. *Id*.

### C. Discussion

Defendant moves to decertify the class based on the following: (1) Plaintiff does not satisfy the typicality and adequacy requirements because he was not exposed to the same brain health benefits as the California class members; (2) individualized issues of reliance predominate as Plaintiff could not identify the representations that he saw or relied upon when purportedly purchasing the Prevagen product; (3) Plaintiff failed to set forth any evidence satisfying the "full refund" damages model; and (4) Plaintiff's counsel is inadequate. Dkt. No 269 at 1.

#### i. Typicality

Defendant contends that the Court's finding of typicality at the class certification stage was not borne out by the evidence at trial, as Plaintiff failed to put in any evidence "whatsoever as to the representations (if any) on which he actually relied." Dkt. No. 269 at 2. Notably, Plaintiff makes only a cursory attempt to refute this. He argues that "Plaintiff's testimony at trial is a virtual carbon copy of what he testified to at his deposition." Dkt. No. 273 at 1. According to Plaintiff, there was evidence of "what the key representations were on the label" and that they "remained consistent throughout the Class Period," based on Plaintiff's testimony and Mr. Underwood's testimony "admitt[ing] that the 'Improves Memory' claim … began sometime in 2013." *Id*. at 2. Further, Plaintiff argues that the "Brain Cell Protection" label makes "very

5

similar Brain Health Representations, such that Plaintiff's claims are typical no matter which Product label Plaintiff saw." *Id.*[3]

The Court agrees with Defendant. During class certification, Plaintiff argued that "*[e]very* package of Prevagen sold to consumers throughout the Class periods conveys the same affirmative health message … that Prevagen 'improves memory' and 'supports: healthy brain function, shaper mind, and clearer thinking.'" Dkt. No. 123 at 5. As support, Plaintiff attached the labels he claimed were at issue, showing that the challenged representations were prominently displayed on the front of the packaging. Dkt. No. 123-8, Ex. G. And Plaintiff, during his deposition, was presented with the product label and asked about those same representations. Dkt. No. 145, Ex. K at 85:6–20 (Plaintiff testifying that the front of the product label states that it "Improves memory. Supports healthy brain function. Shaper mind. Clearer thinking."). At the class certification stage, the Court found that Plaintiff relied on those specific representations, and that those representations were a substantial factor in "Plaintiff's—and all consumers'—purchasing decision." Dkt. No. 148 at 4. Because the claims were "reasonably coextensive" with those of the proposed class members, the Court concluded that Plaintiff satisfied the typicality requirement. *Id.*

Fatal to Plaintiff's maintenance of class certification following trial is that Plaintiff ultimately was equivocal as to whether he saw and relied on the representations on which he claims the other class members relied. As Defendant notes, "Plaintiff did not introduce a single Prevagen bottle or package into evidence—including any product with the label that states 'Improves Memory.'" Dkt. No. 269 at 2; *see Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003) ("[T]he primary evidence in a false advertising case is the advertising itself." (citation and quotations omitted)). Instead, for reasons unknown to the Court, Plaintiff failed to present any of the critical label evidence submitted in support of his class certification motion at trial. The only label in the trial record is a Prevagen product with "Brain Cell Protection" as the front label. Trial

---

[3] Because of the overlap in issues, the Court addresses Plaintiff's arguments from his opposition to Defendant's motion for judgment as a matter of law and his motion for judgment as a matter of law in this section to the extent relevant in deciding the motion to decertify the class.

6

Ex. 536. Plaintiff's receipt lists "Prevagen Brn Cell Protect" as the product purchased. Trial Ex. 3. Critically, the "Brain Cell Protection" label does not contain any of the representations Plaintiff claimed other class members saw.

Plaintiff's attempt to draw parallels between the representations made on products with the "Brain Cell Protection" label and products with the "Improves Memory" label fails. Dkt. No. 273 at 2; Dkt. No. 272 at 9. He relies on Trial Exhibit 355, *see* Dkt. No. 272 at 9 and Dkt. No. 271 at 3, which was a sales deck apparently reflecting a presentation made by Quincy to a pharmacy. Trial Tr. Vol. 2 at 279:16–280:11. The first page includes photos of the product with the "Improves Memory" label. Trial Ex. 355. However, this exhibit was never shown to Plaintiff for him to verify that those labels were the ones he saw when he purchased Prevagen. Instead, Plaintiff used this exhibit with Mr. Underwood in an attempt to establish the retail price for Prevagen products. Trial Tr. Vol. 2 at 280:13–282:14. And Plaintiff's conclusory assertion that the representations are similar does not make it so. A review of the Brain Cell Protection label shows that there is no representation that Prevagen "'improves memory' and 'supports: healthy brain function, shaper mind, and clearer thinking.'" *See* Dkt. No. 123 at 5. Instead, the Brain Cell Protection label makes representations about the product "replac[ing] [calcium-binding proteins that protect our brain cells]" and "help[ing] protect our cells during this natural process of aging." *Id.* The Court disagrees that the Brain Cell Protection label makes representations "very similar" to the challenged representations. Dkt. No. 273 at 2.[4]

Given the (seemingly inexplicable) absence of the actual label containing the challenged representations, Plaintiff relies on his and Mr. Underwood's testimony. He argues that because Mr. Underwood testified that the "Improves Memory" representations began in 2013, Plaintiff could not have purchased a Prevagen product with the "Brain Cell Protection" tagline. Dkt. No.

---

[4] Deepening the mystery, Plaintiffs' counsel included all of the labels they relied upon at the class certification stage on their exhibit list—but then simply chose not to offer them in evidence at trial. *Compare* Dkt. Nos. 222-1 at 2; 266; 267 *with* Dkt. No. 123-8 (labels submitted in support of motion for class certification). Notwithstanding counsel's claim at the motion hearing that he thought the introduction of the slide deck (about which Plaintiff was not questioned at all, and about which counsel only questioned Mr. Underwood as to pricing issues) was "sufficient," the Court continues to find the way this transpired "exceedingly odd." Dkt. No. 299 (transcript of February 19, 2020 motions hearing) at 5-6.

273. But while Mr. Underwood testified that he believes the Prevagen products with the "Improves Memory" tagline started shipping in 2013, *see* Trial Tr. Vol. 2 at 296:25–297:3, there is no evidence that this would have precluded a Prevagen product with the tagline "Brain Cell Protection" from being available in retail stores as well. Mr. Underwood confirmed this in his testimony. *Id*. at 297:11–15 ("Q: Mr. Underwood, is it possible that a retailer in the state of California could have a bottle of Prevagen on the shelf that said "jellyfish fight aging," "brain cell protection," "clearer thinking," "improves memory" at the same time? A: Certainly."). Instead, this simply underscores that Plaintiff may not have been exposed to the same representations as the rest of the Class, as he effectively acknowledged in his testimony.[5]

Nor does Plaintiff's vague testimony establish that he saw the same alleged misrepresentations that are on the products that were the basis of certification being granted. To be clear, the Court is not requiring Plaintiff to recite verbatim the precise language of the alleged misrepresentations. Plaintiff testified that he believed Prevagen could help him because of "what it says on the box. It says it targets enhancing memory and improving brain functioning." Trial Tr. Vol. 1 at 137:11–18. He claims that he remembers the "jellyfish reference, [ ] clinical studies, [and] I think a blind placebo." *Id*. 1 at 140:17–20. "I believe I got the impression in a relatively short amount of time I would -- I would experience improvement in my memory." *Id*. at 140:21–23. But the evidence at trial suggesting that Plaintiff might have purchased a product that did not contain the challenged misrepresentations, *see* Trial Exs. 3 and 536, and Plaintiff's admission, when confronted, that he could not remember whether he actually purchased the product that said "Improves Memory" or "Brain Cell Protection," *See* Trial Tr. Vol. 2 at 193:23–194:2, are fatal to the maintenance of this case as a class action.[6]

---

[5] The Court rejects Plaintiff's wholly unsubstantiated speculation that Walgreens may have simply described the product as "PREVAGEN BRN CELL PROTECT" in its inventory even though that may not have been the product Plaintiff purchased. *See* Dkt. No. 273 at 2. No evidence whatsoever was introduced to support this claim.

[6] Plaintiff's string-cited cases are distinguishable and do not support his position. *See* Dkt. No. 272 at 8 n.3; Dkt. No. 273 at 2 n.2. None of these cases address the unique scenario here, where the evidence suggested that Plaintiff may have purchased a product with a different label, and Plaintiff testified that he "couldn't honestly tell" the jury and the Court whether the product he purchased was the one containing the key alleged misrepresentations.

8

Because of these failures of proof, Plaintiff's claim is not typical of those of the certified class. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019–20 (9th Cir. 2011) *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (upholding district court's finding that proposed class representative who did not actually see the challenged statement was "far from typical of the class").[7]

### ii. Predominance

These proof failures are also fatal to satisfying the predominance requirement under Rule 23(b)(3). Defendant is correct that "the presumption of reliance the Court adopted for purposes of class certification is no longer warranted." Dkt. No. 269 at 5. Reliance is an "essential element of both the UCL and CLRA and is 'proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.'" Dkt. No. 148 at 7 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)). At the class certification stage, the Court found that because the material representations were made to all class members, Plaintiff was entitled to a presumption of reliance. *Id*. at 6–7. However, because of Plaintiff's candid admission that he can't honestly say whether he was exposed to the alleged misrepresentations that were the basis of the class being certified, Plaintiff is not entitled to the presumption of classwide reliance. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("[W]e agree with Honda's contention that the misrepresentations at issue here do not justify a presumption of reliance. This is so primarily because it is likely that many class members were never exposed to the allegedly misleading advertisements, insofar as advertising of the challenged system was very limited."); *Davis-Miller v. Auto Club of S. California*, 201 Cal. App. 4th 106, 125 (2011) ("An inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class."); *Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 623 (D. Ariz. 2017) (same). Therefore, proof of reliance cannot be shown on a common basis, and common questions of fact do not predominate.

---

[7] These same issues further establish that Plaintiff is not an adequate class representative under Rule 23(a)(4).

9

*     *     *

The Court thus decertifies the class because, based on the trial record, Plaintiff fails to fulfill the typicality requirement of Rule 23(a)(3), the adequacy requirement of Rule 23(a)(4), and the predominance requirement of Rule 23(b)(3). [8]

## III.   DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

As the Class has been decertified, the Court now turns to Defendant's motion for judgment as a matter of law with respect to Plaintiff's individual claim.

### A. Legal Standard

"[A] party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury." *Equal Emp't Opportunity Comm'n v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "Judgment as a matter of law is warranted 'when the evidence presented at trial permits only one reasonable conclusion.'" *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014) (citations and quotations omitted). "In other words, '[a] motion for judgment as a matter of law is properly only if no reasonable juror could find in the non-moving party's favor.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (quoting *El–Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir.2005) (alterations in original)). The Court must view all evidence "in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Id*. at 1205–06 (citation omitted). "A jury's inability to reach a verdict does not necessarily preclude a judgment as a matter of law." *Headwaters Forest Def. v. Cty. of Humboldt*, 240 F.3d 1185, 1197 (9th Cir. 2000), *vacated on other grounds*, 534 U.S. 801 (2001).

### B. Discussion

Defendant moves for judgment as a matter of law on the basis that Plaintiff failed to prove damages to a reasonable certainty, and Plaintiff failed to introduce any evidence that Plaintiff saw and relied on the challenged representations.

---

[8] Because the Court finds that the class no longer satisfies the typicality or predominance requirements, and that Plaintiff is not an adequate class representative, the Court need not address Defendant's other arguments.

10

To prevail on his CLRA claim, Plaintiff must prove that he actually relied on the alleged misrepresentations. *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ("California state and federal courts considering [CLRA] claims have required plaintiffs to demonstrate the statutory causal connection by showing that they have acted in reliance on the alleged misrepresentation.") (collecting cases). Reliance is proved "by showing that the defendant's misrepresentation … was 'an immediate cause of' the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th at 326 (citation and quotations omitted). But reliance "cannot be inferred or presumed where a consumer has never heard or seen the deceptive representations." *Withers v. eHarmony, Inc.*, No. CV 09-2266-GHK RCX, 2011 WL 8156007, at *2 (C.D. Cal. Mar. 4, 2011) (citing *Mirkin v. Wasserman*, 5 Cal.4th 1083, 1095 (1993)).

While the Court found Plaintiff's case at trial underwhelming, viewing all evidence in the light most favorable to Plaintiff, the Court finds that Defendant is not entitled to judgment as a matter of law on Plaintiff's individual CLRA claim. Many questions remain as to what product Plaintiff bought, the circumstances under which he bought it, and what the label said. But as to the individual claim, the Court cannot say that judgment as a matter of law is warranted under the deferential standard. Moreover, Plaintiff did introduce evidence of his *own* damages, as Defendant appears to effectively concede, and that was sufficient now that the class has been decertified. *See* Dkt. No. 268 at 4 ("Other than a single receipt purportedly reflecting Plaintiff's own purchase … Plaintiff failed to submit evidence at trial of a single specific retail sale of Prevagen to a California consumer.").[9]

## IV.   CONCLUSION

The Court **GRANTS** Defendant's motion to decertify the class. Dkt. No. 269, **DENIES** Defendant's motion for judgment as a matter of law, Dkt. No. 268, and **DENIES** Plaintiff's motion for judgment as a matter of law, Dkt. No. 271.

---

[9] Plaintiff's motion for judgment as a matter of law, Dkt. No. 271, is also **DENIED**. Making all inferences in Defendant's favor, the trial evidence did not compel the conclusion that any representation was false, or that the product does not work as represented (though the Court views the efficacy of the product as very much an open question that apparently continues to be explored in pending law enforcement investigations).

11

The Court **SETS** a telephonic case management conference for May 12, 2020 at 2:00 p.m. to discuss a plan for finally resolving this case. The parties do not need to file any case management statement before the conference, but should meet and confer before then on this topic.[10] All counsel shall use the following dial-in information to access the call: Dial-In: 888-808-6929/Passcode: 6064255. For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The parties are further advised to ensure that the Court can hear and understand them clearly before speaking at length.

**IT IS SO ORDERED.**

Dated: 5/4/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[10] On April 30, 2020, Plaintiff's counsel Stewart Weltman filed a motion to withdraw. Dkt. No. 308. While Defendant does not oppose the motion, it does not indicate whether Mr. Racies agrees to the withdrawal. Mr. Weltman should be prepared to discuss this issue at the conference as well. If Mr. Racies agrees to the withdrawal, counsel may submit a statement to that effect signed by Mr. Racies anytime before May 12.

12